1  COOLEY GODWARD LLP
   STEPHEN C. NEAL (170085)
2  JOHN C. DWYER (136533)
   GRANT P. FONDO (181530)
3  MARY BETH O'CONNOR (228591)
   Five Palo Alto Square
4  3000 El Camino Real
   Palo Alto, CA 94306-2155
5  Telephone:      (650) 843-5000
   Facsimile:      (650) 857-0663
6
   Attorneys for Defendants
7  GILEAD SCIENCES, INC., JOHN C. MARTIN, JOHN F.
   MILLIGAN, MARK L. PERRY, NORBERT W.
8  BISCHOFBERGER, ANTHONY CARRACIOLO and
   WILLIAM A. LEE
9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13

14  In re GILEAD SCIENCES SECURITIES          Master File No. C-03-4999-MJJ
    LITIGATION,
15                                            **CLASS ACTION**

16  _____          **DEFENDANTS' NOTICE OF MOTION AND**
                                              **MOTION FOR STAY OF DISCOVERY IN**
17  This Document Relates To:                 **FACTUALLY-RELATED STATE**
                                              **DERIVATIVE ACTION; MEMORANDUM OF**
           ALL ACTIONS                        **POINTS AND AUTHORITIES IN SUPPORT**
18                                            **THEREOF**

19
                                              Date: October 5, 2004
20                                            Time: 9:30 a.m.
                                              Dept: Courtroom 11
21                                            Judge: Honorable Martin J. Jenkins

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**PAGE**

NOTICE ............................................................................................................................. 1

I.      STATEMENT OF ISSUE.......................................................................................... 2

II.     INTRODUCTION .................................................................................................... 2

III.    STATEMENT OF FACTS ........................................................................................ 4

        A.      Federal Action ............................................................................................. 4

        B.      State Derivative Action ................................................................................ 5

        C.      The Company's Revised Estimates Of Wholesaler Inventory Levels For
                The Second Quarter Of 2003 Are Central To Both Actions ...........................7

IV.     ARGUMENT ........................................................................................................... 8

        A.      The PSLRA Gives This Court The Power To Stay Discovery In The State
                Court Action ................................................................................................. 8

        B.      A Stay Of Discovery In The State Derivative Action Is Necessary In Aid
                Of This Court's Jurisdiction........................................................................... 9

                1.      Plaintiffs In The Federal Action Must Not Be Permitted To
                        Circumvent The PSLRA By Using Discovery From The State
                        Derivative Action To Salvage Their Complaint ................................. 11

                2.      Gilead, The Thirteen Individual Defendants, Employee Witnesses,
                        Third Parties And The Courts Would Be Unduly Burdened By
                        Duplicative Discovery In The State And Federal Actions...................... 12

                3.      A Stay Would Not Prejudice The State Plaintiffs..................................... 14

V.      CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Cedars-Sinai Med. Center v. Superior Court*,
  18 Cal. 4th 1 (1998) ........................................................................................ 14

*Cromer Fin. Ltd. v. Berger*,
  205 F.R.D. 113 (S.D.N.Y. 2001) ...................................................................... 13

*In re Adelphia Communications Corp.*,
  293 B.R. 337 (Bankr. S.D.N.Y. 2003) ............................................................... 9

*In re CFS-Related Sec. Fraud Litig.*,
  179 F. Supp. 2d 1260  (N.D. Okla. 2001) ......................................................... 14

*In re CFS-Related Sec. Fraud Litig.*,
  213 F.R.D. 435 (N.D. Okla. 2003) .................................................................... 13

*In re DPL Inc. Sec. Litig.*,
  247 F. Supp. 2d 946 (S.D. Ohio 2003) ................................................ 10, 11, 13

*Lapicola v. Alternative Dual Fuels, Inc.*, No. 3-02-CV-0299-G,
  2002 WL 531545 (N.D. Tex. Apr. 5, 2002)....................................................... 10

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
  218 F.R.D. 423 (D. Del. 2003)........................................................................... 13

*Newby v. Enron Corp.*, No. CIV A. H-01-3624,
  2002 WL 1001056 (S.D. Tex. May 1, 2002),
  *aff'd*, 338 F.3d 467 (5th Cir. 2003) .................................................................. 11

*Newby v. Enron Corp.*,
  338 F.3d 467 (5th Cir. 2003)..................................................................... 8, 9, 11

*Sarantakis v. Gruttadauria*, No. 02 C 1609,
  2002 WL 1803750 (N.D. Ill. Aug. 5, 2002) ..................................................... 14

## STATUTES

15 U.S.C. § 78u-4(b)(3) ....................................................................... *passim*

17 C.F.R. §  240.10b-5.................................................................................. 2, 10

Fed. R. Civ. P. 45 ............................................................................................. 12

## OTHER AUTHORITIES

H.R. Rep. 105-640 (1998)................................................................................... 9

Securities Exchange Act of 1934 ............................................................ *passim*

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

To All Parties And Their Attorneys Of Record:

NOTICE IS HEREBY GIVEN that on October 5, 2004, at 9:30 a.m., or as soon thereafter as counsel may be heard, at Courtroom 11, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Martin J. Jenkins, defendants Gilead Sciences, Inc. ("Gilead" or the "Company"), John C. Martin, John F. Milligan, Mark L. Perry, Norbert W. Bischofberger, Anthony Carraciolo and William A. Lee (collectively "Defendants") will and hereby do move, pursuant to Section 21D(b)(3)(D) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(b)(3)(D), to stay all discovery in a private derivative action currently pending in Superior Court of the State of California, County of San Mateo, titled *In re Gilead Sciences, Inc. Derivative Litigation*, Case No. CIV 436314, filed December 16, 2003 (the "State Derivative Action") until the complaint in this federal securities class action (the "Federal Action") is either dismissed with prejudice or survives Defendants' motion to dismiss.

The Defendants make this motion on three grounds. First, plaintiffs in the State Derivative Action ("State Plaintiffs") seek to use discovery to supplement their amended complaint. This will allow plaintiffs in the Federal Action ("Federal Plaintiffs") to improperly circumvent the PSLRA by copying any new factual allegations from the State Derivative Action complaint to supplement their Federal Action complaint in an effort to withstand Defendants' motion to dismiss. Second, Gilead, the thirteen individual defendants in the Federal and State Actions, employee witnesses, third parties and the courts will be subjected to extensive duplicative discovery obligations and burdens if discovery were to proceed in the State Derivative Action, contrary to the intent of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Finally, a stay would not prejudice the State Plaintiffs in any respect and would instead minimize excessive and wasteful litigation costs to the benefit of Gilead, the purported beneficiary of the State Derivative Action, as well as to the other defendants, employee witnesses, third parties and the courts.

This motion is based on the pleadings on file; the accompanying Memorandum of Points and Authorities; the Declaration of Grant Fondo; and such other matters as may be presented in connection with the hearing on the motion.

I.    **STATEMENT OF ISSUE**

Whether pursuant to the PSLRA this Court should stay discovery in the related State Derivative Action until the complaint in the Federal Action is either dismissed with prejudice or survives a motion to dismiss.  Section 21D(b)(3)(D) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(b)(3)(D).

II.   **INTRODUCTION**

This motion seeks the application of a specific right given to a federal court by the PSLRA – the ability to stay discovery in a related state court action as necessary in aid of its jurisdiction.  *See* Section 21D(b)(3)(D) of the 1934 Act.  Federal courts are to exercise this right liberally in order to (1) ensure that federal securities class action plaintiffs do not circumvent the automatic stay of discovery that occurs upon a filing of a motion to dismiss in federal court, (2) protect its jurisdiction over the federal laws from being preempted, and (3) protect defendants from unnecessarily duplicative discovery demands.  All three of these independent basis for granting a stay are present here and, therefore, this Court should grant defendants' motion for stay of discovery.

The allegations in the Federal and State Actions[1] relate to Gilead's estimate of wholesaler overstocking of its premier product, Viread, for the second quarter of 2003.  Viread is a groundbreaking antiretroviral drug used to treat HIV/AIDS that was first introduced by the Company in 2001.  In July 2003, the Company reported that its revenues for the second quarter of 2003 had far surpassed analysts' expectations due to much higher revenues ($167 million) than expected for Viread.  At that time, the Company stated that it *estimated* that about $25 to $30 million of the Viread revenues were the result of increases in wholesaler inventory levels during the quarter.  Three months later, when Gilead released its third quarter results, the Company

---

[1]   While the allegations in the complaints arise from the same alleged facts, the legal claims, pleading standards and recoveries sought are quite different.  The State Derivative Action seeks damages from Gilead's officers and directors for their alleged breach of their fiduciary duties, waste, unjust enrichment and, as to Gilead's officers, treble their alleged profit from selling Gilead stock during the relevant time period.  The Federal Action seeks damages from Gilead and certain of its officers for violating Section 10(b) of the 1934 Act and Rule 10b-5, and from Gilead's officers for violating Section 20(a) of the 1934 Act.

revised its previous estimate based on additional data gathered during the third quarter (including actual sales numbers for the third quarter) and stated that "Gilead estimates there was approximately $33 to $37 million of inventory reduction by U.S. pharmaceutical wholesalers during the third quarter of 2003 following an equivalent inventory build during the second quarter of 2003." Gilead's revised estimate of wholesaler inventory buildup did not impact or require the revision of Gilead's reported revenues for the second quarter.

This revised estimate is the basis for the two lawsuits. Plaintiffs allege that the Defendants created the false and misleading public impression that demand for Viread was strong and that Viread sales would continue to increase by initially underestimating the amount that its wholesalers had increased their inventory levels in the second quarter.[2] Plaintiffs also allege that certain individual defendants, with knowledge of this information, engaged in insider trading.

The State Plaintiffs served Gilead with a notice of deposition, seeking a person most knowledgeable about the core issues in both matters and documents relating to these same issues. The discovery in the State Derivative Action will be substantially the same as the discovery in the Federal Action because the suits arise from the same facts, and because the defendants, witnesses and third parties significantly overlap. The individual defendants in the Federal Action (Gilead's officers) are defendants in the State Derivative Action, along with Gilead's board of directors. The State Plaintiffs, after obtaining discovery, will likely amend their complaint to include new facts learned through discovery. This new complaint, a public document, would be readily accessible to the Federal Plaintiffs, enabling the Federal Plaintiffs to copy these new factual allegations from the state complaint. Gilead and its officers would be significantly and improperly prejudiced with respect to their motion to dismiss now pending before this Court if Federal Plaintiffs were able to supplement their consolidated amended complaint with facts learned as a result of discovery in the State Derivative Action. This would be contrary to the intent of the PSLRA. Moreover, conducting the same voluminous discovery twice and engaging

---

[2]   The Federal Action further alleges that the defendants engaged in "off-label" marketing activities prohibited by the Food and Drug Administration in an effort to somehow assist in creating this false impression.

in duplicative discovery disputes would be an enormous and unnecessary waste of legal and judicial resources.

Moreover, there would be no harm to the State Plaintiffs if discovery were stayed pending resolution of the Federal Defendants' motion to dismiss. On the contrary, the derivative action is purportedly brought on behalf of and for the benefit of Gilead. It best serves Gilead and promotes judicial economy to permit Gilead, its thirteen officers and directors, employees, vendors and other third parties[3] to avoid costly duplicative discovery by temporarily staying discovery in the State Derivative Action. Therefore, Gilead and its officers move this Court to stay discovery in the State Derivative Action pursuant to Section 21D(b)(3)(D) of the 1934 Act until the complaint in the Federal Action is either dismissed with prejudice or survives Defendants' motion to dismiss.

### III.    STATEMENT OF FACTS

#### A.    Federal Action

Gilead is a Delaware corporation, headquartered in Foster City, California. (Fondo Dec.[4], Ex. A ("Federal Complaint"), ¶ 23; Ex. B ("State Complaint"), ¶ 12.)[5]  Gilead is a biopharmaceutical company that researches, develops and commercializes therapeutics for the care of patients with life-threatening diseases. (*Id*.)  Gilead markets several products including Viread, a groundbreaking antiretroviral drug used to treat HIV/AIDS around the world that was first introduced by the Company in 2001. (*Id*.)  In addition to Gilead, the defendants in the Federal Action are John C. Martin, Gilead's President and Chief Executive Officer; John F. Milligan, its Chief Financial Officer and Senior Vice-President; Mark L. Perry, its Executive Vice-President, Operations; Norbert W. Bischofberger, its Executive Vice-President, Research

---

[3]  In no way do the Defendants waive their right to object to any discovery sought by Plaintiffs in either action.

[4]  Declaration of Grant Fondo in Support of Defendants' Motion for Stay of Discovery ("Fondo Dec.").

[5]  "Federal Complaint" refers to the Consolidated Amended Class Action Complaint filed in this Court on April 30, 2004.  "State Complaint" refers to the Consolidated Amended Shareholder Derivative Complaint filed on June 1, 2004 in Superior Court of the State of California, County of San Mateo.

and Development; Anthony Carraciolo, its Vice-President; and William A. Lee, its Senior Vice-President, Research ("Federal Defendants").  (Federal Complaint, ¶¶ 24-29.)

On November 10, 2003, the first of seven securities class actions was filed in this Court against Gilead and its officers.  On April 30, 2004, plaintiffs filed their consolidated amended complaint, alleging a class period of July 14, 2003 through October 28, 2003.  On June 21, 2004, the Federal Defendants filed a motion to dismiss the Federal Complaint.  This motion is scheduled to be heard on October 26, 2004.  Discovery has been stayed in the Federal Action pursuant to Section 21D(b)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(b)(3)(B).

**B.      State Derivative Action**

On December 16, 2003, two shareholder derivative actions were filed in the Superior Court of the State of California, County of San Mateo, against Gilead and several of its officers and its entire board of directors.  (*See* State Complaint.)  The defendants in the State Derivative Action include the Federal Defendants plus individuals who were, for all times relevant to this litigation, directors of the Company ("State Defendants" and, collectively with the Federal Defendants, the "Gilead Defendants").  Those directors are:  George P. Schultz, the United States Secretary of State from 1982 to 1989 (State Complaint, ¶ 56(h));  Gordon E. Moore, co-founder and Chairman Emeritus of Intel Corporation and a member of the Board of Trustees at the California Institute of Technology  (*Id.*);  Paul Berg, the Cahill Professor Emeritus in Cancer Research in the Department of Biochemistry at Stanford's School of Medicine and a Nobel laureate in chemistry  (*Id.*);  Etienne F. Davignon, Vice-Chairman of Société Générale de Belgique  (*Id.*);  James M. Denny, the Chairman of Gilead's board  (*Id.*, ¶ 19);  Cordell W. Hull, a director of the Fremont Group  (*Id.*, ¶ 56(h)); and Gayle E. Wilson (*Id.*).

The complaints were consolidated on January 23, 2004.[6]  The plaintiffs served interrogatories and requests for production of documents on the State Defendants on January 27, 2004, and State Defendants objected.  Plaintiffs twice moved to compel further responses to their

---

[6]  On February 4, 2004 a third related derivative complaint was filed and, pursuant to stipulation, is in the process of being consolidated with the State Derivative Action.

1  interrogatories and requests for production, but each time the court denied plaintiffs' motion due

2  to procedural defects.

3       The State Defendants filed a demurrer to the consolidated complaint on March 17, 2004,

4  which the state court granted. Plaintiffs then filed an amended shareholder derivative complaint

5  on June 1, 2004, and State Defendants demurred again. The state court denied State Defendants'

6  demurrer on July 23, 2004 on the grounds that Gilead stated in its Form 8-K filing of November

7  19, 2003 that "[t]he Company [] believes that it has meritorious defenses to the allegations

8  contained in the [federal] complaint and intends to defend the case vigorously." (Fondo Dec., Ex.

9  C at 2.) The state court found that a prelitigation demand upon the corporation's board of

10  directors would have been futile because the above statement "could be deemed to be the Board's

11  attitude toward the instant action at the time it was commenced on December 16, 2003." (*Id.*)

12  State Defendants are in the process of filing a petition for writ of mandate in the Court of Appeal

13  for the State of California, First Appellate District, seeking a writ of mandate to overturn that

14  decision on the grounds that the ruling is improper and it preempts the PSLRA by forcing a

15  company to choose between (1) availing itself of the protections of the PSLRA and contesting the

16  claim of demand futility by asserting its right to exercise control over its affairs or (2) not

17  defending the federal class action in order to permit it to contest demand futility in the related

18  state derivative action. (Fondo Dec., ¶ 5.)

19       On June 2, 2004, State Plaintiffs served a deposition notice on Gilead seeking testimony

20  from Gilead's person most knowledgeable as to numerous topics, including Gilead's financial

21  results for the second and third quarters of 2003 and inventory levels of Viread. (Fondo Dec., Ex.

22  D (Deposition Notice).) It also seeks documents relating to these same topics, as well as SEC

23  filings, insurance coverage, the relationship between the State Defendants, and the public

24  announcements at issue. (*Id.*) On June 11, 2004, Gilead objected and moved for a protective

25  order. The court denied Gilead's motion. (Fondo Dec., Ex. E.) Gilead is in the process of

26  responding to these discovery requests. At or about the time of the filing of the Federal

27  Defendants' motion for stay discovery, Gilead will be filing a motion in the State Derivative

28  Action to stay that matter pending determination of Gilead's writ of mandate.

### C.     The Company's Revised Estimates Of Wholesaler Inventory Levels For The Second Quarter Of 2003 Are Central To Both Actions

The crux of the factual allegations in the Federal and State Actions is that Gilead and certain of its senior officers and/or directors disclosed misleading information as to the estimated wholesaler inventory build-up of Viread during the second quarter of 2003 in order to create the public impression that demand for that product was greater than it actually was, and that certain defendants sold stock after this announcement but prior to Gilead's October 28, 2003 revised estimate.

The following allegations are central to both complaints: On July 14, 2003, Gilead issued a press release pre-announcing that its second quarter revenues for 2003 (which ended June 30, 2003) would be in the range of $236 to 239 million, well above analysts' estimates of $179 million.  (Federal Complaint, ¶ 146; State Complaint, ¶ 42.)  The press release stated in part that:

> Gilead expects that Viread sales will be approximately $165 million for the quarter, compared to $107 million for the first quarter of 2003.  Increasing Viread sales reflect broader prescribing patterns in all commercial markets, as well as increases in U.S. wholesaler inventory levels in the second quarter in anticipation of a Viread price increase, which was implemented on June 27, 2003.

(*Id.*)

Two weeks later, on July 31, 2003, the Company issued a press release containing its final results for the second quarter.  The Company announced that it had revenues of $238.9 million for the quarter, of which $167 million related to Viread.  (Federal Complaint, ¶ 155; State Complaint, ¶ 45.)   The Company stated that it *estimated* that increased stocking by U.S. wholesalers accounted for $25 to $30 million in Viread sales in the second quarter.  (*Id.*)

On October 28, 2003, Gilead announced its financial results for the third quarter of 2003.[7] At that time, the Company stated:  "After reviewing NDC prescription trends, IMS inventory data and actual Viread sales, Gilead estimates there was approximately $33 to $37 million of inventory reduction by U.S. pharmaceutical wholesalers during the third quarter of 2003 following an equivalent inventory build during the second quarter of 2003."  (Federal Complaint, ¶ 162; State

---

[7] This announcement, as well as Gilead's previous statements, contained a safe harbor warning regarding forward-looking statements.

Complaint, ¶ 47.)  The next day, Gilead's stock dropped from $59.46 per share to $52 per share, a difference of $7.46.  (Federal Complaint, ¶ 163; State Complaint, ¶ 48.)

The allegations in the two complaints revolve around Gilead's July 2003 estimate that its wholesalers had increased their inventory levels of Viread by $25 to $30 million.  Plaintiffs in both actions allege that the Defendants made misrepresentations in the Company's July 14 press release, a July 14 *Bloomberg News* story, the July 31 press release, the August 14 Form 10-Q and the October 28 press release.  (Federal Complaint, ¶ 164; State Complaint, ¶ 50.)  These misrepresentations allegedly furthered Defendants' scheme to exaggerate the level of demand for Viread by understating the amount that drug wholesalers had increased their inventory levels of the drug, and that with this knowledge certain defendants sold stock at inflated prices.  (Federal Complaint, ¶¶ 163, 164; State Complaint, ¶ 51.)

## IV.   ARGUMENT

### A.   The PSLRA Gives This Court The Power To Stay Discovery In The State Court Action

The Private Securities Litigation Reform Act (PSLRA) provides for an automatic stay of discovery in federal securities actions where, as here, a defendant files a motion to dismiss a complaint.  *See* 15 U.S.C. § 78u-4(b)(3)(B).  This stay provision was enacted in order to prevent costly "extensive discovery and disruption of normal business activities" until a court could determine whether a filed suit should be allowed to proceed past a defendant's motion to dismiss.  *See Newby v. Enron Corp.*, 338 F.3d 467, 471 (5th Cir. 2003) (citing John F. Olson, David C. Macaffey, Brian E. Casey, *Pleading Reform, Plaintiff Qualification and Discovery Stays under the Reform Act*, 51 Bus. Law. 1101, 1101-03 (1996)).  The stay of discovery also protects defendants from plaintiffs who would use discovery to support a claim which could otherwise not meet the heightened pleading standards imposed by the PSLRA.  *Id.*

A few years after enactment of the PSLRA, however, Congress determined that this automatic stay provision was not adequate to address abuses by plaintiffs.  As a result, the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") included a new provision, titled "Circumvention Of Stay Of Discovery," which grants federal courts the authority to order that

discovery in any private action in a State court be stayed as well.[8]   In particular, Section 21D(b)(3)(D) of the 1934 Act states:

> Upon a proper showing, a court may stay discovery proceedings in any private action in a State court, as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to this paragraph.

As the relevant legislative history explains, federal courts were given this authority "to prevent plaintiffs from circumventing the stay of discovery under the [Private Securities Litigation] Reform Act by using State court discovery, which may not be subject to those limitations, in an action filed in State Court."  H.R. Rep. No. 105-640, at 17 (1998).  In addition,

> Because circumvention of the stay of discovery of the Reform Act is a key abuse that this legislation is designed to prevent, *the Committee intends that courts use this provision liberally*, so that the preservation of State court jurisdiction of limited individual securities fraud claims does not become a loophole through which the trial bar can engage in discovery not subject to the stay of the Reform Act.

*Id.* at 18 (emphasis added); *see also Newby*, 338 F.3d at 471-72 (summarizing legislative history).  Thus, where state court discovery is "extensive" and "disrupt[s] normal business activities," it may circumvent the discovery stay in place in a federal action.  Such state court discovery may also compromise the Court's jurisdiction to rule on a pending motion to dismiss before any discovery has taken place.  In such a case, courts should "liberally" apply the provisions of Section 21D(b)(3)(D) of the 1934 Act and stay discovery to ensure the objectives of the PSLRA are not undermined.

### B.    A Stay Of Discovery In The State Derivative Action Is Necessary In Aid Of This Court's Jurisdiction

Pursuant to the explicit language of Section 21D(b)(3)(D) of the 1934 Act, a federal court should stay discovery in a State court action if it is "necessary in aid of its jurisdiction."  In *In re DPL Inc. Sec. Litig.*, 247 F. Supp. 2d 946 (S.D. Ohio 2003), the court explained why a stay of

---

[8]  Section 21D(b)(3)(D) of the 1934 Act applies to *any* private action in state court, including the state derivative actions at issue here.  *See In re DPL Inc. Sec. Litig.*, 247 F. Supp. 2d 946, 948 (S.D. Ohio 2003) ("Derivative actions pending in state court may be stayed pursuant to the provisions of [Section 21D(b)(3)(D)])"; *see also Newby,* 338 F.3d at 472-73; *In re Adelphia Communications Corp.*, 293 B.R. 337, 350-52 (Bankr. S.D.N.Y. 2003).

discovery in a related state court action was "necessary in aid of its jurisdiction" under the statute:

> The Plaintiffs in these consolidated cases have set forth federal securities law claims under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated by the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5. Under the PSLRA, this Court has the jurisdiction to decide whether the consolidated complaint which it will direct to be filed, once lead Plaintiff and lead counsel have been selected, sets forth claims under those provisions in accordance with the heightened pleading standards imposed by the PSLRA. See 15 U.S.C. § 78u-4(b)(1) and (2). Moreover, this Court has the jurisdiction to make that determination, *before any discovery has taken place*. 15 U.S.C. § 78u-4(b)(3)(B). Simply stated, if this Court does not stay discovery in [the state court action], its jurisdiction to rule upon a motion to dismiss the federal securities claims, before any discovery has been conducted, will have been circumvented by discovery in the state court actions and, therefore, compromised.

*Id.* at 949-50 (emphasis in original) (footnote omitted). The court also explained that a "proper showing" under Section 21D(b)(3)(D) of the 1934 Act "would include evidence that a stay is necessary to protect the important interests that the [PSLRA] was passed to protect." *Id.* at 950 (quoting *Lapicola v. Alternative Dual Fuels, Inc.*, No. 3-02-CV-0299-G, 2002 WL 531545, at *1 (N.D. Tex. April 5, 2002)). Two such interests highlighted by the court were: "(1) to prevent the imposition of any unreasonable burden on a defendant before disposition of a motion to dismiss; and (2) to avoid the situation in which a plaintiff sues without possessing the requisite information to meet the heightened pleading requirements of the PSLRA, then uses discovery to acquire that information and resuscitate a complaint that is otherwise subject to dismissal." *Id.*

Applying this framework, the court in *In re DPL* granted a stay in four state court derivative actions. The court reasoned that if discovery were permitted to proceed in the state court actions, and the results of such discovery were shared with the federal court plaintiffs, then the federal stay would be improperly circumvented:

> [B]y staying discovery in the state court actions, this Court ensures that Plaintiffs will not burden Defendants with unreasonable discovery demands before this Court determines whether Plaintiffs' claims can survive a motion to dismiss, and will not use discovery in the state court litigation to acquire information in order to "resuscitate a complaint that is otherwise subject to dismissal" under the heightened pleading requirements of the PSLRA.

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

10.

DEFENDANTS' MOTION FOR STAY OF DISCOVERY
MASTER FILE NO. C-03-4999-MJJ

*In re DPL*, 247 F. Supp. 2d at 950-51.  Similarly, the District Court in *Newby* granted a stay of discovery in a related state court action because (1) plaintiffs in the state action requested the same discovery that will be sought in the federal action if the motion to dismiss was denied, and (2) the facts underlying the state case and the relief being sought fell squarely within the federal case.  *See Newby v. Enron Corp.*, No. CIV A. H-01-3624, 2002 WL 1001056, at *2-3 (S.D. Tex. May 1, 2002), *aff'd*, 338 F.3d 467 (5th Cir. 2003).

> **1.      Plaintiffs In The Federal Action Must Not Be Permitted To Circumvent The PSLRA By Using Discovery From The State Derivative Action To Salvage Their Complaint**

One of the primary purposes of the PSLRA's automatic stay provision is to prevent plaintiffs in federal actions from using discovery to shore up complaints that would otherwise fail to meet the requisite pleading standards.  *Newby*, 338 F.3d at 471 (upholding the stay of discovery in a state action as consistent with the legislative intent of PSLRA and SLUSA).  A stay of discovery in the State Derivative Action is critical to prevent the Federal Plaintiffs from gaining access to information obtained in state court discovery—and potentially resuscitating their deficient complaint—in circumvention of the automatic stay on discovery in the Federal Action.  Even though a protective order[9] should prevent any direct sharing of discovery between the two actions, discovery in the State Derivative Action may well lead to the amendment of the State Derivative Action complaint, which would be publicly available and thus readily accessible to the Federal Plaintiffs.  In other words, the Federal Plaintiffs could review this amended complaint and use facts from it, facts obtained through discovery in the State Derivative Action, in an effort to avoid dismissal of the Federal Action.  Gilead and its officers would be significantly prejudiced—and the explicit provisions and intent of the PSLRA would be circumvented and undermined—if plaintiffs were able to salvage their complaint through facts learned as a result of discovery in the State Derivative Action.  This is just the type of harm that the SLUSA was enacted to address.  *See Newby*, 338 F.3d at 471-72; *In re DPL*, 247 F. Supp. 2d at 947, 950.

The threat to the integrity and intent of the PSLRA is particularly acute here where, in

---

[9]   The parties in the State Derivative Action are in the process of negotiating a protective order.

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

11.

**DEFENDANTS' MOTION FOR STAY OF DISCOVERY
MASTER FILE NO. C-03-4999-MJJ**

1   denying the State Defendants' demurrer, the State Court has preempted the PSLRA by forcing a

2   company to choose between (1) availing itself of the protections of the PSLRA and contesting the

3   claim of demand futility by asserting its right to exercise control over its affairs or (2) not

4   defending the federal class action in order to permit it to contest demand futility in the related

5   state derivative action.

6           **2.    Gilead, The Thirteen Individual Defendants, Employee Witnesses, Third Parties And The Courts Would Be Unduly Burdened By Duplicative Discovery In The State And Federal Actions**

8           Another important purpose of the automatic stay of discovery in the PSLRA is to prevent

9   the imposition of any unreasonable burden on a defendant before disposition of a motion to

10  dismiss.  If discovery in the State Derivative Action is not stayed, Gilead, its thirteen officers and

11  directors, employee witnesses, and third parties such as wholesalers and auditors will be

12  compelled to engage in extremely burdensome discovery twice.

13          The allegations in both actions revolve around whether Gilead and its senior officers

14  and/or directors improperly estimated the degree to which Gilead's wholesalers increased

15  inventory levels of Viread during the second quarter of 2003 in order to create a public

16  impression that demand for Viread was greater than it actually was.  Therefore, discovery in both

17  actions will focus on what the defendants knew about wholesale inventory levels and when they

18  knew it.

19          To that end, plaintiffs in both actions undoubtedly will seek testimony and documents not

20  only from Gilead and the thirteen individual defendants, but also from Gilead's employees,

21  consultants, auditors, financial analysts, wholesalers and others who are not parties to these

22  actions.  The cost and burden complying with such discovery requests the first time will be

23  significant, but to do it twice would be extraordinarily burdensome, unfair and unnecessary.  The

24  testimony and documents requested from the parties, witnesses and third parties are likely to be

25  the same in both actions given the similarity of the factual allegations.  Permitting such

26  significant duplicative discovery burdens is contrary to the Federal Rules and district court

27  decisions.  *See, e.g.*, Fed. R. Civ. P. 45(c)(1) & (c)(3)(A) (requiring parties to take reasonable

28  steps to avoid imposing "undue burden or expense" on third parties subject to subpoenas, and

1   requiring court to quash or modify subpoenas if unduly burdensome); *see also In re CFS-Related*

2   *Sec. Fraud Litig.*, 213 F.R.D. 435, 440 (N.D. Okla. 2003) (after severing third-party defendants'

3   claims into a separate lawsuit, ordering coordination of discovery between severed claims and

4   remaining class action claims was deemed appropriate in order to lessen the duplicative costs of

5   discovery); *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 134 (S.D.N.Y. 2001) (finding that

6   coordination of separate federal and state actions in the S.D.N.Y. would permit "extraordinary

7   savings in costs and energy"); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 218 F.R.D.

8   423, 424 (D. Del. 2003) ("It is incumbent upon counsel in the first instance to order discovery

9   demands, particularly against non-parties, in such a way that the burdens of giving evidence are

10  reasonable, under all of the circumstances presented.").

11          Gilead has already been served with a deposition subpoena in the State Derivative Action

12  seeking testimony and documents that relate to the core issues in each action.  (Fondo Dec., Ex.

13  D.)  It is a reasonable assumption that State Plaintiffs will seek to depose some or all of Gilead's

14  thirteen officers and directors and possibly others before the Federal Defendants' motion to

15  dismiss the Federal Action is heard on October 26, 2004, and may seek additional documents.  It

16  is also a virtual certainty that should Federal Plaintiffs defeat Federal Defendants' motion to

17  dismiss, the Federal Plaintiffs will undoubtedly seek categories of documents that are similar (but

18  not identical) to those being sought by State Plaintiffs, requiring Gilead, its officers and directors,

19  its employees and third parties to engage in significant and costly document production twice.[10]

20  This is exactly the type of burden that the discovery stay provision of the SLUSA was intended to

21  address.  *See, e.g.*, *In re DPL*, 247 F. Supp. 2d at 950 (noting that preventing imposition of "any

22  unreasonable burden on a defendant before disposition of a motion to dismiss" was an important

23  interest that the PSLRA was intended to protect).

24

25

26  _____

    [10]  Electronic discovery involves the restoration of back up tapes, the retention of outside vendors
27  to restore, distill and store data, and significant employee and attorney time to collect and review
    this data.  While the information sought will be quite similar, even one slightly different request
28  can require re-restoring server tapes and re-sorting and reviewing similar or slightly different
    data, and can be prohibitively expensive.  (Fondo Dec., ¶ 2.)

Since discovery in the State Derivative Action will be substantially the same as the discovery in the Federal Action, it would be an enormous waste of resources to conduct the same burdensome discovery twice. The most logical and cost-effective solution—and the least burdensome—would be to stay discovery in the State Derivative Action pursuant to Section 21D(b)(3)(D) of the 1934 Act, pending resolution of the Federal Defendants' motion to dismiss.

### 3. A Stay Would Not Prejudice The State Plaintiffs

State Plaintiffs cannot assert they would be harmed if discovery were stayed pending resolution of the Federal Defendants' motion to dismiss. Federal securities laws contemplate just this type of delay prior to commencement of discovery. Defendants are not asking this Court to postpone discovery in the State Derivative Action indefinitely, but rather only until this Court adjudicates whether the Federal Plaintiffs can meet their pleading burden under the PSLRA. The Gilead Defendants are already obligated under federal statute to preserve information likely to lead to the discovery of admissible evidence. *See* 15 U.S.C. § 78u-4(b)(3)(C); *In re CFS-Related Sec. Fraud Litig*., 179 F. Supp. 2d 1260, 1265 (N.D. Okla. 2001). The State Defendants have the same obligations. *See, e.g., Cedars-Sinai Med. Center v. Superior Court*, 18 Cal. 4th 1, 12 (1998) (pointing out that destruction of evidence after litigation has commenced is sanctionable under section 2023 of the California Code of Civil Procedure).

A temporary stay of discovery in the State Derivative Action does not alter any of those obligations, and the plaintiffs in the State Derivative Action cannot show that a stay would compromise their ability to obtain discovery later. *See Sarantakis v. Gruttadauria*, No. 02 C 1609, 2002 WL 1803750, at *3-4 (N.D. Ill. Aug. 5, 2002) (finding that plaintiffs failed to show that they would be unduly prejudiced by discovery stay where there was no immediate or probable risk that evidence would be lost). Even if the motion to dismiss is granted in the Federal Action and duplicative discovery is no longer an issue, the worst that the State Plaintiffs would have suffered is a temporary delay of discovery.

Finally, the derivative action is purportedly being brought on behalf of and for the benefit of Gilead. State Plaintiffs cannot argue that it would be in Gilead's interest to engage in burdensome and intrusive discovery twice, or to pay twice for the costs of such duplicative

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

14.

**DEFENDANTS' MOTION FOR STAY OF DISCOVERY
MASTER FILE NO. C-03-4999-MJJ**

discovery.[11]  Gilead's interests and goals should be considered and given substantial weight in the State Derivative Action because that lawsuit is a derivative suit brought on its behalf. Accordingly, a stay should be granted to ensure that Gilead, the supposed beneficiary of the derivative action, is not subjected to unduly burdensome discovery or prejudiced in the Federal Action.

## V.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court stay all discovery in the State Derivative Action until this Court either grants Defendants' motion to dismiss the Federal Action with prejudice or denies it.

Dated: August 19, 2004                    COOLEY GODWARD LLP


                                          _____/s/_____
                                          By: Grant P. Fondo

                                          Attorneys for Defendants
                                          GILEAD SCIENCES, INC., JOHN C. MARTIN,
                                          JOHN F. MILLIGAN, MARK L. PERRY,
                                          NORBERT W. BISCHOFBERGER, ANTHONY
                                          CARRACIOLO and WILLIAM A. LEE

684558 v4/PA
#_7$04!.DOC

---

[11]  Pursuant to Delaware law and Gilead's articles of incorporation, Gilead is obligated to indemnify the defendants in both actions for their legal defense costs.

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

15.

DEFENDANTS' MOTION FOR STAY OF DISCOVERY
MASTER FILE NO. C-03-4999-MJJ