IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re GILEAD SCIENCES SECURITIES LITIGATION, <br><br> _____/ <br><br> This document relates to all actions. <br><br> _____/ | No. C 03-4999 SI <br> No. C 03-5088 SI <br> No. C 03-5113 SI <br> No. C 03-5391 SI <br> No. C 03-5592 SI <br> No. C 03-5805 SI <br> No. C 04-0100 SI <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FOURTH CONSOLIDATED AMENDED CLASS ACTION COMPLAINT WITH LEAVE TO AMEND** |

Defendants have filed a motion to dismiss the fourth consolidated amended class action complaint. The motion is scheduled for a hearing on June 5, 2009. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the Court GRANTS in part and DENIES in part the motion and GRANTS plaintiffs leave to amend. Plaintiffs shall file an amended complaint by **June 26, 2009**. The Court will hold a case management conference on **July 17, 2009** at 3:00 pm.

### DISCUSSION[1]

Defendants contend that the fourth consolidated amended complaint ("FAC") fails to adequately plead falsity, scienter, and materiality. Defendants contend that these deficiencies doom plaintiffs' first

---

[1] The background of this case is familiar to all the parties and has been recounted in numerous orders, including the recent Ninth Circuit decision *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049 (9th Cir. 2008), and thus will not be repeated here.

claim for relief for a violation of Section 10(b) of the Exchange Act of 1934, as well as the second claim for relief for a violation of Section 20(a) of the same act. Defendants raise numerous grounds for dismissal in their motion, including the overarching question of whether the complaint's reliance on two confidential informants meets the standards enunciated in *Zucco Partners, LLC v. Digimarc Corporation*, 552 F.3d 981 (9th Cir. 2009). In *Zucco*, the Ninth Circuit instructed "the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge," and "those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter." *Id.* at 995.

The gravamen of the FAC is that defendants engaged in an illegal marketing scheme whereby they falsely reported that sales of the company's most popular product, Viread, were driven by strong demand, when in fact those sales were attributable in large part to illegal "off-label" marketing of the drug. The FAC relies on several types of factual allegations to plead scienter, including (1) statements of two confidential witnesses; (2) a March 14, 2002 "Untitled FDA Letter"; (3) a July 29, 2003 "FDA Warning Letter"; (4) other anonymous sources described in the FAC as, for example, "Infectious Disease Specialist in the Southeast United States" "Medical Director of a large AIDS clinic in Washington, D.C.," and "AIDS specialist from the Western United States" who state that Gilead sales representatives marketed Vilead for off-label purposes; (5) press releases discussing revenues and sales of Viread; and (6) the individual defendants' sales of stock during the class period. The only basis for the FAC's allegations that 75% to 95% of Viread's sales during the class period were "off-label" is information provided by the two confidential witnesses.[2]

Defendants contend that the two confidential witnesses lack sufficient indicia of reliability. Defendants assert that CW2 is unreliable because although the FAC alleges that "CW2 estimates that 85%-90%" of his or her sales were the result of off-label marketing, FAC ¶¶ 148-49, 163, a previous

---

[2] The allegations about off-label marketing to doctors state that such marketing occurred prior to the class period, or do not specify a time-period. *See e.g.*, FAC ¶¶ 156, 159. The FAC also cites studies showing that many patients with HIV were taking Viread as a "first-line" treatment for which it had not been approved. These allegations support plaintiffs' claim that defendants engaged in a scheme to market Viread for off-label uses. However, these allegations are not equivalent to an allegation that defendants engaged in significant off-label sales of Viread during the class period.

2

version of the complaint alleged that "despite his or her superiors' pressure to market Viread using off-label materials, CW2 refused." CAC ¶ 50 (Consolidated Amended Complaint, filed April 30, 2004, Docket No. 50).[3] Defendants argue that it was only after Judge Jenkins dismissed the CAC that plaintiffs amended CW2's allegations to state that CW2's sales were largely driven by off-label marketing. Defendants argue that the complete reversal on a central point renders CW2 unreliable.

In response, plaintiffs contend that the Court cannot weigh the credibility of witnesses on a motion to dismiss. Plaintiffs also assert that "any clarification of earlier pleadings may not be used to challenge CW2's credibility because the Court may only focus on the FAC, the pleading currently before this Court." Opposition at 15 n.18. Plaintiffs also assert that they have sufficiently described CW2 with particularity, and that CW2's allegations are corroborated by other allegations, such as the FDA letters, the allegations of CW1, and statements by other anonymous medical practitioners who state that Gilead sales representatives marketed off-label uses of Viread to them.

However, contrary to plaintiffs' assertion that the FAC "clarified" earlier pleadings, the new allegation in the FAC that 85% to 90% of CW2's own sales of Viread were off-label directly contradicts the CAC's allegation that CW2 refused to make off-label sales. Neither the FAC nor plaintiffs' opposition provides any explanation for the change in CW2's allegations. While the Court agrees with the general proposition that "clarifications" in pleadings do not necessarily render those pleadings suspect, here the amendment was material and without explanation. Judge Jenkins dismissed the CAC because, *inter alia*, plaintiffs had not established a connection between the company's off-label marketing activities and the 2003 second quarter reports that plaintiffs alleged were false and misleading. Order at 12 (Docket No. 159). Judge Jenkins noted that "Plaintiffs have not alleged that any sales of Viread during the second quarter of 2003 were the result of improper off-label marketing activities," and that "even assuming Plaintiffs had alleged that such sales took place, Plaintiffs would

---

[3] In the CAC as in the FAC, CW2 alleged that he/she had attended various meetings at which Gilead's sales and marketing team received specific instructions to market Viread off-label.

3

also have to allege that those sales were 'material' to the 2003 second quarter reports." *Id*. at 13.[4] Not only did the FAC allege for the first time off-label sales of Viread during the second quarter of 2003, but also that such sales – attributable to CW2 – were significant. FAC ¶ 148 (alleging prior to class period, 85%-90% of CW2's sales were off-label based on total of between $10 and $15 million; between late 2002 and early 2004, 85%-90% of CW2's sales were off-label, based on total of between $15 and $20 million).[5]

Plaintiffs cite several cases in support of their assertion that the Court cannot weigh the credibility of a witness on a motion to dismiss. The Court agrees that the general credibility of CW2 is a matter for determination at a later stage in the proceedings. However, the Ninth Circuit has repeatedly emphasized the importance of ensuring the reliability of confidential witnesses. *See generally ZuccoPartners*, 552 F.3d at 995-99; *In re Daou Sys., Inc. Sec. Litig*., 411 F.3d 1006, 1015 (9th Cir. 2005). Particularly where, as here, the amendment flatly contradicts earlier pleadings, and where the confidential witness is one of only two sources of information about off-label sales during the class period, the Court is unable to find on this record that CW2's allegations about off-label sales during the class period are reliable.

Defendants challenge CW1 on several grounds. First, defendants contend that this witness is unreliable because he/she left Gilead several months before the class period. The FAC alleges that CW1 worked at Gilead from 2001 until approximately May 2003. FAC ¶ 40. Defendants contend that, as a result, CW1's allegations about off-label sales during the class period are speculative. The Court agrees. *See Zucco Partners*, 552 F.3d at 996 (two confidential witnesses who were not employed during the class period "have only secondhand information about accounting practices at the corporation during that year"); *Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1202 (N.D. Cal. 2008); *Shurkin v. Golden*

---

[4] Plaintiffs emphasize Judge Jenkins' statement in the same order that "when the allegations of CW1 and CW2 [that Gilead representatives were instructed to engage in off-label marketing] are considered in light of the FDA's letters to Gilead, it becomes apparent that Plaintiffs have alleged sufficient facts to raise a strong inference that Defendants had knowledge of the company's off-label marketing scheme." Order at 12. The Court agrees that similar allegations in the FAC raise the strong inference that defendants were aware of the illegal off-label marketing. The current deficiency lies in the allegations of off-market sales during the class period.

[5] The asserted class period is between July 14, 2003 and October 28, 2003, inclusive. FAC ¶ 1.

4

*State Warriors*, 471 F. Supp. 2d 998, 1015 (N.D. Cal. 2006) ("CW3's employment ended before the Class Period and thus, CW3 lacks any personal knowledge as to the GSV's production activity during the 2Q04 that is at issue here."). The Court does not discount CW1's allegations about his/her own experiences, such as sales prior to the class period, or meetings that CW1 attended. However, any information CW1 has about sales during the class period is necessarily secondhand and thus "does not provide the requisite particularity to establish that certain statements of [this] confidential witness[] are based on the witness['es] personal knowledge." *Zucco Partners*, 552 F.3d at 996.

Second, defendants contend that there is no corroborative evidence supporting CW1's allegations. To the extent that CW1's allegations are based on hearsay, those allegations lack reliability. *See Zucco Partners*, 552 F.3d at 997. However, the Court disagrees with defendants' broader assertion that the Court should disregard all of CW1's allegations, as the FAC alleges in detail numerous meetings that CW1 (and CW2) attended at which Gilead sales and marketing personnel were instructed to promote off-label uses of Viread, including a meeting attended by numerous individual defendants.

Accordingly, the Court GRANTS plaintiffs leave to amend to add further support to allegations of off-label sales during the class period. Plaintiffs may cure this deficiency by adding additional confidential witnesses who allege that there were off-label sales of Viread during the class period, and/or by providing an explanation of the change in CW2's allegations on this point.

The Court is not persuaded by the other contentions raised in defendants' motion to dismiss. Defendants contend that the FAC does not adequately allege falsity and that defendants had no duty to disclose the alleged off-label marketing. Defendants argue that all of the press releases regarding sales and revenue were factually accurate, and they emphasize that Gilead met forecasted revenue. However, "a statement that is literally true can be misleading and thus actionable under the securities laws." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (citing *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1551 (9th Cir. 1994)); *In re Amgen Sec. Litig.*, 544 F. Supp. 2d 1009, 1034 (C.D. Cal. 2008) (plaintiffs sufficiently alleged false and misleading statements where, even though disclosures were literally accurate, plaintiffs alleged that defendants "promoted unapproved uses and increased per-patient dosages through improper means [and] [t]hus, Defendants misled investors by implicitly and falsely warranting that there were no illegal practices contributing to that success."). For the same

reasons, the Court finds that the FAC sufficiently pleads materiality of the alleged omissions and misstatements. *See also In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) ("The 'materiality' of an omission is a fact-specific determination that should ordinarily be assessed by a jury [and] [O]nly if the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds could not differ are these issues appropriately resolved as a matter of law."). Finally, the Court finds that the FAC adequately pleads a basis for holding the individual defendants liable. *See South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008).

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion to dismiss the fourth consolidated amended complaint and GRANTS plaintiffs leave to amend the complaint. (Docket No. 211). The amended complaint must be filed no later than **June 26, 2009**.

**IT IS SO ORDERED.**

Dated: June 3, 2009

SUSAN ILLSTON
United States District Judge