COOLEY GODWARD KRONISH LLP
STEPHEN C. NEAL (170085) (sneal@cooley.com)
JOHN C. DWYER (136533) (jdwyer@cooley.com)
MATTHEW D. BROWN (196972) (mbrown@cooley.com)
JEFFREY M. KABAN (235743) (jkaban@cooley.com)
5 Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155
Telephone:     (650) 843-5000
Facsimile:     (650) 857-0663

Attorneys for Defendants
GILEAD SCIENCES, INC., JOHN C. MARTIN, JOHN F. MILLIGAN, MARK L. PERRY, NORBERT W. BISCHOFBERGER, ANTHONY CARRACIOLO and WILLIAM A. LEE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re GILEAD SCIENCES SECURITIES LITIGATION, | Master File No. C-03-4999-SI |
| | **CLASS ACTION** |
| This Document Relates To: | **REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIFTH AMENDED CLASS ACTION COMPLAINT** |
| ALL ACTIONS | |
| | Date:     October 9, 2009<br>Time:     9:00 A.M.<br>Dept.:    Courtroom 10<br>Judge:    Honorable Susan Illston |
| | Trial Date:  None set |

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

REPLY BRIEF ISO MTD
CASE NO. C-03-4999-SI

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 2 |
|   | A. The Fifth Amended Complaint Fails to Provide Reliable Confidential Witness Allegations of Significant Sales During the Class Period Resulting from Off-Label Marketing | 2 |
|   | 1. Plaintiffs' allegations concerning off-label marketing at various time periods are not the same as reliable allegations of sales during the class period that resulted from off-label marketing | 2 |
|   | 2. Plaintiffs' reliance on discredited allegations by CW1 and CW2 and on carefully crafted allegations of other sales does not satisfy the need for reliable allegations of Viread sales that resulted from off-label marketing | 3 |
|   | 3. Plaintiffs' argument that the confidential witnesses are described sufficiently "to support the probability that a person in the position occupied by the source would possess the information alleged" is a red herring that does not address the complaint's core insufficiency | 6 |
|   | 4. The alleged corroborating evidence is no substitute for allegations of significant class period sales resulting from off-label marketing | 6 |
|   | 5. Contrary to Plaintiffs' contention, they need to and have failed to allege significant sales of Viread as a result of off-label marketing during the class period. | 7 |
|   | B. Plaintiffs' Arguments in Opposition to the Non-Speaking Defendants' Separate Ground for Dismissal Are Without Merit | 8 |
|   | 1. The Court did not previously decide this issue, and, therefore, a motion for reconsideration was unnecessary | 9 |
|   | 2. Plaintiffs do not dispute that the Non-Speaking Defendants did not make any false statement or substantially participate in preparing a false statement | 10 |
|   | 3. Plaintiffs do not dispute that the "group publishing" doctrine is no longer viable | 10 |
|   | 4. Plaintiffs incorrectly argue that the Non-Speaking Defendants can be held liable for insider trading when the Fifth Amended Complaint instead alleges claims for false statements | 11 |
|   | C. Plaintiffs' Assertion that Merely Alleging an Individual's Position Is Sufficient to Allege Control Person Liability Is Incorrect | 14 |
| III. | CONCLUSION | 15 |

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i.

REPLY BRIEF ISO MTD
CASE NO. C-03-4999-SI

# TABLE OF AUTHORITIES

Page (s)

### CASES

*Alfus v. Pyramid Tech. Corp.*,
 745 F. Supp. 1511 (N.D. Cal. 1990) ................................................................................. 12

*Batwin v. Occam Networks, Inc.*,
 2008 U.S. Dist LEXIS 52365 (C.D. Cal. July 1, 2008) ................................................ 13, 14

*Berson v. Applied Signal Technology Inc.*,
 527 F.3d 982 (9th Cir. 2008) ............................................................................................. 3

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
 511 U.S. 164 (1994) ............................................................................................ 10, 13, 14

*Hayley v. Parker*,
 2002 WL 925322 (C.D. Cal. Mar. 15, 2002) .................................................................... 14

*Howard v. Everex Sys., Inc.*,
 228 F.3d 1057 (9th Cir. 2000) .......................................................................................... 10

*In re Adaptive Broadband Securities Litigation*,
 2002 WL 989478 (N.D. Cal. Apr. 2, 2002) ...................................................................... 14

*In re Digital Island Sec. Litig.*,
 223 F. Supp. 2d 546 (D. Del. 2002) ................................................................................. 14

*In re Downey Sec. Litig.*,
 2009 WL 736802 (C.D. Cal. Mar. 18, 2009) ................................................................ 7, 13

*In re Dura Pharm., Inc. Sec. Litig.*,
 548 F. Supp. 2d 1126 (S.D. Cal. 2008) ............................................................................ 13

*In re Ferro Corp. Sec. Litig.*,
 2007 WL 1691358 (N.D. Ohio June 11, 2007) .................................................................. 7

*In re Hansen Nat. Corp. Sec. Litig.*,
 527 F. Supp. 2d 1142 (C.D. Cal. 2007) ........................................................................... 13

*In re Int'l Rectifier Corp. Sec. Litig.*,
 2008 WL 4555794 (C.D. Cal. May 23, 2008) ............................................................ 14, 15

*In re Netopia Inc., Sec. Litig.*,
 2005 WL 3445631 (N.D. Cal. Dec. 15, 2005) ................................................................. 13

*In re NextCard, Inc. Sec. Litig.*,
 2005 U.S. Dist. LEXIS 9234 (N.D. Cal. Feb. 7, 2005) ............................................... 12, 13

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
 2000 WL 1727377 (N.D. Cal.  Sept. 29, 2000) ............................................................... 14

*In re Tibco Software, Inc.*,
 2006 WL 1469654 (N.D. Cal. May 25, 2006) ................................................................. 13

*In re Verifone Sec. Litig.*,
 784 F. Supp. 1471 (N.D. Cal. 1992) ................................................................................ 12

*In re Zumiez, Inc. Sec. Litig.*,
 2009 WL 901934 (W.D. Wash. Mar. 30, 2009) ................................................................ 8

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

**REPLY BRIEF ISO MTD**
**CASE NO. C-03-4999-SI**

# TABLE OF AUTHORITIES
## (continued)

**Page (s)**

*Johnson v. Aljian*,
  394 F. Supp. 2d 1184 (C.D. Cal. 2004) ............................................................................... 11

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) .................................................................................................. 12

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v.
  America West Holding Corporation*,
  320 F.3d 920 (9th Cir. 2003) ........................................................................................ 12, 13

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) .............................................................................................. 6

*South Ferry LP, No. 2 v. Killlinger*,
  542 F.3d 776 (9th Cir. 2008) ................................................................................................ 9

*Tellabs, Inc. v. Makor Issues and Rights, Ltd.*,
  551 U.S. 308 (2007) .............................................................................................................. 9

*United States v. O'Hagan*,
  521 U.S. 642 (1997) ............................................................................................................ 11

*Washington Legal Found. v. Henney*,
  202 F.3d 331 (D.C. Cir. 2000) .............................................................................................. 5

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ............................................................................................. 6, 7

## **STATUTES**

Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b) ............................... 2, 9, 11, 12, 13

Securities Exchange Act of 1934 § 20(a), 15 U.S.C. § 78t (a) ........................................................ 14

## **RULES**

Federal Rule of Civil Procedure 8 ............................................................................................ 14, 15

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

**REPLY BRIEF ISO MTD**
**CASE NO. C-03-4999-SI**

## I. INTRODUCTION

This Court's Order dismissing the Fourth Amended Complaint (Docket No. 224 ("Order")) granted Plaintiffs leave to amend to provide confidential witnesses who could reliably allege there were significant sales resulting from off-label marketing during the class period. Despite the sheer number of new allegations, the Fifth Amended Complaint has not fixed the problem identified by the Court. In an attempt to obscure the complaint's fundamental shortcoming, Plaintiffs' Opposition to Defendants' Motion to Dismiss employs an array of sometimes subtle tactics—conflating allegations of off-label *marketing* with allegations of off-label *sales*, suggesting that confidential witnesses should be allowed to *infer* that sales resulted from off-label marketing even though they have *no personal knowledge* of the fact, and, perhaps most arresting, making sweeping statements about what the witnesses allege (including whether they have personal knowledge of facts *within the class period*) that find no support in the actual complaint. Plaintiffs' assertions as to the relevance and strength of the new confidential witnesses are belied by Plaintiffs' attempt to rely, once again, on the alleged estimates of off-label sales provided by CW1 and CW2. The Court already ruled that CW1 does not and could not have personal knowledge of sales during the class period, as CW1 was not even employed at Gilead during the class period. Further, Plaintiffs' explanation for CW2's 180-degree change of story lacks credibility. In short, Plaintiffs fail to cure the deficiencies identified by the Court. As a result, the Fifth Amended Complaint should be dismissed with prejudice.

Defendants' Motion to Dismiss also argues that Defendants Perry, Bischofberger, Carraciolo, and Lee (the "Non-Speaking Defendants") should be dismissed because the Fifth Amended Complaint fails to adequately allege that these individuals made a statement or substantially participated in the preparation of an alleged false statement. Instead of addressing the substance of Defendants' arguments, Plaintiffs urge the Court to ignore them because Defendants did not file a motion for reconsideration of the Court's Order on the earlier motion to dismiss. But no motion for reconsideration was required or appropriate as the Court's Order appears to address only the issue of the individual defendants' scienter, not whether the complaint sufficiently alleged that the Non-Speaking Defendants made or participated in making the

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

1.

REPLY BRIEF ISO MTD
CASE NO. C-03-4999-SI

allegedly misleading statements. Tellingly, Plaintiffs do not argue that the Non-Speaking Defendants made any statement or participated in the making of any statement; nor do Plaintiffs argue that the group publishing doctrine is still good law. Rather, for the first time, they assert that the Non-Speaking Defendants are liable under section 10(b) on the basis of insider trading as opposed to making false and misleading statements that inflated the price of Gilead's shares. Plaintiffs' new argument comes out of left field and is entirely inconsistent with the complaint itself. This is not, and never has been, an insider trading case. Plaintiffs' manufactured argument cannot mask the failure of the complaint to allege a statement or substantial participation in a statement by the Non-Speaking Defendants. Thus, the Fifth Amended Complaint should be dismissed as to the Non-Speaking Defendants on this independent ground as well.

## II. ARGUMENT

### A. The Fifth Amended Complaint Fails to Provide Reliable Confidential Witness Allegations of Significant Sales During the Class Period Resulting from Off-Label Marketing.

#### 1. Plaintiffs' allegations concerning off-label marketing at various time periods are not the same as reliable allegations of sales during the class period that resulted from off-label marketing.

Plaintiffs contend that they have substantially expanded the "detail concerning the scope of Defendants' off-label marketing largely through the allegations of CW3, CW5, and CW4." (Docket No. 241 ("Opp.") at 12:7-9.) However, Plaintiffs conflate marketing (and the use of internal training materials) with sales resulting from off-label marketing. The Court did not state that Plaintiffs needed more allegations of meetings where off-label uses for Viread were discussed. Rather, the Court ruled that Plaintiffs needed to provide reliable allegations of significant sales during the class period that were the result of improper off-label marketing. As demonstrated in Defendants' opening brief, none of these confidential witnesses can allege, based on personal knowledge, that there were sales of Viread during the class period that resulted from off-label marketing. (*See* Docket No. 237 ("Mot. to Dismiss") at 13:6-15:23.) CW4 was not employed during the class period. He/she could not have personal knowledge of any Viread sales during the class period, and certainly could not know whether they were the result of off-label

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

2.

REPLY BRIEF ISO MTD
CASE NO. C-03-4999-SI

marketing.[1] Similarly, despite the suggestion otherwise in Plaintiffs' Opposition (*see* Opp. at 12 n.13, 14), neither CW3 nor CW5 was a Therapeutic Specialist (sales person) during the class period. (¶¶ 50, 60.)[2] Further, there are no allegations that CW3 or CW5 participated in any sales calls or meetings during the class period. Thus, they have no firsthand knowledge of why doctors elected to prescribe Viread. Moreover, they have no knowledge of whether those prescriptions resulted from improper off-label marketing or perfectly legitimate decisions by physicians to prescribe Viread for off-label uses.[3] Accordingly, while these confidential witnesses may provide allegations concerning the marketing or training materials they produced, this falls far short of curing the deficiencies identified in the Order.

> **2. Plaintiffs' reliance on discredited allegations by CW1 and CW2 and on carefully crafted allegations of other sales does not satisfy the need for reliable allegations of Viread sales that resulted from off-label marketing.**

Tellingly, when Plaintiffs finally attempt to address the Court's concern, they turn back to CW1 and CW2, stating that the Fifth Amended Complaint sets forth "allegations from both CW1 and CW2 that 85%-95% of Viread's sales were caused by off-label marketing." (Opp. at 14:2-3.)

---

[1] Plaintiffs contend that it is irrelevant that CW4 left Gilead prior to the class period because the Fifth Amended Complaint alleges the off-label marketing began in 2001. (Opp. at 13 n.16.) However, CW4's dates of employment are directly relevant to whether CW4 has personal knowledge of off-label marketing, let alone sales, *during the class period*.

[2] All paragraph citations are to the Fifth Amended Complaint unless otherwise noted.

[3] Plaintiffs characterize Defendants' legitimate criticism of these witnesses' lack of personal knowledge as "quibbling," and suggest that "[a]ny number of employees, however, may be in a position *to infer* the sales of Viread." (Opp. at 16:22-17:1 (emphasis added).) Allowing confidential witness allegations based on the witnesses' own inferences in this context is contrary to law and undermines the very principle of personal knowledge. *Berson v. Applied Signal Technology Inc.*, 527 F.3d 982 (9th Cir. 2008), is inapposite. In *Berson*, the Court held that it was reasonable for technical editors and engineers to know of the stop-work orders even if they did not see the actual orders because they had "the very obvious effect of putting numerous employees out of work." *Id.* at 985. Thus, when the company lost tens of millions of dollars in orders and people were being laid off, it would have been obvious to individuals other than managers that the company had suffered such a setback. *Id.* The scenario in *Berson* is distinguishable from the case at hand. In this case, there was no catastrophic event of which numerous individuals would have knowledge. Rather, it is difficult for anyone to know what led to any particular sale of Viread during the class period. The only individuals who arguably would have personal knowledge of such information would be the individuals who personally participated in the sales of Viread during the class period.

As the Court has already ruled, CW1's allegations regarding sales during the class period are speculative and not based on his/her personal knowledge as he/she was not employed at Gilead during the class period.[4] (Order at 4:16-5:7.) Further, the Court has already found CW2 unreliable. Plaintiffs' explanation as to why CW2 reversed his/her story lacks credibility and only underscores CW2's unreliability.[5] (*See* Mot. to Dismiss at 11:3-12:15.)

Plaintiffs then *suggest* that CW6 and CW7 have also made estimates of sales that were the result of off-label marketing during the class period. However, a close examination of these allegations shows that CW6 and CW7 never actually said this. As detailed in Defendants' opening brief, the allegations by CW6 and CW7 stop short of stating that either of them made sales that were the result of off-label marketing; instead, they merely allege that a percentage of their sales of Viread were prescribed by physicians for the treatment of conditions not encompassed by Gilead's FDA-approved labels. (*See* Mot. to Dismiss at 16:3-18:7.) There is no

---

[4] Plaintiffs contend that they have met the *Zucco* standard for confidential witnesses and "addressed both of the Court's concerns . . . regarding clarification of CW2's statements and CW1's employment outside the class period." (Opp. at 10-11 n.11.) Plaintiffs also argue that "the statements of CW1 are reliable and offer additional credence to allegations demonstrating Defendants off-label marketing scheme resulted in off-label sales of Viread." (*Id.* at 14 n.18.) Defendants disagree. The explanation regarding CW2 is unconvincing and Plaintiffs have not and cannot allege any facts that would support the contention that CW1's pre-class-period experiences give him/her personal knowledge of Viread sales after he/she was no longer employed by Gilead.

[5] Despite the Court's guidance that Plaintiffs needed additional confidential witnesses who could allege sales *during the class period* that were the result of off-label marketing, Plaintiffs throughout their opposition rely on CW1 (who was already discredited as having no personal knowledge of facts within the class period) and CW2 (who was held to be unreliable and has not been rehabilitated) as well as other confidential witnesses who were not employed during the class period. For example, Plaintiffs state: "The Fifth Amended Complaint sets forth compelling further detail provided by eight reliable CWs [that is, CW1 and CW2 as well as the six new witnesses] to plainly establish there was a pervasive culture of off-label marketing and related sales of Viread during the Class Period." (Opp. at 8:20-23.) However, of the six new witnesses, one was not employed during the class period, only two are alleged to have been Therapeutic Specialists during the class period, and, of those, only one makes any allegations referring to sales. Similarly, Plaintiffs state: "Finally CW1, CW2, CW6, and CW7 actually sold Viread off-label during the class period." (*Id.* at 17:17-18.) This is simply not true: as Plaintiffs well know, CW1 was not even employed by Gilead during the class period (¶ 39); the Court concluded that CW2's allegations were unreliable; CW7 was employed during the class period but never states that his sales occurred during the class period (¶ 72); and neither CW6 nor CW7 stated that his/her sales were the result of off-label marketing (¶¶ 71,72).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

4.

REPLY BRIEF ISO MTD
CASE NO. C-03-4999-SI

dispute that it is perfectly legal and appropriate for doctors to prescribe drugs for off-label uses. *See Washington Legal Found. v. Henney*, 202 F.3d 331, 333 (D.C. Cir. 2000) (noting that a doctor may prescribe a drug for any use regardless of the drug's label and "it is undisputed that the prescription of drugs for unapproved uses is commonplace in modern medical practice and ubiquitous in certain specialties"). Regulations only prohibit the *marketing* of a drug off-label. (¶ 74.)

Plaintiffs conflate sales resulting from physicians prescribing Viread for unapproved (or "off label") uses, which is completely proper, with sales of Viread resulting from off-label marketing, which is improper. Indeed, the language in Plaintiffs' opposition is carefully crafted to do just that. For example, as to CW6, instead of writing, in straightforward fashion, that 70 percent of CW6's sales were the result of his/her off-label marketing, Plaintiffs write, much more ambiguously, that "[a]ccording to CW6, easily 70% of his/her Viread sales were attributable to off-label, treatment naïve patients." (Opp. at 15:6-7.) Similarly, as to CW7, instead of writing that a particular percentage of CW7's sales were the result of his/her off-label marketing, Plaintiffs write that CW7 "estimated that 10% of his/her total Viread sales were off-label to physicians treating Hepatitis B infected patients and that 10% of his/her total Viread sales were off-label in the pediatric population." (*Id.* at 15:11-13.) Plaintiffs know how to allege that sales during the class period were the result of off-label marketing because they made that exact allegation as to CW1 and CW2. However, with CW6 and CW7, Plaintiffs state only that a portion of their sales were *used* off-label—they never attribute the sales to off-label marketing. That is a subtle but important difference. The only reasonable conclusion to draw from Plaintiffs' carefully crafted allegations is that neither CW6 nor CW7 actually stated that a portion of his/her sales was the result of off-label marketing.[6]

---

[6] Plaintiffs incorrectly contend that the allegations by CW8 bolster the estimates of class period sales made by other confidential witnesses. CW8, despite being employed by Gilead during the class period, does not allege that he/she made any sales during the class period that were the result of off-label marketing. (¶ 73.) The fact that CW8 does not allege any such sales undermines Plaintiffs' contention that there were significant sales during the class period that resulted from off-label marketing.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

5.

**REPLY BRIEF ISO MTD**
**CASE NO. C-03-4999-SI**

> **3. Plaintiffs' argument that the confidential witnesses are described sufficiently "to support the probability that a person in the position occupied by the source would possess the information alleged" is a red herring that does not address the complaint's core insufficiency.**

Plaintiffs' argument concerning the descriptions they have provided for the confidential witnesses, repeated in a variety of incarnations (*see, e.g.*, Opp. at 9:11-10:9), misses the point. Even if a witness is described with particularity,[7] the Court should still disregard the individual's allegations if the allegations are not based on his/her personal knowledge. *See Zucco Partners, LLC v. Digimarc Corp*, 552 F.3d 981, 996 (9th Cir. 2009) (rejecting confidential witnesses statements where "witnesses' job titles and employment information [were described] with ample detail" because the complaint failed to establish that certain witness statements were based on personal knowledge). And though it should go without saying, it is not enough for confidential witnesses to be in the position to make reliable allegations, based on firsthand knowledge, about *something*. The allegations must, of course, support the element of the cause of action that needs to be established. *See id.* at 995 (even if reliable, CWs allegations must be indicative of scienter). These CWs say nothing about any sales resulting from improper off-label marketing.

> **4. The alleged corroborating evidence is no substitute for allegations of significant class period sales resulting from off-label marketing.**

Corroborating evidence will save unreliable confidential witnesses only where the corroborating evidence "provide[s] an adequate basis for believing that the defendants' statements were false." *Zucco*, 552 F.3d at 995.[8] Plaintiffs have added no new corroborating evidence with

---

[7] And in this case, not all of the confidential witnesses are described with particularity. For example, Plaintiffs do not provide any specifics regarding CW8's job responsibilities, the region in which he/she worked, or to whom he/she reported. (*See* ¶73.)

[8] Plaintiffs suggest that because they have made allegations based on documentary evidence that corroborate the confidential witnesses' allegations, the standard for confidential witness reliability is relaxed in some way. Plaintiffs write that "in circumstances, as here, where there exists documentary evidence in further support of the allegations provided by CWs, personal sources of information may be relied upon if they are described with 'sufficient particularity to support the probability that a person in the position occupied by the source would posses the information alleged.'" (Opp. at 11 n.12 (citing *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1233 (9th Cir. 2004).) But in *Zucco*, the Ninth Circuit quoted this same sentence from *Oracle* and explained that it meant "the complaint must provide an adequate basis for determining that the witnesses in question have personal knowledge of the events they report." 552 F.3d at 996.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

6.

**REPLY BRIEF ISO MTD**
**CASE NO. C-03-4999-SI**

1   the exception of the additional confidential witnesses. The other corroborating evidence
2   identified by the Plaintiffs was already considered by the Court when dismissing the Fourth
3   Amended Complaint. (*See* Order at 2:10-21 & n.2.) Referring to the alleged corroborating
4   evidence, the Court stated "these allegations are not equivalent to an allegation that defendants
5   engaged in significant off-label sales of Viread during the class period." (*Id.* at 2 n.2.) Further,
6   the mere fact that Plaintiffs added six new confidential witnesses does not make CW1 and CW2's
7   allegations reliable. None of the new confidential witnesses can reliably allege that there were
8   significant sales during the class period that were the result of off-label marketing. Moreover,
9   courts can and do dismiss complaints that contain numerous confidential witnesses that allegedly
10  corroborate one another. *See Zucco*, 552 F.3d at 994-96 (dismissing complaint with six
11  confidential witnesses); *In re Ferro Corp. Sec. Litig.*, Nos. 1:04CV1440, 1:04CV1589, 2007 WL
12  1691358, at *12 (N.D. Ohio June 11, 2007) (denying plaintiff's argument that witnesses'
13  statements are corroborated by one another); *In re Downey Sec. Litig.*, No. CV 08-3261-JFW,
14  2009 WL 736802, at *13 (C.D. Cal. Mar. 18, 2009) (dismissing allegations of thirteen
15  confidential witnesses).

**5. Contrary to Plaintiffs' contention, they need to and have failed to allege *significant* sales of Viread as a result of off-label marketing during the class period.**

Plaintiffs argue that they do not need to allege that there were *significant* class period sales that were the result of off-label marketing, asserting that "the Court did not require Plaintiff [sic] to demonstrate sales that rise to such an arbitrary standard." (Opp. at 17:18-21.) Plaintiffs seize on one phrase in the Court's Order which granted Plaintiffs leave to amend to "'add further support to allegations of off label sales during the class period.'" (Opp. at 17:20-21 (quoting Order at 5).) Taken in isolation, this language is misleading. This Court's Order specifically quoted Judge Jenkins's previous ruling in which he stated that "'Plaintiffs have not alleged that any sales of Viread during the second quarter of 2003 were the result of improper off-label marketing activities,' and that 'even assuming Plaintiffs had alleged that such sales took place, Plaintiffs would also have to allege that those sales were 'material' to the 2003 second quarter reports.'" (Order at 3:21-4:1 (quoting Docket No. 159 at 13).) The Court then noted that for the

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

7.

**REPLY BRIEF ISO MTD**
**CASE NO. C-03-4999-SI**

first time, in the Fourth Amended Complaint, CW2 alleges sales that were "significant." (Order at 4:3.) Further, in examining the corroborating evidence, the Court stated that "these allegations are not equivalent to an allegation that defendants engaged in *significant* off-label sales of Viread during the class period." (Order at 2 n.2 (emphasis added).) Thus, contrary to Plaintiffs' characterization, the Order requires Plaintiffs to provide confidential witnesses who can reliably allege from personal knowledge that there were significant Viread sales during the class period that were the result of improper off-label marketing. As demonstrated above, Plaintiffs have failed to meet this standard.[9]

### B. Plaintiffs' Arguments in Opposition to the Non-Speaking Defendants' Separate Ground for Dismissal Are Without Merit.

Defendants' motion to dismiss argues that Plaintiffs failed to allege with specificity that the Non-Speaking Defendants made or substantially participated in the preparation of a false statement, and argues that the group publishing doctrine no longer applies. Plaintiffs assert that the Court should disregard the substantive issues raised by the Non-Speaking Defendants because they failed to file a motion for reconsideration. However, the Court's Order dismissing the Fourth Amended Complaint without prejudice does not appear to address whether the Non-Speaking Defendants made or substantially participated in the making of a false statement; thus, a motion for reconsideration was not required or appropriate. Therefore, Defendants respectfully submit that the Court can and should address whether the Non-Speaking Defendants can be held

---

[9] Even if the Court were to conclude that CW6 alleged sales of Viread that were the result of off-label marketing, CW6's sales averaged less than one percent of Gilead's overall monthly sales. (¶ 206; Brown Decl., Ex. F at 39.) There is no basis to extrapolate from such a small sample and conclude that a significant portion of Gilead's Viread revenue was the result of off-label marketing. *See In re Zumiez, Inc. Sec. Litig.*, No. C07-1980-JCC, 2009 WL 901934, at *9 (W.D. Wash. Mar. 30, 2009) (allegations by twelve store managers that their stores were underperforming insufficient to support an inference of company-wide problems). Plaintiffs imply that the Court should allow such an extrapolation because it "verifies" the allegations of CW1 and CW2. (Opp. at 15 n.19.) This is pure fallacy. An unwarranted extrapolation from an unrepresentatively small sample does not somehow become statistically valid simply because the number happens to come close to estimates or extrapolations generated from other sources and methodologies. This is particularly true here where the purported estimates of sales by CW1 and CW2 are completely unreliable.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

8.

REPLY BRIEF ISO MTD
CASE NO. C-03-4999-SI

liable as primary violators of section 10(b) and Rule 10b-5 despite not making and not being involved in the preparation of any of the alleged false statements.

Realizing that the complaint does not contain sufficient allegations of statements by the Non-Speaking Defendants, Plaintiffs attempt to recast their complaint against these individuals as an insider trading claim—in clear contradiction of the language of the complaint. In the six years of litigation and the six complaints filed, this has never been an insider trading case. The argument is one of desperation. It is indisputable that Defendants Perry, Bischofberger, Carraciolo, and Lee did not make any of the alleged false statements and did not substantially participate in the preparation of any of the alleged false statements.

### 1. The Court did not previously decide this issue, and, therefore, a motion for reconsideration was unnecessary.

A motion for reconsideration was unnecessary because the Court's Order dismissing the Fourth Amended Complaint does not address whether the Non-Speaking Defendants actually made or substantially participated in the preparation of an alleged false statement. The only reference in the Order to the individual defendants is one line that states: "Finally, the Court finds that the FAC adequately pleads a basis for holding the individual defendants liable. *See South Ferry LP, No. 2 v. Killlinger*, 542 F.3d 776, 782 (9th Cir. 2008)." (Order at 6:5-7.) The *South Ferry* case addresses only the issue of scienter. The issue before the Ninth Circuit in *South Ferry* was whether plaintiffs could rely on the core operations inference following *Tellabs, Inc. v. Makor Issues and Rights, Ltd.*, 551 U.S. 308 (2007), and in what circumstances the core operations inference would be sufficient to create a strong inference of scienter. *South Ferry*, 542 F.3d at 784-86. In Plaintiffs' opposition to Defendants' motion to dismiss the Fourth Amended Complaint, Plaintiffs argued, based on *South Ferry*, that it was reasonable for the Court to infer that Defendants had knowledge of the off-label marketing due to the core operations inference. (*See* Docket No. 218 at 22-23.) Therefore, the most reasonable reading of the sentence in the Order, followed by the citation to *South Ferry*, is that the Court concluded it could infer Defendants' knowledge of the off-label marketing. It does not appear that the Court addressed

the issue of whether the Non-Speaking Defendants can be held liable even though they never made or substantially participated in the preparation of a false statement.

Similarly, when read in context, the Court's statement that it is "not persuaded by the other contentions raised in defendants' motion to dismiss" does not suggest that the Court decided the issue of whether the Non-Speaking Defendants can be held liable for statements which they did not make. (Opp. at 20 n.26.) When that statement is read along with the rest of the paragraph, it appears that the Court lists out the "other contentions" by which it was not persuaded. Absent from this list is any mention of whether the Non-Speaking Defendants can be held liable for statements they did not make or substantially participate in making. Thus, Defendants do not and did not believe a motion for reconsideration was necessary.

**2. Plaintiffs do not dispute that the Non-Speaking Defendants did not make any false statement or substantially participate in preparing a false statement.**

In their opening brief, Defendants argue that the Fifth Amended Complaint failed to assert specific allegations that the Non-Speaking Defendants made any of the alleged false statements or substantially participated in the preparation of the false statement as required by *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) and *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 n.5 (9th Cir. 2000). Plaintiffs' Opposition does not contest this point. Plaintiffs fail to point to any specific allegation that the Non-Speaking Defendants substantially participated in the preparation of a false statement, conceding that the Fifth Amended Complaint is insufficient on this point.

**3. Plaintiffs do not dispute that the "group publishing" doctrine is no longer viable.**

For the past six years, Plaintiffs have alleged in their various complaints that the Defendants are liable for all the alleged false statements, regardless of whether they made them, under the "group publishing" doctrine. (*See, e.g.,* ¶ 30.) In their opening brief, Defendants argue that the "group publishing" doctrine is no longer good law after the passage of the PSLRA. (*See* Mot. to Dismiss at 21:25-23:2.) Again, Plaintiffs make no attempt to counter this argument and thus effectively concede that the "group publishing" doctrine no longer applies. In the absence of

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

10.

**REPLY BRIEF ISO MTD**
**CASE NO. C-03-4999-SI**

the group publishing doctrine, given that Plaintiffs have failed to allege specific facts demonstrating that the defendants substantially participated in making false statements, there is no basis for holding the Non-Speaking Defendants liable.

### 4. Plaintiffs incorrectly argue that the Non-Speaking Defendants can be held liable for insider trading when the Fifth Amended Complaint instead alleges claims for false statements.

In an attempt to keep the Non-Speaking Defendants in this case, Plaintiffs argue that the complaint states a claim against them because there are allegations that they sold shares during the class period. (Opp. at 21.) In other words, for the first time in this case, in an opposition brief, Plaintiffs accuse these individual defendants of insider trading. In support of this argument, Plaintiffs cite cases for the unremarkable proposition that an individual can be held liable for violating section 10(b) on the basis of insider trading. But the Complaint would need to assert claims for insider trading—which it does not do—as opposed to claims based on false statements. *See e.g., United States v. O'Hagan*, 521 U.S. 642, 653 (1997) (alleging defendant "in breach of a duty of trust and confidence he owed" to his law firm and client "traded on the basis of nonpublic information" regarding his clients proposed tender offer); *Johnson v. Aljian,* 394 F. Supp. 2d 1184, 1187 (C.D. Cal. 2004) (alleging defendant received a non-public report that projected a significant reduction in the company's cash flow and traded on the basis of that information).

In contrast to the cases cited by Plaintiffs, this case is not, and never has been, about the individual defendants receiving inside information and trading on the basis of that information. Rather, this case alleges false and misleading statements to the market. In the "Summary and Overview" section of the Fifth Amended Complaint, Plaintiffs state that "[t]hroughout the Class Period, Defendants knowingly and affirmatively misrepresented the most important measurement of Gilead's performance and prospects to the investing public: the nature and cause of its increased sales of Viread." (¶ 4.) Tellingly, nowhere in that section do Plaintiffs allege that any defendant is liable for insider trading. Later, Plaintiffs allege "[e]ach of the Defendants is liable as a primary violator in making false and misleading statements, ...." (¶ 31.) Again, there is nothing about insider trading. The only section addressing class period sales by insiders is labeled "Additional Scienter Allegations." The first paragraph of that section states "Defendants

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

11.

REPLY BRIEF ISO MTD
CASE NO. C-03-4999-SI

acted with scienter in that they knew or disregarded with deliberate recklessness that the public documents and statements . . . were materially false and misleading." (¶ 269.) Nowhere do Plaintiffs contend that they are trying to use the stock sales to allege insider trading as opposed to using the stock sales as evidence that the Defendants made the alleged false statements with scienter. This is simply not an insider trading case.[10] It is a false-and-misleading-statements case, and the Court should not hold the Non-Speaking Defendants liable for statements that they had no part in making simply because they sold shares during the class period.[11]

Plaintiffs cite one case, *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corporation*, 320 F.3d 920 (9th Cir. 2003), that they contend is based on alleged false and misleading statements where the court held that the controlling shareholder of the corporation could be held liable as a primary violator based on insider trading.[12] (Opp.

---

[10] Moreover, Plaintiffs have not sufficiently alleged, nor does it appear that they have, standing to assert an insider trading claim. To have standing to assert an insider trading claim under section 10(b) and Rule 10b-5, Plaintiffs must have traded contemporaneously with the Non-Speaking Defendants, and Plaintiffs must allege so with specificity. *Neubronner v. Milken*, 6 F.3d 666, 670 (9th Cir. 1993). The Non-Speaking Defendants sold stock between August 5 and August 29, 2003. (¶ 274.) "No liability can attach for trades made by plaintiffs before the insider engages in trading activity." *In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1489-90 (N.D. Cal. 1992). While there are no allegations in the Fifth Amended Complaint regarding the dates Plaintiffs purchased or sold stock, it appears the only date on which one plaintiff traded after Non-Speaking Defendants was September 19, 2003. (Docket No. 14, Ex. A.) Purchasing stock a full three weeks after Non-Speaking Defendants' last trade is not trading contemporaneously. *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1522 (N.D. Cal. 1990) ("[T]he contemporaneous requirement has been deemed not met if plaintiff's trade occurred *more than a few days* apart from defendants' transactions.") (emphasis added).

[11] Notably, Judge Jenkins held in dismissing the Consolidated Amended Complaint that the timing of Defendants' stock sales was not suspicious. (Docket No. 98 at 14:16-17.)

[12] While *America West* has been understood to be a misrepresentation case involving fraud on the market, *see In re NextCard, Inc. Sec. Litig.*, No. C-01-21029-JF, 2005 U.S. Dist. LEXIS 9234, at *15-16 (N.D. Cal. Feb. 7, 2005), it also appears that plaintiffs may have been asserting an insider trading claim against the controlling shareholders. *See America West*, 320 F.3d at 924. The Ninth Circuit in summarizing the claims stated that defendants "made misleading statements to artificially inflate the value of America West's stock while their controlling shareholders engaged in insider trading of over $67 million worth of stock." *Id*. To the extent plaintiffs alleged an alternative theory of liability (insider trading) in *America West*, the fact that a court determined that plaintiffs stated a claim under that theory does not support the notion that in a misrepresentations case an individual can be held liable for selling shares during the class period, even if he/she was not involved with making the alleged false statements.

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

12.

REPLY BRIEF ISO MTD
CASE NO. C-03-4999-SI

at 21:19-22:3.) Courts that have addressed *America West* have noted that the court failed to address or analyze the Supreme Court's decision in *Central Bank*. *See In re NextCard,* 2005 U.S. Dist. LEXIS 9234 at *15-16; *Batwin v. Occam Networks, Inc.*, No. CV 07-2750 CAS (SHx), 2008 U.S. Dist LEXIS 52365, at *49 (C.D. Cal. July 1, 2008). In *In re NextCard*, the court, after analyzing *America West*, stated that "[b]ecause the Supreme Court's decision on this issue is controlling, this Court concludes that § 10(b) misrepresentation/omission claims cannot be maintained against defendants who neither make nor contribute to the drafting of the allegedly misleading statements despite the seemingly contrary holding of *America West*." 2005 U.S. Dist. LEXIS 9234, at *16. Similarly, in *Batwin*, the court criticized *America West* for failing to distinguish liability for a section 10(b) claim based on insider trading versus liability under section 10(b) for a misrepresentation. 2008 U.S. Dist. LEXIS 52365, at *50. Upon concluding that plaintiff's claims related primarily to misrepresentations, the court followed *Central Bank* and *Stoneridge* and dismissed the non-speaking defendants. *Id.*

Courts have continued to require that plaintiffs allege with specificity that the defendants either made a false statement or substantially participated in the making of a false statement. *In re Downey Sec. Litig.*, 2009 WL 736802, at *6 ("courts since *Stoneridge* have continued to dismiss actors (including insiders) who have not made any misleading statements, either explicitly or implicitly because plaintiffs could not prove reliance on their actions"); *In re Dura Pharm., Inc. Sec. Litig.*, 548 F. Supp. 2d 1126, 1141 (S.D. Cal. 2008) (dismissing defendant who did make any of the alleged false statements and rejecting plaintiffs' argument of liability based on stock sales); *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1153 (C.D. Cal. 2007) (dismissing individual defendants who sold stock during the class period because they were not specifically alleged to have substantially participated in the preparation of the alleged false statements); *In re Tibco Software, Inc.*, No. C-05-2146 SBA, 2006 WL 1469654, at *20, *28 (N.D. Cal. May 25, 2006) (same); *In re Netopia Inc., Sec. Litig.*, No. C-04-03364 RMW, 2005 WL 3445631, at *2, *6 (N.D. Cal. Dec. 15, 2005) (same).

Accordingly, because this is not an insider trading case, the Court should continue to follow *Central Bank* and its progeny and dismiss the claims against the Non-Speaking Defendants.

### C. Plaintiffs' Assertion that Merely Alleging an Individual's Position Is Sufficient to Allege Control Person Liability Is Incorrect.

As an initial matter, Plaintiffs incorrectly contend that Rule 8 applies to section 20(a) claims. (Opp. at 23:5-9.) While Plaintiffs cite to one case that applies Rule 8, numerous courts have concluded that plaintiffs must plead control person liability with particularity. *See, e.g., In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C-99-00109-SBA, 2000 WL 1727377, at *25 (N.D. Cal. Sept. 29, 2000) (stating "the complaint must plead the circumstances of the control relationship with particularity"); *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 561 (D. Del. 2002) (holding that control person claims must be pleaded with particularity); *Hayley v. Parker*, No. Civ.01-0069, 2002 WL 925322, at *9-10 (C.D. Cal. Mar. 15, 2002) (requiring plaintiffs to plead particularized facts concerning how the individuals exercised control). Thus, to support a section 20(a) claim, Plaintiffs "must provide some factual support that defendants were in a position to control a primary violator;" mere boilerplate allegations of control are insufficient. *In re Int'l Rectifier Corp. Sec. Litig.*, No. CV-07-02544-JFW (VBKx), 2008 WL 4555794, at *22 (C.D. Cal. May 23, 2008); *see also In re Hansen*, 527 F. Supp. 2d. at 1163.

Plaintiffs argue that alleging each defendant "held important positions at the Company is sufficient in and of itself at the pleading stage to allege control person liability."[13] (Opp. at 23 n.31.) Regardless of the pleading standard, this is an incomplete and inaccurate statement of the law.[14] Allegations of the individual's title and responsibilities will be sufficient only where one

---

[13] Plaintiffs cite *In re Adaptive Broadband Securities Litigation*, No. C-01-1092-SC, 2002 WL 989478, at *19 (N.D. Cal. Apr. 2, 2002), for this proposition. However, even in *Adaptive*, the court held that plaintiffs had alleged that the defendants spoke on behalf of the company and made key decisions in how to present the financial results of the company with sufficient specificity to withstand a motion to dismiss. In contrast to *Adaptive*, there are no specific allegations that the Non-Speaking Defendants spoke on behalf of the company or had any involvement in the preparation of the alleged false statements.

[14] Even in *Batwin*, the case cited by Plaintiffs for the proposition that Rule 8 applies, the court dismissed the section 20(a) allegations against three directors who served on the Audit Committee and signed the SEC filings because the complaint failed to "offer any indication that these

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

14.

REPLY BRIEF ISO MTD
CASE NO. C-03-4999-SI

can determine control over a primary violator on that basis. *See In re Int'l Rectifier*, 2008 WL 4555794, at *22. In this case, there is no basis to assume that any of the Non-Speaking Defendants, who were vice presidents of departments such as operations and research, could have had control over the CEO, CFO, or the Company's press releases and financial statements.

### III. CONCLUSION

This case has been pending for six years and there have been six versions of the complaint filed. Nevertheless, Plaintiffs have still failed to assert a reliable allegation of significant Viread sales during the class period resulting from off-label marketing. Further, after all this time, Plaintiffs have still failed to connect Defendants Perry, Bischofberger, Carraciolo, and Lee to any of the alleged misstatements. Thus, Defendants respectfully request that the Fifth Amended Complaint be dismissed with prejudice.

Dated: September 18, 2009         COOLEY GODWARD KRONISH LLP

/s/ John C. Dwyer
_____
John C. Dwyer

Attorneys for Defendants
GILEAD SCIENCES, INC., JOHN C. MARTIN, JOHN F. MILLIGAN, MARK L. PERRY, NORBERT W. BISCHOFBERGER, ANTHONY CARRACIOLO and WILLIAM A. LEE

---

defendants were involved in the day-to-day affairs of [the company], and therefore, they do not present a basis for control liability against these defendants." 2008 U.S. Dist. LEXIS, at *79. Accordingly, even under Rule 8, Plaintiffs would need to allege more than just that the individuals held important positions with the company.

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

15.

REPLY BRIEF ISO MTD
CASE NO. C-03-4999-SI