ROBBINS GELLER RUDMAN
& DOWD LLP
SANFORD SVETCOV (36561)
SUSAN K. ALEXANDER (124276)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
ssvetcov@rgrdlaw.com
salexander@rgrdlaw.com
– and –
DAVID J. GEORGE (*admitted pro hac vice*)
ROBERT J. ROBBINS (*admitted pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
dgeorge@rgrdlaw.com
rrobbins@rgrdlaw.com

MILBERG LLP
JOSHUA H. VINIK (*admitted pro hac vice*)
LORI G. FELDMAN (*admitted pro hac vice*)
ROSS BROOKS (*admitted pro hac vice*)
One Pennsylvania Plaza
New York, NY 10119
Telephone: 212/594-5300
212/868-1229 (fax)
jvinik@milberg.com
lfeldman@milberg.com
rbrooks@milberg.com

Co-Lead Counsel for Plaintiffs

KAPLAN FOX & KILSHEIMER LLP
LAURENCE D. KING (206423)
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415/772-4700
415/772-4707 (fax)
lking@kaplanfox.com

Liaison Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re GILEAD SCIENCES SECURITIES LITIGATION | Master File No. C-03-4999-SI |
| | CLASS ACTION |
| This Document Relates To: ALL ACTIONS. | NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| | DATE: November 5, 2010<br>TIME: 10:30 a.m.<br>CTRM: The Honorable Susan Illston |

# TABLE OF CONTENTS


Page

I. PRELIMINARY STATEMENT ....1

II. THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS ....5

III. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ....7

A. The Strength of Lead Plaintiffs' Case When Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation Supports Approval of the Settlement ....7

1. The Risks of Proving Falsity and Materiality ....8

2. The Risks of Proving Loss Causation and Damages ....10

3. The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement ....12

B. Lead Plaintiffs Have Engaged in Sufficient Informal Discovery and a Thorough Investigation to Identify the Strengths and Weaknesses of Their Case and the Propriety of Settlement ....13

C. The Recommendations of Experienced Counsel After Extensive Litigation and Arm's-Length Settlement Negotiations Favor the Approval of the Settlement ....15

D. The Risks of Maintaining the Class Action Through Trial Support the Settlement ....16

IV. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ....16

V. CONCLUSION ....17

# TABLE OF AUTHORITIES


Page

**CASES**

*Beecher v. Able*,
575 F.2d 1010 (2d Cir. 1978) .......... 16

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) .......... 7

*Bryant v. Avado Brands, Inc.*,
100 F. Supp. 2d 1368 (M.D. Ga. 2000), *rev'd on other grounds and remanded sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001) .......... 7

*Church v. Consol. Freightways, Inc.*,
No. C-90-2290-DLJ, 1993 U.S. Dist. LEXIS 6439 (N.D. Cal. May 3, 1993) .......... 6

*Churchill Vill. L.L.C. v. GE*,
361 F.3d 566 (9th Cir. 2004) .......... 5

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992) .......... 16

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) .......... 10, 11

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) .......... 6

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) .......... 7

*In re Apollo Group, Inc. Sec. Litig.*,
No. CV 04-2147-PHx-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), *rev'd*, No. 08-16971, 2010 U.S. App. LEXIS 14478 (9th Cir. June 23, 2010) .......... 11

*In re Chicken Antitrust Litig. Am. Poultry*,
669 F.2d 228 (5th Cir. 1982) .......... 16

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
No. MDL 901, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) .......... 15

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
142 F.R.D. 588 (S.D.N.Y. 1992) .......... 16

*In re Ikon Office Solutions, Inc.*,
194 F.R.D. 166 (E.D. Pa. 2000) .......... 7, 12, 16

Page

*In re Indep. Energy Holdings PLC*,
No. 00 Civ. 6689(SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ........ 6

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ........ 13, 14

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........ 5, 15

*In re Oracle Corp. Sec. Litig.*,
No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009) ........ 11

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ........ 5

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ........ 7

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom.*
*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ........ 6

*Lewis v. Newman*,
59 F.R.D. 525 (S.D.N.Y. 1973) ........ 7

*Lundell v. Dell, Inc.*,
No. CIVA C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ........ 6

*Marshall v. Holiday Magic, Inc.*,
550 F.2d 1173 (9th Cir. 1977) ........ 5

*Milstein v. Huck*,
600 F. Supp. 254 (E.D.N.Y. 1984) ........ 12

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*,
797 F.2d 799 (9th Cir. 1986) ........ 5

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ........ 7, 15

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ........ 6, 12, 13

*Republic Nat'l Life Ins. Co. v. Beasley*,
73 F.R.D. 658 (S.D.N.Y. 1977) ........ 7

Page

*Reynolds v. Beneficial Nat'l Bank*,
288 F.3d 277 (7th Cir. 2002) ....................13

*Robbins v. Koger Props.*,
116 F.3d 1441 (11th Cir. 1997) ....................11

*Rodriquez v. West Publishing Corp.*,
563 F.3d 948 (9th Cir. 2009) ....................15

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ....................6

*Util. Reform Project v. Bonneville Power Admin.*,
869 F.2d 437 (9th Cir. 1989) ....................5

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) ....................5

*White v. NFL*,
822 F. Supp. 1389 (D. Minn. 1993)....................16

*Williams v. First Nat'l Bank*,
216 U.S. 582 (1910)....................5

*Woo v. Home Loan Group, L.P.*,
No. 07-CV-202 H (POR), 2008 WL 3925854 (S.D. Cal. Aug. 25, 2008)....................6

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
Rule 23 ....................16
Rule 23(e)....................1, 5

17 C.F.R.
§240.10b-5 ....................11

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that, pursuant to the Order Preliminarily Approving Settlement and Providing for Notice dated July 7, 2010 (Dkt. No. 271), a "Fairness Hearing" will be held on November 5, 2010, at 10:30 a.m., or as soon thereafter as counsel may be heard, at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Susan Illston, United States District Judge. Plaintiffs Trent St. Clare and Terry Johnson (collectively, "Lead Plaintiffs") will move at the Fairness Hearing for a judgment finally approving the Settlement of this Action and dismissing it with prejudice. This motion is based on the attached Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds, the Joint Declaration of David J. George and Lori G. Feldman in Support of Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and an Award of Attorneys' Fees and Expenses ("Joint Declaration"), the Stipulation of Settlement dated as of June 28, 2010 (the "Stipulation") (Dkt. No. 267)[1], all other pleadings and matters of record, and such additional evidence or argument as may be presented before or at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs submit this memorandum in support of their motion for final approval of the Settlement of this Action for $8,250,000 (plus accrued interest) in cash, and for approval of the Plan of Allocation of the Settlement proceeds. The Settlement was reached after more than six years of hard-fought and extensive litigation, including five rounds of motion to dismiss briefing, an appeal to the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit"), and arm's-length settlement negotiations with the substantial assistance of the Honorable Layn R. Phillips (Ret.), a highly-respected mediator with extensive experience in the mediation of complex civil actions.

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meanings as set forth in the Stipulation which was previously filed with the Court.

Plaintiffs' Co-Lead Counsel submit, as discussed herein and in the accompanying Joint Declaration, that the Settlement is a highly favorable result, as demonstrated by a balancing of factors. These factors include the strengths and weaknesses of the case, the risk, expense, complexity, and the likely duration of the case, the recommendation of experienced counsel after extensive litigation and arm's-length settlement negotiations, and reaction of the Class Members to the Settlement.

Lead Plaintiffs allege that Defendants violated the federal securities laws by making misrepresentations and omissions concerning Gilead Sciences, Inc.'s ("Gilead") marketing and sale of Viread, a flagship product, that created the impression that demand for Viread was strong (when prescription volume was actually overwhelmingly driven by off-label marketing) which was material to Gilead's financial success. This alleged off-label marketing caused Gilead Publicly Traded Securities to be overvalued and artificially inflated, so that when the off-label marketing was revealed, physicians stopped prescribing Viread. This caused wholesalers to draw down their Viread inventory, and ultimately, when these facts became available to the investing public, the truth regarding Gilead's financials and future business prospects caused the value of Gilead's stock to plummet.

Defendants vigorously opposed the Action from the outset, filing three motions to dismiss before the District Court dismissed the case with prejudice. Undaunted, Plaintiffs' Co-Lead Counsel successfully appealed the dismissal to the Ninth Circuit, which reversed the District Court's decision, finding that Lead Plaintiffs sufficiently alleged both loss causation and economic loss. Defendants continued to aggressively defend the Action, unsuccessfully seeking certiorari and filing two more motions to dismiss before this Court upheld Lead Plaintiffs' Fifth Amended Complaint.

As evidenced by their extensive efforts to date, Plaintiffs' Co-Lead Counsel believe this Action has significant merit and that they would likely prevail on the issues presented. However, they are also aware that Lead Plaintiffs faced significant risks in obtaining a favorable outcome if litigation continued. For example, Defendants would continue to argue that Lead Plaintiffs could not prove loss causation because, among other things, the temporal gap between the time the FDA Warning Letter was revealed and the subsequent decline in Gilead's stock value. Similarly,

Defendants would argue that Lead Plaintiffs could not prove that physicians stopped prescribing Viread due to the FDA Warning Letter. Although the Ninth Circuit reversed the District Court's holding that Lead Plaintiffs failed to adequately plead loss causation, Lead Plaintiffs' ability to prove the essential element of loss causation on summary judgment or at trial was uncertain. Moreover, Lead Plaintiffs were faced with the formidable task of proving falsity and materiality on summary judgment or at trial because Defendants took the position that Gilead's sales of Viread were both legal and ethical and that off-label marketing, if any, did not result in material sales of Viread during the Class Period.

In addition, as a result of the significant time between the events of interest and any deposition or trial, the ability, as well as willingness, of many witnesses to testify competently about those events could have been impaired and many of the documents Lead Plaintiffs would seek could have been lost or otherwise unavailable for production. These issues would affect Lead Plaintiffs' ability to successfully prosecute their case. The Settlement eliminates these and many other risks of continued litigation. Here, Defendants have demonstrated a commitment to defend this case through and beyond trial, if necessary, and are represented by well-respected and highly capable counsel from Cooley LLP. If not for this Settlement, the case would have continued to be fiercely contested by the parties with the ultimate outcome uncertain.

At the time of settlement, Plaintiffs' Co-Lead Counsel were able to fully assess the strengths and weaknesses of Lead Plaintiffs' claims as a result of more than six years of investigation and litigation. In addition to preparing five fact-intensive complaints, briefing five rounds of motions to dismiss and an appeal to the Ninth Circuit, Plaintiffs' Co-Lead Counsel: (i) thoroughly reviewed and analyzed publicly available information regarding Gilead; (ii) thoroughly investigated, with the assistance of in-house and outside private investigators, the facts underlying the allegations in the complaints; (iii) thoroughly reviewed and analyzed documents from various sources, which required understanding the many highly technical and scientific issues in the Action; (iv) thoroughly researched the law pertinent to the claims and defenses asserted; (v) consulted with medical experts regarding the pharmaceutical marketing and FDA rules, regulations, and procedure; (vi) analyzed the damages in the Action and consulted with economic experts regarding the calculation of damages,

loss causation, materiality, and movements in the price of Gilead stock; and (vii) prepared for and attended mediation with Judge Phillips.

Plaintiffs' Co-Lead Counsel, who are well-respected and highly experienced in prosecuting securities fraud class actions, have concluded that the Settlement is a very good result under the circumstances, and is in the best interest of the Class. This conclusion is based on all the circumstances present here, including the substantial risks, expense, and uncertainties in continuing the Action through summary judgment, trial, and probable appeal, the relative strengths and weaknesses of the claims and defenses asserted, a complete analysis of the evidence obtained and the legal and factual issues presented, past experience in litigating complex actions similar to the present action, and the serious disputes between the parties concerning the merits and damages.

While the deadline for filing objections has not yet passed, members of the Class appear to agree with Plaintiffs' Co-Lead Counsel's conclusion. Pursuant to an Order of the Court dated July 7, 2010, over 74,000 copies of the Settlement Notice and Proof of Claim were sent to potential Class Members.[2] In addition, a Summary Notice was published in *Investor's Business Daily*. The Settlement Notice, Summary Notice, and Proof of Claim were also placed on the Claims Administrator's website, on or before July 23, 2010. La Count Aff., ¶¶13-15. The Settlement Notice informed potential Class Members of the terms of the Settlement, their right to object or opt-out of the Settlement, the Plan of Allocation of Settlement proceeds, and counsel's request for an award of attorneys' fees and expenses. Although the deadline for objecting is September 30, 2010, to date not a single Class Member has objected to any aspect of the Settlement, Plan of Allocation, or Plaintiffs' Co-Lead Counsel's request for an award of attorneys' fees and expenses.

For all of the reasons discussed herein and in the Joint Declaration, it is respectfully submitted that the Settlement should be finally approved by the Court. Moreover, the Plan of Allocation was developed with Lead Plaintiffs' materiality and damages experts and tracks the

---

[2] *See* paragraphs 5 through 10 to the Affidavit of Michelle M. La Count of A.B. Data Ltd. Regarding Mailing of Settlement Notice and Proof of Claim Forms and Publication of Summary Notice ("La Count Aff."), submitted herewith.

theory of damages asserted and provides a fair and reasonable basis for allocating the net settlement proceeds among Class Members, and therefore should be approved.

## II. THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well-established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits."). Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. It is beyond question that "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).[3] In deciding whether to approve a proposed settlement of a stockholders' class action under Federal Rule of Civil Procedure 23(e), the court must first find that the proposed settlement is "'fair, adequate, and reasonable.'"[4] The Ninth Circuit has provided factors which may be considered in evaluating the fairness of a class action settlement:

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

---

[3] The law consistently favors the compromise of disputed class action claims. *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Churchill Vill. L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004); *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986).

[4] *Pac. Enters.*, 47 F.3d at 377; *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). All citations are omitted and emphasis added throughout unless otherwise indicated.

*Officers for Justice*, 688 F.2d at 625. *Accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Woo v. Home Loan Group, L.P.*, No. 07-CV-202 H (POR), 2008 WL 3925854, at *3 (S.D. Cal. Aug. 25, 2008); *Church v. Consol. Freightways, Inc.*, No. C-90-2290-DLJ, 1993 U.S. Dist. LEXIS 6439 (N.D. Cal. May 3, 1993); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989) ("*WPPSS*"), *aff'd sub nom. Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992). "'The relative degree of importance to be attached to any particular factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case.'" *Woo*, 2008 WL 3925854, at *3 (quoting *Officers for Justice*, 688 F.2d at 625).

The district court must exercise "sound discretion" in approving a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375. In exercising its discretion,

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice*, 688 F.2d at 625. The Ninth Circuit defines the limits of the inquiry to be made by the court in the following manner:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators.

*Id.* (emphasis in original).

Moreover, where, as here, a proposed class settlement has been reached after arm's-length negotiation conducted by capable counsel, it is presumptively fair. *See Lundell v. Dell, Inc.*, No. CIVA C05-3970 JWRS, 2006 WL 3507938, at *3 (N.D. Cal. Dec. 5, 2006) (approving class action settlement that was "the result of intensive, arms'-length negotiations between experienced attorneys familiar with the legal and factual issues of this case"); *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement

was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

## III. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A. The Strength of Lead Plaintiffs' Case When Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation Supports Approval of the Settlement

In determining whether the proposed Settlement is fair, reasonable, and adequate, the Court should balance against the continuing risks of litigation, the benefits afforded to the Class and the immediacy and certainty of a substantial recovery. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). In other words,

> "[t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'"

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

In the context of approving class action settlements, courts attempting to balance these factors have recognized "that stockholder litigation is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977). This is even more so today in this post-PSLRA environment amid defendants' constant attempts to push the envelope and contours of the PSLRA. *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"). As one court noted: "An unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard." *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd on other grounds and remanded sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).

While Plaintiffs' Co-Lead Counsel believe that the litigation has significant merit, they recognize that Lead Plaintiffs faced numerous risks and uncertainties and were well aware that many other similar actions have been prosecuted in the belief that they were meritorious, only to lose on dispositive motions, at trial, or on appeal. The Settlement recognizes the risks of complex litigation involving difficult legal and factual issues. As discussed herein and in the Joint Declaration, the risks of continued litigation when weighed against the substantial and certain recovery for the Class confirms the reasonableness of the Settlement. The Settlement is unquestionably better than another distinct possibility – no or little recovery for the Class.

**1. The Risks of Proving Falsity and Materiality**

Lead Plaintiffs' case centered on allegations that Defendants engaged in an illegal, off-label marketing scheme, with respect to Viread, and intentionally made material misstatements and omissions with regard to Viread sales, which caused the artificial inflation of Gilead stock during the Class Period, in violation of the federal securities laws. The alleged misrepresentations and omissions concerning the marketing and sales of Viread created the impression that demand for Viread was strong, when prescription volume was actually driven by improper off-label marketing. Lead Plaintiffs also allege that 75%-95% of all Viread sales during the Class Period resulted from improper off-label marketing. This was material to Gilead's financial success, as Viread sales comprised approximately 65% of Gilead's total revenues during the Class Period. This alleged off-label marketing of Viread caused Gilead securities to be overvalued and artificially inflated, so that when the off-label marketing was revealed, physicians stopped prescribing Viread, which caused wholesalers to draw down their Viread inventory, and ultimately, when these facts became available to the investing public, the truth regarding Gilead's financials and future business prospects caused the value of Gilead's stock to plummet.

Lead Plaintiffs believe that based on the evidence adduced to date, including interviews with former Gilead employees and customers, they had a good case as to liability and would be able to prove that Defendants failed to disclose that they were engaged in illegal off-label marketing of Viread, and that the misstatements and omissions made by Defendants during the Class Period

regarding Viread sales were material and caused the price of Gilead securities to be artificially inflated.

While Lead Plaintiffs believe that their claims are strong, getting past summary judgment and establishing liability at trial would by no means be guaranteed. Defendants have adamantly denied any liability and have asserted from the outset of the Action that they possess absolute defenses to Lead Plaintiffs' claims. As evidenced by Defendants' numerous motions to dismiss, falsity and materiality were aggressively contested issues in this Action, which may have proved difficult to establish. Defendants took the position that Gilead's sales of Viread were both legal and ethical and that off-label marketing, if any, did not result in material sales of Viread during the Class Period. Proving the falsity and materiality of any of Defendants' actionable Class Period statements would have been a significant hurdle on a motion for summary judgment and at trial.

Although Lead Plaintiffs believe that they would present sufficient evidence to support their claims, Lead Plaintiffs were aware that Defendants would present counter-evidence and other substantial obstacles to obtaining a judgment in their favor at trial. Moreover, there was no certainty that discovery would tend to support or disprove Lead Plaintiffs' allegations. In order to prove their case, Lead Plaintiffs would have to rely on significant testimony from former Gilead employees and customers, many of whom would be testifying about matters that occurred more than seven years ago. As a result of the significant time between the events of interest and any deposition or trial, the ability, as well as willingness, of many witnesses to testify completely about those events could be impaired. In addition, due to the age of the case, many of the documents that Lead Plaintiffs would seek to be produced could turn out to be lost or otherwise unavailable for production. These issues could seriously affect Lead Plaintiffs' ability to successfully prosecute their claims.

The fact that the operative complaint in this Action is the Fifth Amended Complaint, and that there were five motions to dismiss and an appeal to the Ninth Circuit, amply demonstrates the fact that the case entailed a number of complex issues. Assuming Lead Plaintiffs survived Defendants' anticipated motion for summary judgment after completion of discovery, presenting these complex issues to a jury posed a particular risk to Lead Plaintiffs' hopes for success at trial. Lead Plaintiffs could not be certain that a jury would see through the complexity of the underlying facts to the heart

of the alleged fraud. Moreover, the risks of establishing liability posed by complex issues with conflicting testimony and evidence would be exacerbated by the following risks inherent in all shareholder litigation, including the unpredictability of a lengthy and complex jury trial, the risk that witnesses could be unavailable or jurors could react to the evidence in unforeseen ways, the risk that a jury would find that some or all of the alleged misrepresentations were not material, and the risk that the jury could find that Defendants believed in the appropriateness of their actions at the time.

**2. The Risks of Proving Loss Causation and Damages**

Defendants vigorously argued throughout the Action that Lead Plaintiffs failed to set forth a provable theory of loss causation, and were steadfast in their position that Lead Plaintiffs would not be able to prove any damages resulting from the alleged false and misleading statements because any stock price declines were caused by outside market forces or were caused by factors wholly unrelated to the alleged fraud.

Lead Plaintiffs' theory of loss causation was the stock price drop at the end of the Class Period was attributable, at least in part, to Defendants' false and misleading statements concerning the true driver of Viread sales – off-label marketing. When the truth regarding Viread sales was revealed, physicians were less eager to prescribe Viread to their patients causing a drop in Viread sales, which caused the wholesalers to draw down their inventories. When the public finally realized the impact of the off-label marketing and the FDA Warning Letter, the artificial inflation came out of Gilead's stock price. In reversing the District Court's opinion and remanding the Action, the Ninth Circuit held that Lead Plaintiffs sufficiently alleged loss causation and economic loss. While Lead Plaintiffs and Plaintiffs' Co-Counsel believe, and the Ninth Circuit has held, that their theory of loss causation satisfied the pleading standard set out by the Supreme Court in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005), Lead Plaintiffs' ability to prove the essential element of loss causation on summary judgment or at trial was uncertain in light of, among other things, the temporal gap between the time the FDA Warning Letter was revealed and the subsequent decline in Gilead's stock value as well as the substantial hurdle of proving that physicians stopped prescribing Viread as a result of the FDA Warning Letter.

Moreover, *Dura*, and subsequent cases interpreting *Dura*, have made proving loss causation even more difficult and uncertain than in the past. Two recent examples illustrate this point. In *In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), this Court granted summary judgment in defendants' favor holding that shareholder plaintiffs failed to present sufficient evidence to establish loss causation under Rule 10b-5. While the Ninth Circuit recently reversed the decision, the court in *In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHx-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), *rev'd*, No. 08-16971, 2010 U.S. App. LEXIS 14478 (9th Cir. June 23, 2010), on a motion for judgment as a matter of law, overturned a jury verdict in favor of shareholders based on insufficient evidence presented at trial to establish loss causation.

Also, the amount of damages incurred by Class Members would have been hotly- contested at trial. Damages in cases such as these are always difficult to prove. At trial, the damage assessments of Lead Plaintiffs' and Defendants' experts were sure to vary substantially, and in the end, this crucial element at trial would have been reduced to a "battle of the experts." The determination of damages is a complicated and uncertain process involving conflicting expert testimony. Expert testimony could rest on many subjective assumptions, any of which could potentially be rejected by a jury as speculative or unreliable. Lead Plaintiffs would have likely faced a motion *in limine* by Defendants to preclude Lead Plaintiffs' damage experts' testimony under the *Daubert* test and risked a decision that a valuation model might not be admissible in evidence. The reaction of a jury to battling expert testimony is highly unpredictable and in such a battle, Plaintiffs' Co-Lead Counsel recognize the possibility that a jury could be swayed by convincing experts for the Defendants, and find that there were no damages or only a fraction of the amount of damages Lead Plaintiffs contended. *See, e.g.*, *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (finding no loss causation and overturning $81 million jury verdict).

While it is possible that Lead Plaintiffs could present evidence at trial that the aggregate damages exceed the amount of the proposed Settlement, that assumes that most, if not all, of the significant liability and damage issues would have been resolved in the Class's favor. Even if Lead Plaintiffs prevailed and obtained a substantial judgment after trial, there is little doubt that

Defendants would have appealed. The appeals process would have likely spanned several years, during which the Class would have received no distribution on any damage award. In addition, an appeal of any verdict would carry the risk of reversal, in which case the Class would receive no recovery after having prevailed on the claims at trial.

Finally, even with a judgment in hand, in today's corporate environment there is no guarantee that a significant judgment entered years down the road would be collectable. Therefore, the amount of damages the Class would actually recover if successful at trial is uncertain.

### 3. The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement

The immediacy and certainty of a recovery is a factor for the Court to balance in determining whether this proposed Settlement is fair, adequate, and reasonable. Courts consistently have held that "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also Officers for Justice*, 688 F.2d at 626.

Here, Defendants have demonstrated a commitment to defend this case through and beyond trial, if necessary, and are represented by well-respected and highly capable counsel from Cooley LLP. If not for this Settlement, the case would have continued to be fiercely contested by all parties. The expense and time of continuing litigation would have been substantial. As the court noted in *Ikon*, which is applicable here:

> In the absence of a settlement, this matter will likely extend for . . . years longer with significant financial expenditures by both defendants and plaintiffs. This is partly due to the inherently complicated nature of large class actions alleging securities fraud: there are literally thousands of shareholders, and any trial on these claims would rely heavily on the development of a paper trial [sic] through numerous public and private documents.

194 F.R.D. at 179.

The securities claims advanced by Lead Plaintiffs involve complex legal and factual issues, which would require document discovery, numerous depositions, and extensive expert discovery and testimony. After completion of discovery, Defendants' expected motion for summary judgment would have to be briefed and argued, a pre-trial order would have to be prepared, proposed jury instructions would have to be submitted, and motions *in limine* would have to be filed and argued.

Substantial time and expense would need to be expended in preparing the case for trial. The trial itself would have been long, expensive, and uncertain and no matter the outcome, appeals would be virtually assured. This would add considerably to the expense and duration of the Action.

The legal issues are equally as complex – proving falsity, materiality, scienter, causation, and damages, would likely require expert testimony, as discussed above. There exists no doubt that the Settlement will spare the litigants the significant delay, risk, and expense of continued litigation. Many hours of the District Court's time and resources have also been spared. Moreover, even if the Class could recover a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class any recovery for years, which would further reduce its value. The $8,250,000 settlement, at this juncture, results in an immediate and substantial tangible recovery, without the considerable risk, expense, and delay of discovery, summary judgment motion(s), and trial and post-trial litigation. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").

### B. Lead Plaintiffs Have Engaged in Sufficient Informal Discovery and a Thorough Investigation to Identify the Strengths and Weaknesses of Their Case and the Propriety of Settlement

The stage of the proceedings and the amount of discovery completed – is another factor which the courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *Officers for Justice*, 688 F.2d at 625. The Ninth Circuit has held that "'in the context of class action settlements, "formal discovery is not a necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement.'" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Here, both the knowledge of Plaintiffs' Co-Lead Counsel and the proceedings themselves have reached a stage where Plaintiffs' Co-Lead Counsel could make an intelligent evaluation of the Action and propriety of this Settlement.

As detailed herein and in the Joint Declaration, Plaintiffs' Co-Lead Counsel conducted significant informal discovery and a thorough investigation on the matters alleged, even though

throughout much of the litigation, discovery was stayed pursuant to the PSLRA. For instance, Plaintiffs' Co-Lead Counsel:

- thoroughly reviewed and analyzed publicly available information regarding Gilead, including its filings with the Securities and Exchange Commission ("SEC"), financial statements, press releases, conference call transcripts, analysts' reports, notes prepared by securities firms, and United States Food and Drug Administration ("FDA") public notices concerning Gilead;

- thoroughly investigated, with the assistance of in-house and private investigators, the facts underlying the allegations in five consolidated and amended complaints, including devoting considerable resources to locating and conducting detailed investigative interviews of dozens of witnesses in various states who provided detailed information for the case;

- thoroughly reviewed and analyzed documents produced by various sources which required understanding the many highly technical and scientific issues in the Action;

- thoroughly researched the law pertinent to the claims and defenses asserted;

- consulted extensively with medical experts on issues related to pharmaceutical marketing and FDA rules, regulations and procedures, and related issues; and

- analyzed the damages in this Action and consulted with economic experts regarding the calculation of damages, loss causation, materiality, and movements in the price of Gilead stock.

Plaintiffs' Co-Lead Counsel also prepared five fact-specific complaints. The parties also fully briefed five rounds of Defendants' motions to dismiss, and an appeal to the Ninth Circuit, which highlighted the fact that there were several unsettled legal and factual issues that could be adversely decided against Lead Plaintiffs and the Class.

Also, the parties prepared for and participated in extensive settlement negotiations, including mediation where the strengths and weaknesses of the parties' respective claims and defenses were fully explored. Thus, at the time of Settlement, Plaintiffs' Co-Lead Counsel had a full understanding of the strengths and weaknesses of the Class's claims, as well as the difficulties they would have faced in obtaining a more favorable result after continued litigation. Having sufficient information to properly evaluate the case, Plaintiffs' Co-Lead Counsel have managed to settle the Action on terms highly favorable to the Class. *See Mego Fin.*, 213 F.3d at 459.

### C. The Recommendations of Experienced Counsel After Extensive Litigation and Arm's-Length Settlement Negotiations Favor the Approval of the Settlement

As the Ninth Circuit recently observed in *Rodriquez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action. *Id.* at 965. Courts have recognized that "'[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'" *Nat'l Rural*, 221 F.R.D. at 528. Indeed, "'[t]he recommendation of plaintiffs' counsel should be given a presumption of reasonableness.'" *Omnivision*, 559 F. Supp. 2d at 1043. Plaintiffs' Co-Lead Counsel, having carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims asserted against Defendants, the likelihood of prevailing on these claims, the risk, expense, and duration of continued litigation, and the likely appeals and subsequent proceedings necessary if Lead Plaintiffs did prevail against Defendants at trial, have concluded that the Settlement is a highly favorable result for the Class. Plaintiffs' Co-Lead Counsel have significant experience in securities and other complex class action litigation and have negotiated numerous other substantial class action settlements throughout the country. Where, as here, the settlement is the product of serious, informed non-collusive negotiations after some six years of litigation, significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class. *See Rodriquez*, 563 F.3d at 965 ("[The Ninth Circuit] put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL 901, 1992 U.S. Dist. LEXIS 14337, at *12 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for class compelling factor in approving settlement).

Moreover as set forth above, and in the Joint Declaration, the Settlement is also the result of mediation conducted with the assistance of Judge Phillips, a highly-respected private mediator with substantial experience in the mediation of complex actions. Therefore, there is no doubt that settlement was reached without collision and after good-faith negotiation by experienced counsel for

Lead Plaintiffs and Defendants with a firm understanding of both the strengths and weaknesses of their clients' respective claims and defenses, which also supports a finding that the Settlement is fair, adequate, and reasonable.

**D. The Risks of Maintaining the Class Action Through Trial Support the Settlement**

This factor also supports the Settlement. Here, a class had not yet been certified. Therefore, risk existed that the Court would not certify the Class as defined. In addition, even if a class were certified upon Lead Plaintiffs' motion (which Defendants indicated they would contest), there would be no assurance of its maintaining this status since courts may exercise their discretion to re-evaluate the appropriateness of class certification at any time. The risk of maintaining class certification through trial favors settlement in this Action.

## IV. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Lead Plaintiffs also seek approval of the Plan of Allocation of the Settlement proceeds. The Plan of Allocation is set forth in full in the Settlement Notice mailed to potential Class Members.

Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of the Federal Rules of Civil Procedure is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair and reasonable. *See Ikon*, 194 F.R.D. at 184; *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992). District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

The Plan of Allocation provides an equitable basis to allocate the Net Settlement Fund among all Class Members who submit an acceptable Proof of Claim. Here, the Plan of Allocation was developed by Plaintiffs' Co-Lead Counsel with the assistance of their materiality and damages experts and reflects an assessment of the damages that could have been recovered at trial under the

theories asserted in the case by Lead Plaintiffs. The Plan of Allocation will result in a fair distribution of the available proceeds among Class Members who submit valid claims and therefore should be approved.

## V. CONCLUSION

For all the reasons set forth above and in the Joint Declaration, the proposed Settlement and Plan of Allocation warrants this Court's final approval.

DATED: September 16, 2010

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
JEFFREY D. LIGHT

s/ JEFFREY D. LIGHT
JEFFREY D. LIGHT

655 W. Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
& DOWD LLP
SANFORD SVETCOV
SUSAN K. ALEXANDER
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
& DOWD LLP
DAVID J. GEORGE
ROBERT J. ROBBINS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

MILBERG LLP
JOSHUA H. VINIK
LORI G. FELDMAN
ROSS BROOKS
One Pennsylvania Plaza
New York, NY 10119
Telephone: 212/594-5300
212/868-1229 (fax)

Co-Lead Counsel for Plaintiffs

KAPLAN FOX & KILSHEIMER LLP
LAURENCE D. KING
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415/772-4700
415/772-4707 (fax)

Additional Counsel for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2010, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I further certify that I caused this document to be forwarded to the following Designated Internet Site at: http://securities.stanford.edu.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 16, 2010.

s/ JEFFREY D. LIGHT
JEFFREY D. LIGHT

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail:JeffL@rgrdlaw.com

# Mailing Information for a Case 3:03-cv-04999-SI

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Susan K. Alexander**
  SuziA@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com
- **Eric J. Belfi**
  ebelfi@labaton.com,ElectronicCaseFiling@labaton.com
- **Lauren Block**
  lblock@milberg.com
- **Brian D. Brooks**
  bbrooks@murrayfrank.com
- **Ross B. Brooks**
  rbrooks@milberg.com
- **Matthew Dean Brown**
  mbrown@cooley.com,nafeyla@cooley.com
- **John C. Dwyer**
  dwyerjc@cooley.com,giovannonib@cooley.com
- **Lori G. Feldman**
  lfeldman@milberg.com
- **Linda M. Fong**
  lfong@kaplanfox.com,kweiland@kaplanfox.com,lbarry@kaplanfox.com
- **David Jude George**
  dgeorge@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com
- **Michael M. Goldberg**
  info@glancylaw.com
- **Robert A. Jigarjian**
  jigarjianlaw@gmail.com
- **Jeffrey Michael Kaban**
  kabanjm@cooley.com,kramerns@cooley.com
- **Laurence D. King**
  lking@kaplanfox.com,kweiland@kaplanfox.com,lbarry@kaplanfox.com
- **Jeffrey David Light**

jeffl@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Douglas C McDermott**
  doug@mcdermottnewman.com,eric@mcdermottnewman.com
- **John W. Pillette**
  CAND.USCOURTS@classcounsel.com
- **Robert Jeffrey Robbins**
  rrobbins@lerachlaw.com,ppuerto@lerachlaw.com
- **David Avi Rosenfeld , Esq**
  drosenfeld@geller-rudman.com
- **Samuel H. Rudman**
  srudman@csgrr.com
- **Jennifer J. Sosa**
  jsosa@milberg.com
- **Sanford Svetcov**
  sandys@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com
- **Marc M. Umeda**
  MUmeda@robbinsumeda.com,notice@robbinsumeda.com
- **Joshua H. Vinik**
  jvinik@milberg.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Jack G. Fruchter**
Abraham Fruchter & Twersky LLP
One Penn Plaza
Suite 2805
New York, NY 10119

**Holly W. Kimmel**
Coughlin Stoia Geller Rudman & Robbins LLP
120 E. Palmetto Park Road
Suite 500
Boca Raton, FL 33432-4809

**James M. Orman**
Law Offices of James M. Orman
1845 Walnut Street, 14th Floor
Philadelphia, PA 19103