ROBBINS GELLER RUDMAN
  & DOWD LLP
SANFORD SVETCOV (36561)
SUSAN K. ALEXANDER (124276)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone: 415/288-4545
415/288-4534 (fax)
ssvetcov@rgrdlaw.com
salexander@rgrdlaw.com
     – and –
DAVID J. GEORGE (*admitted pro hac vice*)
ROBERT J. ROBBINS (*admitted pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
dgeorge@rgrdlaw.com
rrobbins@rgrdlaw.com

MILBERG LLP
JOSHUA H. VINIK (*admitted pro hac vice*)
LORI G. FELDMAN (*admitted pro hac vice*)
ROSS BROOKS (*admitted pro hac vice*)
One Pennsylvania Plaza
New York, NY  10119
Telephone:  212/594-5300
212/868-1229 (fax)
jvinik@milberg.com
lfeldman@milberg.com
rbrooks@milberg.com

Co-Lead Counsel for Plaintiffs

KAPLAN FOX & KILSHEIMER LLP
LAURENCE D. KING (206423)
350 Sansome Street, Suite 400
San Francisco, CA  94104
Telephone:  415/772-4700
415/772-4707 (fax)
lking@kaplanfox.com

Liaison Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re GILEAD SCIENCES SECURITIES LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 
| This Document Relates To:<br><br>    ALL ACTIONS. | |

Master File No. C-03-4999-SI

CLASS ACTION

JOINT DECLARATION OF DAVID J. GEORGE AND LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS; AND AN AWARD OF ATTORNEYS' FEES AND EXPENSES

DATE:   November 5, 2010
TIME:   10:30 a.m.
COURTROOM:  The Honorable Susan Illston

577755_2

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................. 2

I. SUMMARY OF LEAD PLAINTIFFS' ALLEGATIONS ................................. 5

II. LEAD PLAINTIFFS' PROSECUTION OF THE CASE ................................. 6

    A. The Filing of the Litigation ................................................ 6

    B. Appointment of Lead Plaintiff ............................................ 7

    C. Consolidated Complaint ................................................... 7

    D. Motions to Dismiss and Appeal .......................................... 7

    E. The Ninth Circuit Appeal and Subsequent Petition for Writ of Certiorari ........... 11

    F. Defendants' Second Motion to Dismiss the Fourth Amended Complaint ........... 12

    G. Defendants' Motion to Dismiss the Fifth Amended Complaint ..................... 12

    H. Discovery .................................................................. 13

    I. Consultants and Lead Plaintiffs' Damages Analysis ......................... 14

III. STRENGTHS AND WEAKNESSES OF THE CASE ................................ 14

IV. MEDIATION AND SETTLEMENT NEGOTIATIONS ............................... 15

V. PRELIMINARY APPROVAL OF SETTLEMENT AND MAILING OF PUBLICATION OF NOTICE OF SETTLEMENT ................................. 16

VI. FACTORS TO BE CONSIDERED IN SUPPORT OF THE SETTLEMENT ......... 18

    A. The Settlement Was Fairly and Aggressively Negotiated by Counsel ........... 18

    B. Serious Questions of Law and Fact Placed the Outcome of the Class Action in Significant Doubt ............................................ 18

        1. Uncertain Proof on Loss Causation and Damages ................... 18

        2. Falsity and Materiality Would Have Been Difficult to Prove at Trial ............................................................. 19

    C. The Judgment of the Parties that the Settlement is Fair and Reasonable Provides Additional Support for Approval of the Settlement ............... 20

VII. THE PLAN OF ALLOCATION ............................................... 21

VIII. FACTORS TO BE CONSIDERED IN SUPPORT OF THE REQUESTED ATTORNEYS' FEE AWARD ................................................. 22

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - C-03-4999-SI    - i -

Page

A.    The Diligent Prosecution of the Litigation ............................................................. 23

B.    The Risks of Litigation and the Need to Ensure the Availability of
      Competent Counsel in High-Risk, Contingent Securities Cases ......................... 23

C.    Standing and Expertise of Lead Counsel .............................................................. 26

D.    The Fee Requested is Consistent with Fees Awarded in Comparable Cases
      in this Circuit ......................................................................................................... 27

E.    Lead Counsels' Request for Payment of Expenses is Reasonable and
      Should be Approved .............................................................................................. 27

IX.   CONCLUSION ................................................................................................................ 27

1    DAVID J. GEORGE and LORI G. FELDMAN, hereby, declare as follows:

2       1.    David J. George and Lori G. Feldman are members of, respectively, Robbins Geller

3    Rudman & Dowd LLP ("Robbins Geller") and Milberg LLP ("Milberg"), lead counsel for plaintiffs

4    Trent St. Clare and Terry Johnson (collectively "Lead Plaintiffs") in the above-captioned litigation.

5    We have been actively involved in the prosecution of this litigation, we are familiar with its

6    proceedings, and have personal knowledge of the matters set forth herein based upon our active

7    supervision and participation in all material aspects of the litigation. Unless otherwise indicated, the

8    statements in this declaration are based on our respective personal knowledge, and if called to do so,

9    we could and would testify competently thereto.

10      2.    As Plaintiffs' Co-Lead Counsel, we submit this declaration in support of Lead

11   Plaintiffs' application, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for this Court's

12   final approval of: (a) the settlement of this litigation; (b) the Plan of Allocation of settlement

13   proceeds; and (c) Lead Plaintiffs' counsel's application for an award of attorneys' fees and expenses.

14   The Stipulation of Settlement dated as of June 28, 2010 (the "Stipulation"), provides for payment of

15   $8,250,000 in cash, which has been deposited in escrow and is earning interest for the benefit of the

16   Class (the "Settlement Fund").[1]

17      3.    The Settlement resolves all claims asserted by Lead Plaintiffs and the Class in this

18   litigation against all the defendants: Gilead Sciences, Inc. ("Gilead" or the "Company"), John C.

19   Martin ("Martin"), President and CEO of Gilead; John F. Milligan ("Milligan"), CFO and Senior

20   Vice President of Gilead; Mark L. Perry ("Perry"), Executive Vice President, Operations; Norbert

21   W. Bischofberger ("Bischofberger"), Executive Vice President, Research and Development;

22   Anthony Carraciolo ("Carraciolo"), Vice-President; and William A. Lee ("Lee"), Senior Vice

23   President (collectively, the "Defendants").

24      4.    This declaration describes the claims asserted, the principal proceedings to date, the

25   legal services provided by Lead Plaintiffs' counsel, and the settlement negotiations. This declaration

26   _____

27   [1]    All capitalized terms not defined herein shall have the same meanings as set forth in the
Stipulation.

28

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL
APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**      - 1 -

1    also demonstrates why the Settlement and Plan of Allocation are fair, reasonable, and adequate, and

2    in the best interests of the Class, and why the application for attorneys' fees and expenses is

3    reasonable and should be approved by the Court.

4    **PRELIMINARY STATEMENT**

5         5.     This action was carefully investigated before it was filed and has been vigorously

6    litigated since its commencement on November 10, 2003, a period of over six years. Lead Plaintiffs'

7    counsel prosecuted this action through briefing of three rounds of motions to dismiss, an appeal to

8    the Ninth Circuit of the dismissal of the Class claims and subsequent proceeding on seeking a writ of

9    certiorari before the Supreme Court, followed by an additional two rounds of motion to dismiss

10   briefing and commencement of discovery. All told, five complaints have been filed, including

11   amendments. At every stage of the litigation, counsel for Defendants have aggressively defended

12   this case and asserted that Lead Plaintiffs would not prevail on the claims asserted.

13        6.     The Settlement is a testament to the skill and tenacity of Lead Plaintiffs' counsel and

14   was not achieved until Lead Plaintiffs' counsel, *inter alia*:

15        •     thoroughly reviewed and analyzed all publicly available information regarding

16             Gilead including its filings with the Securities and Exchange Commission ("SEC"),

17             financial statements, press releases, conference call transcripts, analysts' reports,

18             notes prepared by securities firms, and all United States Food and Drug

19             Administration ("FDA") public notices concerning the Company;

20        •     thoroughly investigated, with the assistance of in-house and outside private

21             investigators, the facts underlying the allegations in five consolidated and amended

22             complaints, including devoting considerable resources to locating and conducting

23             detailed investigative interviews of dozens of witnesses in various states who

24             provided detailed information concerning Gilead's operations and management;

25        •     thoroughly reviewed and analyzed documents from various sources which required

26             understanding the many highly technical and scientific issues in the litigation;

27        •     thoroughly researched the law pertinent to the claims and defenses asserted;

28

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL
APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**    - 2 -

- consulted extensively with medical experts on issues related to pharmaceutical marketing and FDA rules, regulations and procedures, and related issues;

- analyzed the damages in this litigation and consulted with economic experts regarding the calculation of damages, loss causation, materiality, and movements in the price of Gilead stock;

- filed a highly particularized Consolidated Amended Class Action Complaint for Violation of Federal Securities Laws on April 30, 2004 (the "Consolidated Complaint"), as well as four amended, fact specific complaints;

- litigated complicated motions to dismiss, ultimately defeating Defendants' challenges to the Fifth Consolidated Amended Class Action Complaint for Violation of Federal Securities Laws (the "Fifth Amended Complaint");

- successfully litigated the appeal of the dismissal of this action with prejudice before the Court of Appeals for the Ninth Circuit;

- assisted Lead Plaintiffs in preparing responses to Defendants' discovery requests and prepared and propounded discovery requests upon Defendants;

- prepared for and attended mediation of this litigation before a private mediator, and successfully negotiated, at arm's-length, a favorable settlement for the Class; and

- communicated regularly with Lead Plaintiffs regarding the issues, facts, and circumstances of this litigation, and received their approval to settle this litigation.

7.    The Settlement is the product of six years of extensive investigation, aggressive litigation and negotiation, and takes into account the significant risks specific to this case. The Settlement is also the result of mediation conducted with the assistance of retired United States District Court Judge Layn Phillips, a highly respected private mediator with substantial experience in the mediation of complex actions. It was negotiated by experienced counsel for Lead Plaintiffs and Defendants with a firm understanding of both the strengths and weaknesses of their clients' respective claims and defenses.

8.    The Settlement represents an excellent result for the Class. The extensive motion practice, the appeal proceedings, the extensive investigation and the analysis of the experts provided

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**       - 3 -

1  Lead Plaintiffs and Lead Plaintiffs' counsel with a good understanding of the strengths and

2  weaknesses of the Lead Plaintiffs' claims, and provided Lead Plaintiffs' counsel with a sound basis

3  upon which to evaluate what course of action was in the best interests of the Class (*i.e.*, whether to

4  settle and on what terms, or to continue with the litigation and proceed to class certification,

5  summary judgment and then trial).

6        9.     The Settlement confers an immediate and substantial benefit on the Class and

7  eliminates the significant risk of continued litigation under circumstances where a favorable outcome

8  was uncertain.  Lead Plaintiffs' counsel respectfully submit that under these circumstances the

9  settlement is an outstanding result, clearly it is in the best interest of the Class and should be

10  approved as fair, reasonable, and adequate.  The Court should also approve the Plan of Allocation of

11  settlement proceeds and award attorneys' fees in the amount of 30% of the $8,250,000 Settlement

12  Fund and expenses of $282,906.73, which were reasonably and necessarily incurred by Lead

13  Plaintiffs' counsel in prosecuting this litigation for many years and creating this substantial benefit

14  on behalf of the Class.  The percentage fee request is within the range of percentages frequently

15  awarded in these types of actions and is entirely justified in light of the substantial benefits conferred

16  on the Class, the risks undertaken, the quality of representation, and the nature and extent of legal

17  services performed.

18        10.    To date, the Class Members appear to support the Settlement.  Pursuant to the Court's

19  July 7, 2010 preliminary approval order, the Settlement Notice and the Proof of Claim were sent to

20  more than 74,000 potential Class Members.  *See* paragraphs 4-11 to the accompanying Affidavit of

21  Michelle M. La Count of A.B. Data Ltd. Regarding Mailing of Settlement Notice and Proof of Claim

22  Forms and Publication of Summary Notice ("La Count Aff.").  Additionally on July 30, 2010, the

23  Summary Notice was published in the national edition of *Investor's Business Daily*. *Id.* at ¶15.  The

24  Settlement Notice and Claim Form were also placed on the Claims Administrator's website, on or

25  about July 23, 2010.  *Id.*, at ¶13.  The Settlement Notice apprised Class Members of the terms of the

26  Settlement, and of their right to object to the Settlement, to the Plan of Allocation of settlement

27  proceeds or to Lead Plaintiffs' counsel's application for attorneys' fees and expenses.  While the

28  deadline to file objections to the proposed settlement, September 30, 2010, has yet to pass, to date

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL
APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**   **- 4 -**

1  not a single objection has been received to any aspect of the Settlement, including the Plan of

2  Allocation of settlement proceeds and Lead Plaintiffs' counsel's request for an award of attorneys'

3  fees and expenses.

4      11.    The following is a summary of the nature of Lead Plaintiffs' claims, the principal

5  events which occurred during the course of this litigation, and the legal services provided by Lead

6  Plaintiffs' counsel.

7  **I.    SUMMARY OF LEAD PLAINTIFFS' ALLEGATIONS**

8      12.    This is a securities fraud class action brought by Lead Plaintiffs on behalf of

9  themselves and all purchasers of Gilead publicly traded securities between July 14, 2003 and

10  October 28, 2003 (the "Class Period"). Claims are asserted against the Defendants for violations of

11  §10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated

12  thereunder by the Securities and Exchange Commission ("SEC") (15 U.S.C. §78j(b); 17 C.F.R.

13  §240.10b-5.) The individual defendants are also alleged to be liable under §20(a) of the Exchange

14  Act, 15 U.S.C. §78t(a). The allegations are set forth in the Fifth Amended Complaint, the operative

15  complaint herein.

16      13.    The core of Lead Plaintiffs' allegations are that Defendants engaged in an illegal, off-

17  label marketing scheme with respect to one of Gilead's flagship products, Viread, and intentionally

18  made material misstatements and omissions with regard to Viread sales, which caused the artificial

19  inflation of the price of Gilead stock during the Class Period in violation of the federal securities

20  laws.

21      14.    Gilead is a biopharmaceutical company that discovers, develops, markets, and sells

22  pharmaceutical products that are treatments for life threatening illnesses. As such, Gilead is subject

23  to the Federal Food, Drug, and Cosmetic Act and its implementing regulations, which provide that

24  pharmaceutical manufacturers may only promote their products consistent with the FDA-approved

25  labeling. Use of non-FDA approved materials is considered "off-label" marketing, and is illegal.

26      15.    Viread, a prescription antiretroviral agent is used in combination with other drugs for

27  the treatment of HIV infection. During the Class Period, Viread sales were an important

28  measurement of Gilead's performance and stock price. The investing public and Wall Street

1  analysts looked to such sales to gauge whether Gilead's business was on track and growing. The

2  Fifth Amended Complaint alleged Defendants, therefore, were highly motivated to report impressive

3  Viread sales in order to inflate Gilead's financial performance and its stock price.

4      16.    The theory of liability set forth in the Fifth Amended Complaint relates to

5  Defendants' misrepresentations and omissions concerning Gilead's marketing and sale of Viread.

6  These misrepresentations and omissions created the impression that demand for Viread was strong,

7  when prescription volume was actually driven by improper off-label marketing. The Fifth Amended

8  Complaint alleged 75%-95% of all Viread sales during the Class Period resulted from improper off-

9  label marketing. This was material to the Company's Class Period financial success, as Viread sales

10  comprised approximately 65% of Gilead's total revenues.

11      17.    As alleged in the Fifth Amended Complaint, Defendants' statements were materially

12  false and misleading because of Defendants' failure to disclose that the increased sales were caused

13  by Gilead's off-label marketing scheme. This alleged off-label marketing caused Gilead's publicly

14  traded securities to be overvalued and artificially inflated, so that when the off-label marketing was

15  revealed, physicians stopped prescribing Viread, which caused wholesalers to draw down their

16  Viread inventory, and ultimately, when these facts became available to the investing public, the truth

17  regarding Gilead's financials and future business prospects caused the value of Gilead's stock to

18  plummet.

19  ## II.    LEAD PLAINTIFFS' PROSECUTION OF THE CASE

20      ### A.    The Filing of the Litigation

21      18.    Beginning on November 10, 2003, the following actions were filed in the United

22  States District Court for the Northern District of California, San Francisco Division, as securities

23  class actions on behalf of persons who purchased the publicly traded securities of Gilead between

24  July 14, 2003 and October 28, 2003:

| Abbreviated Case Name | Case Number |
|---|---|
| Hartman v. Gilead Sciences, Inc., et. al. | C-03-4999 |
| Campagnuola, Jr. v. Gilead Sciences, Inc., et. al. | C-03-5088 |

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL
APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**   - 6 -

| Kim v. Gilead Sciences, Inc., et al. | C-03-5113 |
| Martin v. Gilead Sciences, Inc., et al. | C-03-5391 |

19. By Order filed January 5, 2004, the Court consolidated the cases under the caption *In re Gilead Sciences Securities Litigation*, No. C-03-4999.

## B.   Appointment of Lead Plaintiff

20. By Order dated February 9, 2004, the Court appointed Trent St. Clare and Terry Johnson as Lead Plaintiffs pursuant to §21D(a)(3)(B) of the Exchange Act and approved Lead Plaintiffs' selection of Cauley Geller Bowman & Rudman LLP (now Robbins Geller) and Milberg Weiss Bershad Hynes and Lerach LLP (now Milberg) as lead counsel, and Kaplan Fox & Kilsheimer LLP as liaison counsel, pursuant to §21D(a)(3)(B)(v) of the Exchange Act.

## C.   Consolidated Complaint

21. After their appointment to manage the litigation on behalf of Lead Plaintiffs and the class, Lead Plaintiffs' counsel continued their thorough investigation of the allegations against Defendants. This investigation included: (1) a detailed analysis of all of Gilead's relevant and Class Period SEC filings and press releases; (2) locating and interviewing dozens of former employees of Gilead with first-hand knowledge relevant to the litigation, including travel to locations throughout the United States to meet with confidential witnesses with extensive knowledge regarding Gilead's marketing and sale of Viread with the assistance of investigators; (3) conducting a detailed examination of Gilead's Class Period financial statements with the assistance of a forensic accountant; (4) conferring with an expert economist; and (5) coordinating and conferring with medical experts regarding the marketing and sale of pharmaceuticals, as well as the FDA approval process. This extensive investigation allowed Lead Plaintiffs' counsel to draft the highly detailed Consolidated Complaint, which was filed on April 30, 2004, as well as the subsequent complaints.

## D.   Motions to Dismiss and Appeal

22. Defendants filed a total of five motions to dismiss Lead Plaintiffs' various complaints, and Lead Plaintiffs' counsel devoted many hours of research, analysis, and drafting to prepare thorough responses to each of Defendants' motions to dismiss as well as in preparing and

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**      - 7 -

1   succeeding in Lead Plaintiffs' appeal of the dismissal of the Fourth Consolidated Amended Class

2   Action Complaint for Violation of Federal Securities Laws (the "Fourth Amended Complaint").

3       23.     Defendants filed their first motion to dismiss on June 21, 2004. Defendants argued,

4   *inter alia*, that Lead Plaintiffs failed to identify any statements made by Defendants that were false

5   and failed to plead scienter under the stringent standards of the Private Securities Litigation Reform

6   Act of 1995 ("PSLRA").  Defendants also argued that their statements concerning inventory

7   stocking were forward looking and were statements that were protected by the PSLRA's safe harbor

8   provision. Moreover, Defendants argued that Lead Plaintiffs failed to plead control person liability

9   under §20(a).

10      24.     On August 19, 2004, Lead Plaintiffs filed their opposition to the motion to dismiss

11  addressing in detail each of the issues raised by the Defendants. Lead Plaintiffs' opposition argued,

12  *inter alia*, that the Consolidated Complaint satisfied the pleading requirements of the PSLRA with

13  regard to Defendants' false and misleading statements, that a strong inference of scienter was

14  adequately pleaded and that Defendants' false statements were not protected by the safe harbor

15  provision of the PSLRA.

16      25.     On September 20, 2004, Defendants filed a reply memorandum in support of their

17  motion, arguing Lead Plaintiffs relied on "supposition, innuendo and generalized statements" instead

18  of specifying each statement made by Defendants and that Lead Plaintiffs, therefore, failed to meet

19  their burden of pleading falsity. Defendants also argued that Lead Plaintiffs failed to allege any

20  statements that were false. Finally, Defendants argued Gilead's marketing of Viread was completely

21  appropriate and did not violate applicable laws.

22      26.     On January 4, 2005, the Court heard extensive oral argument on Defendants' motion

23  to dismiss. Then, on January 25, 2005, the Court granted Defendants' motion without prejudice and

24  provided Lead Plaintiffs with leave to amend.  The Court held Lead Plaintiffs failed to allege

25  particularized facts sufficient to support the allegation of Defendants' statements regarding

26  wholesaler overstocking were false and misleading at the time the statements were made, that Lead

27

28

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL
APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**      - 8 -

1   Plaintiffs failed to establish that the Company's off-label marketing scheme was material, and that

2   Lead Plaintiffs failed to adequately allege scienter.[2]

3         27.     Thereafter, on February 25, 2005, Lead Plaintiffs filed their Second Consolidated

4   Amended Class Action Complaint for Violations of Federal Securities Laws (the "Second Amended

5   Complaint"), which they subsequently amended by filing their Third Consolidated Amended Class

6   Action Complaint for Violation of Federal Securities Laws (the "Third Amended Complaint") on

7   March 11, 2005.

8         28.     On May 10, 2005, Defendants filed their motion to dismiss the Third Amended

9   Complaint, reiterating, among other things, their arguments that Lead Plaintiffs failed to adequately

10  plead falsity in that Lead Plaintiffs did not sufficiently plead that the statements regarding wholesaler

11  overstocking were false when made, failed to adequately plead that Defendants were engaged in

12  improper off-label sales, and failed to allege facts with particularity that demonstrate scienter.

13  Defendants also argued that Lead Plaintiffs loss causation allegations were "effectively eviscerated"

14  by the standard that had recently been set forth in *Dura Pharms. Inc. v. Broudo*, 544 U.S. 336 (2005)

15  ("*Dura*").

16        29.     Lead Plaintiffs filed their opposition to Defendants' motion to dismiss on July 11,

17  2005, arguing, among other things, that the Third Amended Complaint adequately pleaded falsity,

18  including facts that established the materiality of the false statements connecting the off-label

19  marketing to Viread sales.  Lead Plaintiffs further argued scienter was adequately pleaded, as was

20  loss causation because Lead Plaintiffs established a causal connection between the economic loss

21  suffered by the Class and Defendants' misconduct in misleading the market as to the source of

22  Gilead's Viread sales.

23        30.     Defendants filed their reply to Lead Plaintiffs' opposition on August 15, 2005, in

24  which they again argued Lead Plaintiffs could not establish loss causation based on the standard set

25

26  _____

27  [2]     On January 26, 2005, the January 25, 2005 Order was amended to correct a minor error
      contained therein.

28

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL
APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**        - 9 -

forth in *Dura*, that Lead Plaintiffs did not adequately plead Gilead's marketing was illegal or that it resulted in material illegal sales.

31.   On October 4, 2005, the Court heard oral argument on Defendants' second motion to dismiss and on October 11, 2005, the District Court granted Defendants' motion, without prejudice, on loss causation grounds, noting that *Dura* had changed the law since the filing of the Third Amended Complaint.   Significantly, the Court held that Lead Plaintiffs "adequately alleged that Defendants engaged in an illegal off-label marketing scheme" and that it was "apparent that Plaintiffs have alleged sufficient facts to raise a strong inference that Defendants had knowledge of the company's off-label marketing scheme."   The Court did not address, however, whether Defendants' omissions concerning the off-label marketing and sale of Viread were material.

32.   In order to address the Court's concerns as to loss causation and materiality, on December 2, 2005, Lead Plaintiffs filed their Fourth Amended Complaint.

33.   Defendants moved to dismiss the Fourth Amended Complaint on December 22, 2005, arguing Lead Plaintiffs had no support for their theory of loss causation and that Lead Plaintiffs did not adequately plead with requisite particularity the elements of falsity and scienter.

34.   On January 17, 2006, Lead Plaintiffs opposed the motion to dismiss and argued the Fourth Amended Complaint demonstrated a causal connection between Defendants' fraud and the decline of Gilead's stock price, thereby satisfying the standards set forth in *Dura,* and that Gilead's misrepresentations regarding off-label marketing and its impact on Viread sales were material.

35.   On February 3, 2006, Defendants filed a reply in support of their motion to dismiss, alleging inconsistencies in the theories set forth in Lead Plaintiffs' complaints, reiterating the arguments set forth in their motion and requesting the Court deny leave to amend.

36.   The Court heard oral argument on Defendants' motion to dismiss on February 21, 2006, and on May 12, 2006, the Court dismissed Lead Plaintiffs' Fourth Amended Complaint, with prejudice, for failure to adequately allege their loss was caused by Defendants' misrepresentations. The Court entered a Judgment dismissing all of Lead Plaintiffs' actions against Defendants on May 15, 2006.

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**          - 10 -

### E.    The Ninth Circuit Appeal and Subsequent Petition for Writ of Certiorari

37.    Despite the dismissal with prejudice of the litigation, Lead Plaintiffs' counsel remained determined to prosecute this litigation on behalf of Lead Plaintiffs and the putative Class. On June 9, 2006, therefore, Lead Plaintiffs' counsel filed a timely Notice of Appeal in this Court, appealing the dismissal of the litigation to the Ninth Circuit Court of Appeals.  The appellate briefing, like the motion to dismiss briefing, was extensive.

38.    In that regard, on October 10, 2006, Lead Plaintiffs-Appellants filed their opening brief and excerpts of the record with the Ninth Circuit arguing the Fourth Amended Complaint satisfactorily alleged loss causation and amply alleged both falsity and scienter, which the District Court had acknowledged was well-plead, and that the District Court had erred in dismissing the action.

39.    On December 12, 2006, Defendants-Appellees filed their answering brief and supplemental excerpts of record.

40.    On January 23, 2007, Lead Plaintiffs-Appellants filed their reply brief.

41.    On October 25, 2007, Lead Plaintiffs-Appellants filed additional citations pursuant to Federal Rule of Appellate Procedure 28(j).

42.    On November 27, 2007, Lead Plaintiffs-Appellants filed additional citations pursuant to Federal Rule of Appellate Procedure 28(j).

43.    Following the extensive briefing, on December 6, 2007, the parties convened in San Francisco, California before a three-judge appellate panel for oral argument.

44.    On August 11, 2008, the Ninth Circuit reversed the District Court's dismissal and found Lead Plaintiffs sufficiently alleged both loss causation and economic loss. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008), *cert denied*, __ U.S. __, 129 S. Ct. 1993 (2009).

45.    On September 2, 2008, Defendants-Appellees filed a petition for panel rehearing and rehearing *en banc*.

46.    On October 9, 2008, the Ninth Circuit issued an order denying the petition for rehearing.

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**          - 11 -

47.     On February 6, 2009, Defendants petitioned the United States Supreme Court to issue a *writ of certiorari* to the Ninth Circuit.

48.     On April 20, 2009, the United States Supreme Court denied Defendants' petition for *writ of certiorari*.

**F.      Defendants' Second Motion to Dismiss the Fourth Amended Complaint**

49.     On remand to the District Court, Defendants once again sought dismissal of the Fourth Amended Complaint by motion dated February 13, 2009.   In their motion, Defendants reiterated many of the arguments made in earlier motions to dismiss as to falsity, materiality and scienter, and also challenged the sufficiency of the confidential witnesses identified in the Fourth Amended Complaint.

50.     On April 14, 2009, Lead Plaintiffs filed their opposition to Defendants' motion to dismiss and argued the confidential witnesses were sufficiently reliable and that Lead Plaintiffs alleged facts sufficient to plead falsity.   Additionally, Lead Plaintiffs argued the Fourth Amended Complaint adequately pleaded materiality and scienter.

51.     Defendants filed their reply on May 14, 2009, further arguing the confidential witnesses were not proven to be reliable or to have personal knowledge of the facts sufficient to establish falsity, materiality and scienter.

52.     On June 3, 2009, the District Court issued its opinion, without oral argument, denying the motion to dismiss as to falsity and materiality.   The Court, however, questioned the sufficiency of the confidential witnesses whose experiences formed the basis of many allegations of off-label marketing of Viread during the Class Period, dismissing the Fourth Amended Complaint with leave to amend.

**G.      Defendants' Motion to Dismiss the Fifth Amended Complaint**

53.     After continued factual investigation, on July 10, 2009, Lead Plaintiffs filed the Fifth Amended Complaint, which included detailed, corroborating statements of additional confidential witnesses who confirmed there were significant off-label sales of Viread during the Class Period.

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**          - 12 -

1    54.    Defendants moved to dismiss the Fifth Amended Complaint on August 12, 2009, this

2  time arguing that Lead Plaintiffs failed to allege significant sales of Viread resulted from off-label

3  marketing. Defendants further argued the Fifth Amended Complaint should be dismissed as to three

4  individual defendants named therein, as they were not primary violators of §10(b), and that Lead

5  Plaintiffs failed to state a claim for their control person liability under §20(a).

6    55.    On September 4, 2009, Lead Plaintiffs filed their opposition to Defendants motion

7  and argued that the Fifth Amended Complaint established the pervasive culture of off-label

8  marketing at Gilead which was used to sell Viread, that the off-label marketing resulted in

9  significant off-label sales and that there was sufficient evidence corroborating the allegations of the

10  confidential witnesses to meet the pleading requirements of the PSLRA. Lead Plaintiffs further

11  argued the Court had already determined the existence of sufficient grounds for holding the

12  individual defendants liable and that control person liability had been adequately pleaded.

13    56.    On September 18, 2009, Defendants filed a reply brief in support of their motion to

14  dismiss.

15    57.    On October 9, 2009, the Court held oral argument on Defendants' motion to dismiss.

16    58.    On October 13, 2009, the Court found the allegations of the Fifth Amended

17  Complaint, taken as a whole, sufficiently alleged significant off-label sales of Viread and that the

18  allegations of the confidential witnesses were more than adequate to meet the pleading standards of

19  the PSLRA. The Court issued an order, granting in part and denying in part Defendants' motion to

20  dismiss Lead Plaintiffs' Fifth Amended Complaint, thereby paving the way for this matter to

21  proceed. Pursuant to the Order, the Court sustained the §10(b) claims against Gilead, Martin and

22  Milligan, as well as the §20(a) claims against all of the individual defendants.

23    59.    On November 16, 2009, Defendants filed an answer to the Fifth Amended Complaint

24  denying all of Lead Plaintiffs' allegations of wrongdoing and asserting numerous affirmative

25  defenses.

26  **H.**    **Discovery**

27    60.    The Court's Order sustaining portions of the Fifth Amended Complaint ended the

28  PSLRA's discovery stay that had been in effect since the Litigation commenced.

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL
APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**    - 13 -

61.     In preparation for the time when the discovery stay would be lifted, during the pendency of the motions to dismiss, Lead Plaintiffs' counsel consulted with medical experts in pharmaceutical marketing and sales to assist in refining the highly technical issues of the litigation and the potential scope of discovery.

62.     Discovery commenced on December 30, 2009.

63.     Lead Counsel drafted and served Defendants with extensive requests for production of documents regarding Gilead's marketing and sale of Viread.

64.     In addition, Lead Plaintiffs' counsel reviewed hundreds of documents obtained during their years of investigation in order to respond to Defendants' request for production of documents and interrogatories.

65.     After serving discovery requests, Lead Plaintiffs' counsel and counsel for Defendants agreed to stay discovery pending mediation.  Lead Plaintiffs' counsel prepared a joint stipulation and order regarding mediation and class certification scheduling, which stayed discovery pending the outcome of mediation.

### I.     Consultants and Lead Plaintiffs' Damages Analysis

66.     Lead Plaintiffs' allegations in the litigation involved complex issues regarding pharmaceutical sales and marketing, as well as the impact of off-label marketing on Viread sales. Accordingly, during the litigation, Lead Plaintiffs' counsel conferred on many occasions with medical experts regarding these issues.

67.     Further, Lead Plaintiffs retained expert economic consultants to analyze the magnitude and duration of the artificial inflation of Gilead's stock price and the consequent potential recoverable damages incurred by Gilead's shareholders when that artificial inflation came out of Gilead's stock price.  This information guided Lead Plaintiffs' settlement negotiations and assisted Lead Plaintiffs in formulating a fair Plan of Allocation.

### III.   STRENGTHS AND WEAKNESSES OF THE CASE

68.     After over six years of litigation, which included the filing of five amended complaints, opposing five motions to dismiss, an appeal to the Ninth Circuit Court of Appeals, interviewing dozens of witnesses, including former Gilead employees, and reviewing hundreds of

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**          - 14 -

1   documents, Lead Plaintiffs and Defendants have had a substantial amount of time to evaluate the

2   claims in this litigation.  While Lead Plaintiffs believe discovery in this litigation would provide

3   additional evidence to help prove their claims at trial, Lead Plaintiffs also realized they faced

4   considerable risks and defenses.  The crux of the Fifth Amended Complaint is that Defendants issued

5   false and misleading statements about the marketing and sale of Viread.  While Lead Plaintiffs

6   believe that their allegations were supported by evidence revealing that Defendants knowingly

7   engaged in an off-label, illegal marketing scheme, Lead Plaintiffs were also aware that there were

8   substantial obstacles to obtaining a successful judgment at trial.  As they did throughout the

9   litigation, Defendants vehemently disputed the falsity and materiality of the alleged fraudulent

10  statements, the existence of, and implementation of, off-label marketing, the impact of the alleged

11  off-label marketing on sales, as well as whether Lead Plaintiffs could establish scienter or loss

12  causation and whether the Class suffered damages to the extent claimed by Lead Plaintiffs.

13  **IV.    MEDIATION AND SETTLEMENT NEGOTIATIONS**

14          69.     While the parties began to engage in what was sure to be a massive amount of

15  document discovery and depositions they agreed to attend mediation and selected Layn Phillips, a

16  former United States District Court Judge, as their mediator and scheduled mediation for March 2,

17  2010 in San Francisco, California.  Prior to the mediation, Lead Plaintiffs' counsel prepared a

18  detailed confidential mediation statement that they provided to Judge Phillips, along with a set of

19  materials that would assist him in understanding the relevant issues and the parties' arguments as to

20  the merits of the litigation.  Also prior to the mediation, the parties exchanged mediation statements

21  with each other so that they would become more fully aware of their respective positions regarding

22  the strengths and weaknesses of the case in order to make the upcoming mediation more productive.

23          70.     Prior to attending mediation, Lead Plaintiffs' counsel communicated with each of the

24  Lead Plaintiffs regarding the strengths and weaknesses of the litigation, potential outcomes, and

25  acceptable settlement ranges for the upcoming mediation.

26          71.     On the morning of March 2, 2010, the parties began mediation in San Francisco,

27  California before Judge Phillips.  After a full day of negotiations, a settlement still had not been

28

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL
APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**        - 15 -

reached.  Lead Plaintiffs' counsel and counsel for Defendants, however, agreed to continue to communicate with Judge Phillips in an ongoing, good-faith effort to settle the litigation.

72.     After several days of negotiation between Lead Plaintiffs' counsel, defense counsel and Judge Phillips, an agreement-in-principal to settle the litigation was reached on March 4, 2010.

73.     In view of the extensive investigation Lead Plaintiffs' counsel conducted, the review and analysis of the documents obtained, discussions with experts, as well as extensive, arm's-length settlement negotiations, Lead Plaintiffs' counsel were able to identify the issues critical to the outcome of this litigation.  Lead Plaintiffs' counsel have considered the risks of litigation, the impact of the Court's prior orders on the remaining allegations of the Fifth Amended Complaint, class certification issues, the likelihood of avoiding summary judgment after additional, extensive discovery, and, if successful, the substantial risk, expense, and length of time to prosecute this litigation through trial and the inevitable subsequent appeals.  Viewed in this light, a settlement negotiated through hard-fought litigation and mediation provides an immediate recovery for the Class without the potentially substantial risk, expense, and further delay of continued litigation.

74.     Lead Plaintiffs' counsel are actively engaged in complex federal civil litigation, particularly the litigation of securities class actions.  We believe our reputations as attorneys who are unafraid to zealously carry a meritorious case through the trial and appellate levels gave us a strong position in engaging in settlement negotiations with Defendants, even under the difficult and challenging circumstances presented here.

75.     Lead Plaintiffs' counsel respectfully submit that the Settlement represents an outstanding result for the Class under the circumstances.  The Settlement will provide Class Members with a substantial benefit now, without the very real risk of a substantially smaller or even no recovery if this litigation were to continue.

V.     **PRELIMINARY APPROVAL OF THE SETTLEMENT AND MAILING AND PUBLICATION OF NOTICE OF THE SETTLEMENT**

76.     After reaching an agreement-in-principle to settle this litigation for $8,250,000, plus interest, Lead Plaintiffs' counsel undertook to prepare an initial draft of the Stipulation and its exhibits, including a proposed preliminary approval order, notice of pendency to the Class, summary

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**            - 16 -

1   notice for publication, a proof of claim form, and a proposed final judgment. Extensive negotiations

2   between the parties resulted in many changes and re-drafts of these documents. After many hours of

3   discussion and drafting, on June 29, 2010, Lead Plaintiffs filed their Unopposed Motion for

4   Preliminary Approval of Class Action Settlement, and Memorandum of Points and Authorities in

5   Support Thereof, seeking entry of an order: (1) preliminarily approving the settlement of this

6   litigation, as memorialized in the Stipulation, which was also filed with the Court; (2) approving the

7   form of the Settlement Notice and the Proof of Claim form, which were attached to the Stipulation;

8   (3) approving the form of the Summary Notice for publication, which was attached to the

9   Stipulation; and (4) scheduling a hearing to determine whether the Settlement should be given final

10  approval and to establish dates for submission of Proofs of Claim, dissemination of the notices, and

11  other relevant deadlines.

12       77.    On July 7, 2010, the Court preliminarily approved the terms of the Settlement and

13  directed Lead Plaintiffs' counsel to cause the mailing of the Settlement Notice and the Proof of

14  Claim to all potential Class Members identifiable with reasonable effort (the "Notice Order"). The

15  Notice Order appointed the firm of A.B. Data, Ltd. to serve as Claims Administrator, with

16  responsibility for supervising and administering the notice procedure.

17       78.    The Court's Notice Order also directed Lead Plaintiffs' counsel to cause the

18  Summary Notice to be published in *Investor's Business Daily*.

19       79.    The La Count Affidavit attests that the Settlement Notice has been mailed to 74,186

20  potential Class Members, and that Summary Notice was published on July 30, 2010 in *Investor's*

21  *Business Daily*, as directed by the Court.

22       80.    The Settlement Notice, which was in the form approved by the Court, notified Class

23  Members of the terms of the Settlement, the Plan of Allocation of the settlement proceeds, and that

24  Lead Plaintiffs' counsel would apply for an award of attorneys' fees of 30% of the Settlement Fund

25  and of expenses not to exceed $350,000.

26       81.    The Settlement Notice also provided that any objection to the Settlement, the Plan of

27  Allocation of settlement proceeds, or the application for attorneys' fees and expenses has to be filed

28  by September 30, 2010. Although, that date has not yet passed, at this time Lead Plaintiffs' counsel

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL
APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**     - 17 -

1    are informed that no objections have been filed to the Settlement, the Plan of Allocation of

2    settlement proceeds, or to Lead Plaintiffs' counsel's application for attorneys' fees and expenses. In

3    addition, the Settlement Notice provided that any request for exclusion must be mailed to the Claims

4    Administrator and postmarked no later than September 30, 2010. To date, the Claims Administrator

5    has not received any requests for exclusion.

6    **VI.    FACTORS TO BE CONSIDERED IN SUPPORT OF THE SETTLEMENT**

7    **A.    The Settlement Was Fairly and Aggressively Negotiated by Counsel**

8    82.    As set forth above, the parties negotiated the terms of the Settlement at arm's-length,

9    with the assistance of a highly-qualified and experienced private mediator. The Settlement was the

10    product of numerous conferences involving Lead Plaintiffs' and Defendants' counsel, and was

11    reached in principle through mediation. Throughout the course of those negotiations and mediation,

12    all parties were represented by counsel with extensive experience in securities litigation in general

13    and securities class actions in particular. The Settlement was the result of an adversarial process

14    designed to produce a fair, reasonable, and adequate compromise.

15    **B.    Serious Questions of Law and Fact Placed the Outcome of the Class
16    Action in Significant Doubt**

17    83.    Another factor considered in assessing the merits of class action settlements – where

18    serious questions of law and fact exist – supports the conclusion that the Settlement is fair,

19    reasonable, and adequate to the Class. As in every complex case of this kind, Lead Plaintiffs faced

20    formidable obstacles in establishing their case, both with respect to liability and damages.

21    **1.    Uncertain Proof on Loss Causation and Damages**

22    84.    Defendants argued vigorously in their motion to dismiss and during settlement

23    negotiations that the Fifth Amended Complaint failed to set forth a provable theory of loss causation.

24    Defendants were steadfast in taking the position that economic evidence would prove that no

25    damages resulted from the alleged false and misleading statements because any stock price decline

26    were caused by market forces unrelated to the alleged fraud.

27    85.    Lead Plaintiffs' theory of loss causation was that the stock price decline during the

28    Class Period were attributable, at least in part, to Defendants' false and misleading statements

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL
APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**    - 18 -

1  concerning the true driver of Viread sales – off-label marketing. When the truth regarding Viread

2  sales was revealed, physicians were less eager to prescribe Viread to their patients causing a drop in

3  Viread sales, which caused the wholesalers to draw down their inventories. When the public finally

4  realized the impact of the off-label marketing and the FDA Warning Letter, the artificial inflation

5  came out of Gilead's stock price.

6       86.    In reversing the District Court's opinion and remanding the litigation, the Ninth

7  Circuit held that Lead Plaintiffs sufficiently alleged loss causation and economic loss.

8       87.    While Lead Plaintiffs and their counsel believe, and the Ninth Circuit has held, that

9  their theory of loss causation satisfied the standard set out by the Supreme Court in *Dura,* Lead

10  Plaintiffs' ability to prove the essential element of loss causation at trial was uncertain in light of,

11  among other things, the temporal gap between the time the FDA Warning Letter was revealed and

12  the subsequent decline in Gilead's stock value as well as the substantial hurdle of proving that

13  physicians stopped prescribing Viread as a result of the FDA Warning Letter.

14       88.    The amount of damages incurred by Class Members would have been hotly contested

15  at trial. Damages in cases such as these are always difficult to estimate: provable damages may have

16  exceeded Lead Plaintiffs' expert's high estimate, or been less than the low estimate. At trial, the

17  damage assessments of Lead Plaintiffs' and Defendants' experts were sure to vary substantially, and

18  in the end, this crucial element at trial would have been reduced to a "battle of the experts."

19       **2.    Falsity and Materiality Would Have Been Difficult to Prove at Trial**

20

21       89.    As evidenced by Defendants' numerous motions to dismiss, falsity and materiality

22  were also aggressively contested issues in this litigation, which may have proved difficult to

23  establish at trial. Defendants took the position that Gilead's sales of Viread were both legal and

24  ethical and that off-label marketing, if any, did not result in material sales of Viread during the Class

25  Period. Proving the falsity and materiality of any of Defendants' actionable Class Period statements

26  would have been a significant hurdle on a motion for summary judgment and at trial.

27       90.    Although Lead Plaintiffs' counsel believe they would have been able to provide

28  admissible and convincing expert testimony on every essential element of Lead Plaintiffs' claims,

many obstacles to success lay before them when the parties attended mediation and the Settlement was reached.  The litigation could have floundered based on Lead Plaintiffs' failure to establish loss causation, falsity, or other essential elements, such as scienter or materiality.  Even if each of these elements was established, proving damages in excess of the settlement amount of $8,250,000 was by no means assured.  The uncertainty as to Lead Plaintiffs' ability to prove liability and damages above the settlement amount strongly supports the Settlement in this case.

91.     Finally, even if Lead Plaintiffs prevailed and obtained a substantial judgment after trial, there is little doubt that Defendants would have appealed.  The appeals process would have likely spanned several years, during which the Class would have received no distribution on any damage award.  In addition, an appeal of any verdict would carry the risk of reversal, in which case the Class would receive no recovery after having prevailed on the claims at trial.

**C.     The Judgment of the Parties that the Settlement is Fair and Reasonable Provides Additional Support for Approval of the Settlement**

92.     Another factor in considering whether to approve class action settlements is the judgment of the parties that the settlement is fair and reasonable.  As outlined above, the Settlement was the product of arm's-length negotiations at mediation between adversaries with significant experience in securities class action litigation and a highly-qualified mediator.

93.     Lead Plaintiffs also believe that it is in their best interest and the best interests of the Class to settle the case against the Defendants.

94.     In reaching the determination to settle this litigation for $8,250,000, Lead Plaintiffs, through Lead Plaintiffs' counsel, weighed the testimony of the confidential witnesses as well as arguments made by Defendants in their numerous motions to dismiss, the appeal, and settlement discussions, which highlighted the fact that there were several unsettled legal issues that could be adversely decided against Lead Plaintiffs and the Class.

95.     On balance, considering all the circumstances and risks both sides faced were the litigation to continue, the conclusion was reached that the settlement on the terms agreed upon was in the best interests of the Class.

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**          - 20 -

## VII. THE PLAN OF ALLOCATION

96.     Lead Plaintiffs formulated the proposed Plan of Allocation after consulting Lead Plaintiffs' materiality and damages experts. This work was done to calculate a fair and equitable distribution of the settlement's proceeds among Class Members who suffered economic losses as a result of the alleged fraud and wrongdoing, and who submit valid claims.

97.     The Plan of Allocation is set forth in full at pages 3 through 5 of the Settlement Notice. The proposed Plan of Allocation provides an equitable basis to allocate the Net Settlement Fund among all Class Members who submit an acceptable Proof of Claim. Each Class Member whose Proof of Claim is accepted will have a "Recognized Claim" amount calculated under the Plan of Allocation based on their individual transactions. All accepted claimants will then share, pro-rata, in the Net Settlement Fund based on their Recognized Claims.

98.     The Plan of Allocation takes into account only losses to Class Members caused by their transactions in Gilead securities (purchases of common stock or call options; or sales of put options) made at an inflated price during the Class Period, and who held those securities at least through the close of trading on October 28, 2003, when all alleged artificial inflation was eliminated through the $7.46-per-share decrease in the price of Gilead common stock upon revelations made after the close of trading on October 28, 2003.

99.     The Plan of Allocation limits Recognized Claim amounts if the claimant's out-of-pocket loss (purchase price less holding value after the revelations) is less than the amount $7.46 per-share decrease that occurred upon the revelations.

100.     Pursuant to the PSLRA, the Plan of Allocation also reflects the fact here that in the 90 days following the alleged corrective disclosure, the price of Gilead common stock partially rebounded and that Class Members who sold during the 90-day period following the revelations, or who still held at the end of the 90-day period (on January 26, 2004), may have recovered part of their loss allegedly occurring immediately upon the alleged corrective disclosures.

101.     The Plan of Allocation provides that the combined recovery on Gilead put and call options shall not exceed 3% of the Net Settlement Fund.

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**     - 21 -

102.    The Plan of Allocation also provides that the minimum distribution amount to an Authorized Claimant with a valid Recognized Claim shall be $10.00.

103.    To allow for an eventual closure of the Settlement Fund, the Plan of Allocation provides for a redistribution of unclaimed funds that remain six months after the initial distribution. Six months after such redistribution if there are still funds remaining they will be contributed to one or more not-for-profit 501(c)(3) organizations and the Settlement Fund closed.

104.    The proposed Plan of Allocation is based on similar plans of allocation that have been approved in numerous securities class actions, and should be approved here.

## VIII.   FACTORS TO BE CONSIDERED IN SUPPORT OF THE REQUESTED ATTORNEYS' FEE AND EXPENSE AWARD

105.    Despite litigating this case for more than six years, Lead Plaintiffs' counsel have not received any payment for their services in prosecuting this litigation nor have they been paid for expenses incurred in the prosecution of this litigation.

106.    The Settlement Notice sent to Class Members provides notice of Lead Plaintiffs' counsel's request for an award of attorneys' fees of 30% of the Settlement Fund, plus expenses of up to $350,000. The Memorandum of Points and Authorities in Support of Motion for an Award of Attorneys' Fees and Expenses ("Memorandum"), submitted herewith, provides authority supporting Lead Plaintiffs requested fee of 30% of the Settlement Fund and expenses totaling $282,906.73. As discussed in the accompanying Memorandum, the requested fee falls within the range of reasonable fees in common fund cases.

107.    Lead Plaintiffs' counsel's efforts, which have achieved a very favorable result for the Class, were undertaken at great risk and substantial expense to themselves over the six years the litigation has been pending. Lead Plaintiffs' counsel were unwavering in their dedication to the interests of the Class. Despite the risk that they ultimately might not be compensated, Lead Plaintiffs' counsel invested all the time and resources necessary to bring this litigation to a successful conclusion. The requested fee is reasonable based on the quality of Lead Plaintiffs' counsel's work, the time and expense invested, and the substantial benefit obtained for Class Members.

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - C-03-4999-SI          - 22 -

108. Lead Plaintiffs' counsel's compensation for the services rendered is wholly contingent. The expenses incurred in the prosecution of the litigation are set forth in the declarations that Lead Plaintiffs' counsel have submitted in support of this motion. Lead Plaintiffs' counsel, in seeking expenses, have averred that the expenses reflected in the books and records maintained by them are an accurate recording of the expenses incurred. In total, Lead Plaintiffs' counsel have incurred expenses in the amount of $282,906.73. Included in this amount are the fees that have been paid to outside consultants and experts for their opinions on materiality, damages, and the relevant prescription drug market as well as fees that have been paid to outside private investigators for their assistance in locating and interviewing witnesses. Lead Plaintiffs' counsel respectfully submit that all of these expenses are reasonable and were necessarily incurred in connection with the prosecution of this litigation.

### A. The Diligent Prosecution of the Litigation

109. As described above, this litigation was settled only after Lead Plaintiffs' counsel had conducted an extensive investigation into the Class's claims, interviewed dozens of material witnesses, thoroughly researched the facts and law applicable to the Class's claims, prepared and filed a fact-specific, detailed complaint, as well as an additional four amended complaints specifying Defendants' alleged violations of the federal securities laws, successfully opposed Defendants' five motions to dismiss and an appeal to the Ninth Circuit Court of Appeals, and researched the facts and law applicable to Defendants' defenses, began the process of fact discovery, and engaged in arm's-length settlement negotiations with Defendants at mediation. Lead Plaintiffs' counsel's tireless prosecution of this case over the course of more than six years weighs strongly in favor of the fee and expense award Lead Plaintiffs' counsel requests.

### B. The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk, Contingent Securities Cases

110. This litigation was undertaken by Lead Plaintiffs' counsel wholly on a contingent-fee basis. From the outset, Lead Plaintiffs' counsel understood they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the enormous investment of time and money the case would require. In undertaking that responsibility, Lead

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - C-03-4999-SI      - 23 -

1 Plaintiffs' counsel were obligated to assure that sufficient attorney resources were dedicated to the

2 prosecution of this litigation and that funds were available to compensate staff and to pay for the

3 considerable costs that a case such as this entails. Lead Plaintiffs' counsel committed approximately

4 8,891 hours of attorney and paraprofessional time and incurred $282,906.73 in expenses in the

5 prosecution of the litigation, and fully assured the risk of an unsuccessful result.

6      111.   Because of the nature of contingent practice where cases are predominantly "big

7 cases" lasting several years, not only do contingent litigation firms have to pay regular overhead, but

8 they also must advance the expenses of litigation. With an average lag time of three to four years for

9 these cases to conclude, and here over six years, the financial burden on contingent counsel is far

10 greater than on a firm that is paid on an ongoing basis.

11      112.   In addition to advancing litigation expenses and paying overhead, Lead Plaintiffs'

12 counsel faced the possibility of no recovery. It is wrong to assume that a law firm handling complex

13 contingent litigation always wins. Tens of thousands of hours have been expended in losing efforts.

14 This factor labeled by the courts as "the risks of litigation" is not an empty phrase.

15      113.   There are numerous cases where plaintiffs' counsel in contingent cases such as this,

16 after the expenditure of thousands of hours, have received no compensation. It is only because

17 defendants and their counsel know that the leading members of the plaintiffs' securities bar are

18 actually prepared to, and will, force a resolution on the merits and go to trial, or pursue appeals if

19 necessary, that meaningful settlements in actions such as this can occur.

20      114.   Lead Plaintiffs' counsel are aware of many hard-fought lawsuits where, because of

21 the discovery of facts unknown when the case was commenced, changes in the law during the

22 pendency of the case, or a decision of a judge or jury following a trial on the merits, and despite

23 excellent professional efforts of members of the plaintiffs' bar, produced no relief for the class, and

24 no fee for counsel. Indeed, federal appellate reports are filled with opinions affirming dismissals

25 with prejudice in securities cases. *See, e.g., In re Cutera Sec. Litig.*, 610 F.3d 1103, (9th Cir. 2010);

26 *Fannon v. Guidant Corp.*, 583 F.3d 995 (7th Cir. 2009); *Furher v. Ericsson LM Tel. Co., Inc.*, 363

27 Fed. Appx. 763 (2d Cir. 2009); *Furman v. Walton*, 320 Fed. Appx. 638 (9th Cir. 2009); *In re

28 Peregrine Sys., Inc. Sec. Litig.*, 310 Fed. Appx 149 (9th Cir. 2009); *Zucco Partners, LLC v.

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL
APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**   - 24 -

*Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009);*Lopez v. Rica Foods, Inc.*, 277 Fed. Appx. 931 (11th Cir. 2008); *McNamara v. Pre-Paid Legal Servs., Inc.*, 189 Fed. Appx. 702 (10th Cir. 2006); *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563 (6th Cir. 2004); *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563 (5th Cir. 2003); *Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003); *Hatcher v. Easyriders Licensing, Inc.*, 66 Fed. Appx. 736 (9th Cir. 2003); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079 (9th Cir. 2002); *Lipton v. PathoGenesis Corp.*, 284 F.3d 1027 (9th Cir. 2002); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194 (11th Cir. 2001); *Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001); *Suna v. Bailey Corp.*, 107 F.3d 64 (1st Cir. 1997); *Chill v. GE*, 101 F.3d 263 (2d Cir. 1996); *Glassman v. Computervision Corp.*, 90 F.3d 617 (1st Cir. 1996); *Lovelace v. Software Spectrum*, 78 F.3d 1015 (5th Cir. 1996); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801 (2d Cir. 1996); *Acito v. IMCERA Group*, 47 F.3d 47 (2d Cir. 1995); *Hillson Partners Ltd. P'ship v. Adage, Inc.*, 42 F.3d 204 (4th Cir. 1994); *Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994); *Shields v. Citytrust Bancorp.*, 25 F.3d 1124 (2d Cir. 1994); *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061 (5th Cir. 1994); *Arazie v. Mullane*, 2 F.3d 1456 (7th Cir. 1993); *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357 (3d Cir. 1993); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993); *Raab v. Gen. Physics Corp.*, 4 F.3d 286 (4th Cir. 1993);

115.    The many appellate decisions affirming summary judgments and directed verdicts for defendants show that surviving a motion to dismiss is no guaranty of recovery. *See, e.g.*, *McCabe v. Ernst & Young, LLP*, 494 F.3d 418 (3d Cir. 2007); *Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125 (9th Cir. 2004); *Tse v. Ventana Med. Sys., Inc.*, 297 F.3d 210 (3d Cir. 2002); *Sussman v. Tyco Int'l, Ltd.*, 27 Fed. Appx. 48 (2d Cir. 2001).   *In re Digi Int'l, Inc. Sec. Litig.*, 14 Fed. Appx. 714 (8th Cir. 2001); *Geffon v. Micrion Corp.*, 249 F.3d 29 (1st Cir. 2001); *Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2000); *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542 (6th Cir. 1999); *Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999); *Longman v. Food Lion, Inc.*, 197 F.3d 675 (4th Cir. 1999); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999); *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999); *Levitin v. PaineWebber, Inc.*, 159 F.3d 698 (2d Cir. 1998); *Silver v. H&R Block*, 105 F.3d 394 (8th Cir. 1997).  Moreover, even plaintiffs

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**       - 25 -

who succeed at trial may find their judgment overturned on appeal. *See, e.g., Tumelson Family Ltd. P'ship v. World Fin. News Network*, 242 Fed. Appx. 385 (9th Cir. 2007); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing plaintiffs' jury verdict for securities fraud); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (*en banc*) (reversing plaintiffs' verdict for securities fraud and ordering entry of judgment for defendants); *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1988) (reversing plaintiffs' jury verdict for securities fraud).

116.    Losses such as those cited above are exceedingly expensive. The fees that are awarded are used to cover enormous overhead expenses incurred during the course of litigation and are taxed by federal and, where applicable, state and local authorities. Moreover, changes in the law through legislation or judicial decree can be catastrophic, frequently affecting all of contingent counsel's pending cases.

117.    Courts have repeatedly held that it is in the public's interest to have experienced and able counsel enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies. Vigorous private enforcement of the federal securities laws and state corporation laws can only occur if private plaintiffs can obtain parity in representation with that available to large corporate interests. If this important public policy is to be carried out, the courts must award fees that will adequately compensate private plaintiffs' counsel, taking into account the enormous risks undertaken with a clear view of the economics of a securities class action.

118.    Lead Plaintiffs' counsel undertook to act for the Lead Plaintiffs and the Class in this matter aware that they would be compensated only by obtaining a successful result. The benefits conferred on Lead Plaintiffs and the Class by this Settlement are particularly noteworthy in that a Settlement Fund worth $8,250,000 (plus accrued interest) was obtained for the Class.

## C.    Standing and Expertise of Lead Plaintiffs' Counsel

119.    The standing and expertise of Lead Plaintiffs' counsel, are set forth in each firm's resume attached to counsel's expense declarations submitted herewith. Lead Plaintiffs' counsel are made up of the most experienced and skilled practitioners in the securities litigation field.

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - C-03-4999-SI          - 26 -

120.    The quality of work performed by Lead Plaintiffs' counsel in attaining the Settlement should also be evaluated in light of the quality of opposing counsel. The Defendants in this litigation are represented by Cooley LLP, among the finest defense firms in the country, with substantial experience in the defense of complex securities litigation. In the face of this formidable opposition, Lead Plaintiffs' counsel developed their case so as to persuade the Defendants to settle the case on a basis favorable to the Class.

**D.    The Fee Requested is Consistent with Fees Awarded in Comparable Cases in this Circuit**

121.    Finally, the fee requested by Lead Plaintiffs' counsel – 30% of the Settlement Fund – is consistent with fees awarded in comparable cases by this Court and courts in this Circuit. *See, e.g., In re CV Therapeutics, Inc., Sec. Litig.*, No. C 03-3709 SI, 2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) (Illston, J.) (awarding 30% fee in securities class action). This factor, as well, supports the fee requested by Lead Plaintiffs' counsel.

**E.    Lead Plaintiffs' Counsel's Request for Payment of Expenses is Reasonable and Should be Approved**

122.    Lead Plaintiffs' counsel have submitted detailed declarations setting forth the amount of the expenses incurred over the course of the litigation, which total $282,906.73. These expenses were reasonably and necessarily incurred, are reasonable in amount, and therefore, should be paid.

**IX.    CONCLUSION**

123.    For the reasons set forth above and in the accompanying Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds, and the Memorandum of Points and Authorities in Support of Motion for an Award of Attorneys' Fees and Expenses, we respectfully submit that: (a) the Settlement is fair, reasonable, and adequate and should be approved; (b) the Plan of Allocation represents a fair method for distribution of the Net Settlement Fund among Class Members and should also be approved; and (c) the application for attorneys' fees and expenses should be granted.

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**                - 27 -

1      I declare under penalty of perjury that the foregoing is true and correct.  Executed this 16th

2 day of September, 2010, at Boca Raton, Florida.

3

4                         */s/ David J. George*

                            David J. George

5

6

7      I declare under penalty of perjury that the foregoing is true and correct.  Executed this 16th

 day of September, 2010, at New York, New York.

8

9

10                         */s/ Lori G. Feldman*

                            Lori G. Feldman

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL
APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**    - 28 -

1    I, JEFFREY D. LIGHT, am the ECF User whose ID and password are being used to file this

2  Joint Declaration of David J. George and Lori G. Feldman in Support of Motion for Final Approval

3  of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and an Award of

4  Attorneys' Fees and Expenses.  In compliance with General Order 45, X.B., I hereby attest that

5  David J. George and Lori G. Feldman have concurred in this filing.

6    I certify under penalty of perjury that the foregoing is true and correct.  Executed on

7  September 16, 2010.

8                                          s/ JEFFREY D. LIGHT
                                          JEFFREY D. LIGHT
9
                                          ROBBINS GELLER RUDMAN
10                                            & DOWD LLP
                                          655 West Broadway, Suite 1900
11                                         San Diego, CA  92101-3301
                                          Telephone:  619/231-1058
12                                         619/231-7423 (fax)

13                                         E-mail:Jeffl@rgrdlaw.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

577755_2

JOINT DECL OF DAVID J. GEORGE & LORI G. FELDMAN IN SUPPORT OF MOTION FOR FINAL
APPROVAL, PLAN OF ALLOCATION AND AWARD OF FEES AND EXPENSES - **C-03-4999-SI**     - 29 -

1    <u>CERTIFICATE OF SERVICE</u>

2          I hereby certify that on September 16, 2010, I authorized the electronic filing of the foregoing

3    with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

4    the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5    caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6    CM/ECF participants indicated on the attached Manual Notice List.

7          I further certify that I caused this document to be forwarded to the following Designated

8    Internet Site at:  http://securities.stanford.edu.

9          I certify under penalty of perjury under the laws of the United States of America that the

10   foregoing is true and correct.  Executed on September 16, 2010.

11

12                                    s/ JEFFREY D. LIGHT
                                      JEFFREY D. LIGHT

13

14                                    ROBBINS GELLER RUDMAN
                                          & DOWD LLP
15                                    655 West Broadway, Suite 1900
                                      San Diego, CA  92101-3301
                                      Telephone:  619/231-1058
16                                    619/231-7423 (fax)

17                                    E-mail:JeffL@rgrdlaw.com

18

19

20

21

22

23

24

25

26

27

28

577755_2

# Mailing Information for a Case 3:03-cv-04999-SI

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Susan K. Alexander**
  SuziA@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Eric J. Belfi**
  ebelfi@labaton.com,ElectronicCaseFiling@labaton.com

- **Lauren Block**
  lblock@milberg.com

- **Brian D. Brooks**
  bbrooks@murrayfrank.com

- **Ross B. Brooks**
  rbrooks@milberg.com

- **Matthew Dean Brown**
  mbrown@cooley.com,nafeyla@cooley.com

- **John C. Dwyer**
  dwyerjc@cooley.com,giovannonib@cooley.com

- **Lori G. Feldman**
  lfeldman@milberg.com

- **Linda M. Fong**
  lfong@kaplanfox.com,kweiland@kaplanfox.com,lbarry@kaplanfox.com

- **David Jude George**
  dgeorge@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Michael M. Goldberg**
  info@glancylaw.com

- **Robert A. Jigarjian**
  jigarjianlaw@gmail.com

- **Jeffrey Michael Kaban**
  kabanjm@cooley.com,kramerns@cooley.com

- **Laurence D. King**
  lking@kaplanfox.com,kweiland@kaplanfox.com,lbarry@kaplanfox.com

- **Jeffrey David Light**

jeffl@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Douglas C McDermott**
  doug@mcdermottnewman.com,eric@mcdermottnewman.com

- **John W. Pillette**
  CAND.USCOURTS@classcounsel.com

- **Robert Jeffrey Robbins**
  rrobbins@lerachlaw.com,ppuerto@lerachlaw.com

- **David Avi Rosenfeld , Esq**
  drosenfeld@geller-rudman.com

- **Samuel H. Rudman**
  srudman@csgrr.com

- **Jennifer J. Sosa**
  jsosa@milberg.com

- **Sanford Svetcov**
  sandys@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Marc M. Umeda**
  MUmeda@robbinsumeda.com,notice@robbinsumeda.com

- **Joshua H. Vinik**
  jvinik@milberg.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Jack G. Fruchter
Abraham Fruchter & Twersky LLP
One Penn Plaza
Suite 2805
New York, NY 10119

Holly W. Kimmel
Coughlin Stoia Geller Rudman & Robbins LLP
120 E. Palmetto Park Road
Suite 500
Boca Raton, FL 33432-4809

James M. Orman
Law Offices of James M. Orman
1845 Walnut Street, 14th Floor
Philadelphia, PA 19103
```