MILBERG LLP
JOSHUA H. VINIK (*admitted pro hac vice*)
LORI G. FELDMAN (*admitted pro hac vice*)
ROSS BROOKS (*admitted pro hac vice*)
One Pennsylvania Plaza
New York, NY 10119
Telephone: 212/594-5300
212/868-1229 (fax)
jvinik@milberg.com
lfeldman@milberg.com
rbrooks@milberg.com

Co-Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re GILEAD SCIENCES SECURITIES LITIGATION | ) ) ) Master File No. C-03-4999-SI |
| | ) ) CLASS ACTION |
| This Document Relates To: | ) ) DECLARATION OF LORI G. FELDMAN |
| ALL ACTIONS. | ) FILED ON BEHALF OF MILBERG LLP IN ) SUPPORT OF APPLICATION FOR ) AWARD OF ATTORNEYS' FEES AND ) EXPENSES |
| | DATE: November 5, 2010 TIME: 10:30 a.m. CTRM: The Honorable Susan Illston |

1        I, Lori G. Feldman, declare as follows:

2        1.    I am a member of the law firm of Milberg LLP.  I am submitting this declaration

3 in support of my firm's application for an award of attorneys' fees and expenses in connection

4 with services rendered in the above-entitled action.[1]

5        2.    This firm is counsel of record for co-lead plaintiff Terry Johnson.

6        3.    The identification and background of my firm and its current partners and

7 associates who have worked on this matter is attached hereto as Exhibit A.

8        4.    My firm incurred a total of $128,785.46 in expenses in connection with the

9 prosecution of this litigation.  They are broken down as follows:

### EXPENSES

From Inception to September 15, 2010

| EXPENSE CATEGORY | | TOTAL |
|---|---|---|
| Meals, Hotels & Transportation | | $23,601.24 |
| Photocopies | | 16,292.28 |
| Postage | | 54.83 |
| Teleconferences | | 519.57 |
| Messenger, Overnight Delivery | | 1,810.23 |
| Filing, Witness & Other Fees | | 620.00 |
| Lexis, Westlaw, Online Library Research | | 20,337.25 |
| Class Action Notices | | 439.00 |
| Mediation Fees | | 6,250.00 |
| Experts/Consultants/Outside Investigators | | 36,361.06 |
|     CBIZ Valuation Group, LLC | $16,785.23 | |
|     Crowninshield Financial Research LLC | 12,971.00 | |
|     L.R. Hodges & Associates, Ltd. | 3,104.83 | |
|     Consulting Medical Expert | 3,500.00 | |
| Litigation Fund Contributions | | 22,500.00 |
| | | |
| TOTAL | | $128,785.46 |

---

[1] Milberg LLP has a fee agreement with a referring law firm, Murray Frank & Sailor LLP.  Any payment by Milberg LLP to Murray Frank & Sailor LLP pursuant to this fee agreement would be from Milberg LLP's fee.  Such payment would not increase the overall fees requested by Plaintiffs' Counsel, nor would it reduce the amount recovered by the Class.  The details of this fee agreement can be provided to the Court at the Court's request.

5.     The following is additional information regarding these expenses:

(a)     Filing, Witness and Other Fees: $620.00

| DATE | VENDOR | AMOUNT |
|------|--------|--------|
| 7/16/2004 | Clerk, United States District Court | $60.00 |
| 1/12/2009 | Court Support Inc. | $350.00 |
| 3/27/2010 | *Pro Hac Vice* Court Fees | $210.00 |

(b)     Meals, Hotels and Transportation: $23,601.24.  Expenses for out-of-town meals, hotels and transportation were incurred for the following purposes:

| Name | Date Incurred and/or Billed | Destination | Purpose | Transportation | Hotel | Meals |
|------|------|------|------|------|------|------|
| FELDMAN, LORI G. | 10/22/04 | AIR TRAVEL SEATTLE/ SAN FRANCISCO | MOTION TO DISMISS HEARING / DISCOVERY STAY | $233.10 | | |
| MCDERMOTT, DOUGLAS | 10/22/04 | AIR TRAVEL SEATTLE/ SAN FRANCISCO | MOTION TO DISMISS HEARING / DISCOVERY STAY | $432.20 | | |
| FELDMAN, LORI G. | 10/24/04 | TAXI TO AIRPORT/ SEATTLE | MOTION TO DISMISS HEARING / DISCOVERY STAY | $46.00 | | |
| FELDMAN, LORI G. | 10/26/04 | TAXI IN SAN FRANCISCO | MOTION TO DISMISS HEARING / DISCOVERY STAY | $20.00 | | |
| MCDERMOTT, DOUGLAS | 10/26/04 | SEATTLE AIRPORT PARKING | MOTION TO DISMISS HEARING / DISCOVERY STAY | $22.65 | | |
| MCDERMOTT, DOUGLAS | 10/26/04 | TAXI IN SAN FRANCISCO | MOTION TO DISMISS HEARING / DISCOVERY STAY | $18.00 | | |
| FELDMAN, LORI G. | 10/27/04 | HOTEL IN SAN FRANCISCO (MULTIPLE DAYS) | MOTION TO DISMISS HEARING / DISCOVERY STAY | | $670.09 | |

| Name | Date Incurred and/or Billed | Destination | Purpose | Transportation | Hotel | Meals |
|---|---|---|---|---|---|---|
| MCDERMOTT, DOUGLAS | 10/27/04 | TAXI IN SAN FRANCISCO | MOTION TO DISMISS HEARING / DISCOVERY STAY | $54.00 | | |
| MCDERMOTT, DOUGLAS | 10/27/04 | HOTEL IN SAN FRANCISCO (MULTIPLE DAYS) | MOTION TO DISMISS HEARING / DISCOVERY STAY | | $840.08 | |
| FELDMAN, LORI G. | 11/03/04 | AIR TRAVEL SEATTLE/ SAN FRANCISCO | MOTION TO STAY HEARING | $788.20 | | |
| FELDMAN, LORI G. | 11/04/04 | TAXI IN SAN FRANCISCO | MOTION TO STAY HEARING | $45.00 | | |
| FELDMAN, LORI G. | 11/05/04 | SEATTLE AIRPORT PARKING | MOTION TO STAY HEARING | $34.00 | | |
| FELDMAN, LORI G. | 11/05/04 | HOTEL IN SAN FRANCISCO | MOTION TO STAY HEARING | | $384.42 | |
| FELDMAN, LORI G. | 12/21/04 | AIR TRAVEL SEATTLE/ SAN FRANCISCO | MOTION TO DISMISS HEARING | $526.20 | | |
| FELDMAN, LORI G. | 01/03/05 | TAXI IN SAN FRANCISCO | MOTION TO DISMISS HEARING | $50.00 | | |
| FELDMAN, LORI G. | 01/04/05 | TAXI IN SAN FRANCISCO | MOTION TO DISMISS HEARING | $10.00 | | |
| FELDMAN, LORI G. | 01/04/05 | SEATTLE AIRPORT TRANSPORTATION | MOTION TO DISMISS HEARING | $138.00 | | |
| FELDMAN, LORI G. | 01/04/05 | HOTEL IN SAN FRANCISCO | MOTION TO DISMISS HEARING | | $326.63 | |
| KIM, SABRINA | 10/03/05 | AIR TRAVEL LOS ANGELES/ SAN FRANCISCO | MOTION TO DISMISS HEARING | $484.40 | | |
| KIM, SABRINA | 10/04/05 | TAXI IN SAN FRANCISCO | MOTION TO DISMISS HEARING | $18.00 | | |
| KIM, SABRINA | 10/04/05 | TAXI IN SAN FRANCISCO | MOTION TO DISMISS HEARING | $55.00 | | |
| KIM, SABRINA | 10/04/05 | TAXI IN SAN FRANCISCO | MOTION TO DISMISS HEARING | $5.00 | | |

DECLARATION OF LORI G. FELDMAN FILED ON BEHALF OF MILBERG LLP IN SUPPORT OF APPLICATION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES - C-03-4999-SI      - 3 -

| Name | Date Incurred and/or Billed | Destination | Purpose | Transportation | Hotel | Meals |
|------|------|------|------|------|------|------|
| KIM, SABRINA | 10/04/05 | LOS ANGELES AIRPORT PARKING | MOTION TO DISMISS HEARING | $30.00 | | |
| KIM, SABRINA | 10/05/05 | HOTEL IN SAN FRANCISCO | MOTION TO DISMISS HEARING | | $256.30 | |
| LIPTON, ANN M. | 02/16/06 | AIR TRAVEL NEW YORK/ SAN FRANCISCO | MOTION TO DISMISS HEARING | $1,217.10 | | |
| LIPTON, ANN M. | 02/20/06 | AIRPORT TRANSPORTATION | MOTION TO DISMISS HEARING | $45.00 | | |
| LIPTON, ANN M. | 02/21/06 | TAXI IN SAN FRANCISCO | MOTION TO DISMISS HEARING | $11.00 | | |
| LIPTON, ANN M. | 02/21/06 | TAXI IN SAN FRANCISCO | MOTION TO DISMISS HEARING | $10.00 | | |
| LIPTON, ANN M. | 02/22/06 | AIRPORT TRANSPORTATION | MOTION TO DISMISS HEARING | $53.00 | | |
| LIPTON, ANN M. | 02/22/06 | AIRPORT TRANSPORTATION | MOTION TO DISMISS HEARING | $50.00 | | |
| LIPTON, ANN M. | 02/22/06 | HOTEL IN SAN FRANCISCO | MOTION TO DISMISS HEARING | | $348.01 | |
| FELDMAN, LORI G. | 10/24/07 | AIR TRAVEL NEW YORK/ SAN FRANCISCO | 9TH CIRCUIT HEARING | $515.79 | | |
| WINTTERLE, RACHEL | 11/27/07 | AIR TRAVEL NEW YORK/ SAN FRANCISCO | 9TH CIRCUIT HEARING | $572.40 | | |
| FELDMAN, LORI G. | 12/05/07 | HOTEL IN SAN FRANCISCO (MULTIPLE DAYS) | 9TH CIRCUIT HEARING | | $656.10 | |
| WINTTERLE, RACHEL | 12/05/07 | HOTEL IN SAN FRANCISCO (MULTIPLE DAYS) | 9TH CIRCUIT HEARING | | $679.71 | |
| HAYES, PAUL D. | 12/01/08 | AIR TRAVEL NEW YORK/ ASHEVILLE, NC | CLIENT MEETING | $1,098.99 | | |
| HAYES, PAUL D. | 12/02/08 | ASHEVILLE, NC | CLIENT MEETING | | | $31.00 |
| HAYES, PAUL D. | 12/03/08 | ASHEVILLE, NC | CLIENT MEETING | | | $8.20 |
| HAYES, PAUL D. | 12/03/08 | HOTEL IN ASHEVILLE, NC | CLIENT MEETING | | $137.33 | |

DECLARATION OF LORI G. FELDMAN FILED ON BEHALF OF MILBERG LLP IN SUPPORT OF APPLICATION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES - C-03-4999-SI        - 4 -

| Name | Date Incurred and/or Billed | Destination | Purpose | Transportation | Hotel | Meals |
|------|------|------|------|------|------|------|
| HAYES, PAUL D. | 12/03/08 | CAR RENTAL IN ASHEVILLE, NC | CLIENT MEETING | $88.39 | | |
| VINIK, JOSHUA H. | 01/06/09 | AIR TRAVEL NEWARK/ SAN FRANCISCO | CASE MANAGEMENT CONFERENCE | $1,619.20 | | |
| VINIK, JOSHUA H. | 01/15/09 | TAXI IN SAN FRANCISCO | CASE MANAGEMENT CONFERENCE | $48.00 | | |
| VINIK, JOSHUA H. | 01/16/09 | HOTEL IN SAN FRANCISCO | CASE MANAGEMENT CONFERENCE | | $398.48 | |
| VINIK, JOSHUA H. | 01/16/09 | TAXI IN SAN FRANCISCO | CASE MANAGEMENT CONFERENCE | $45.00 | | |
| VINIK, JOSHUA H. | 01/17/09 | NEWARK AIRPORT PARKING | CASE MANAGEMENT CONFERENCE | $60.00 | | |
| BROOKS, ROSS | 07/10/09 | AIR TRAVEL NEW YORK/ SAN FRANCISCO | CASE MANAGEMENT CONFERENCE | $794.20 | | |
| BROOKS, ROSS | 07/16/09 | TAXI IN SAN FRANCISCO | CASE MANAGEMENT CONFERENCE | $42.00 | | |
| BROOKS, ROSS | 07/17/09 | HOTEL IN SAN FRANCISCO | CASE MANAGEMENT CONFERENCE | | $586.04 | |
| BROOKS, ROSS | 10/05/09 | AIR TRAVEL SAN FRANCISCO/ NEW YORK | HEARING ON MOTION TO DISMISS | $309.75 | | |
| BROOKS, ROSS | 10/08/09 | TAXI IN SAN FRANCISCO | HEARING ON MOTION TO DISMISS | $38.40 | | |
| BROOKS, ROSS | 10/08/09 | AIR TRAVEL NEW YORK/ SAN FRANCISCO | HEARING ON MOTION TO DISMISS | $637.10 | | |
| BROOKS, ROSS | 10/09/09 | SAN FRANCISCO | HEARING ON MOTION TO DISMISS | | | $32.31 |
| BROOKS, ROSS | 10/09/09 | TAXI IN SAN FRANCISCO | HEARING ON MOTION TO DISMISS | $42.70 | | |
| BROOKS, ROSS | 10/10/09 | HOTEL IN SAN FRANCISCO | HEARING ON MOTION TO DISMISS | | $362.93 | |
| HAYES, PAUL D. | 01/08/10 | AIR TRAVEL NEWARK/ ASHEVILLE, NC | CLIENT MEETING | $160.40 | | |
| HAYES, PAUL D. | 01/09/10 | AIRPORT TRANSPORTATION | CLIENT MEETING | $47.00 | | |

DECLARATION OF LORI G. FELDMAN FILED ON BEHALF OF MILBERG LLP IN SUPPORT OF APPLICATION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES - C-03-4999-SI     - 5 -

| Name | Date Incurred and/or Billed | Destination | Purpose | Transportation | Hotel | Meals |
|------|------|------|------|------|------|------|
| HAYES, PAUL D. | 01/09/10 | ASHEVILLE, NC | CLIENT MEETING | | | $10.49 |
| HAYES, PAUL D. | 01/10/10 | ASHEVILLE, NC | CLIENT MEETING | | | $8.00 |
| HAYES, PAUL D. | 01/10/10 | CAR RENTAL ASHEVILLE, NC | CLIENT MEETING | $58.63 | | |
| HAYES, PAUL D. | 01/10/10 | AIR TRAVEL ASHEVILLE, NC/ NEWARK | CLIENT MEETING | $263.70 | | |
| HAYES, PAUL D. | 01/11/10 | AIRPORT TRANSPORTATION | CLIENT MEETING | $48.00 | | |
| HAYES, PAUL D. | 01/11/10 | HOTEL IN ASHEVILLE, NC | CLIENT MEETING | | $121.81 | |
| VINIK, JOSHUA H. | 01/15/10 | AIR TRAVEL NEWARK/ SAN FRANCISCO | MEDIATION | $1,335.40 | | |
| FELDMAN, LORI G. | 01/15/10 | AIR TRAVEL NEWARK/ SAN FRANCISCO | MEDIATION | $1,409.00 | | |
| HAYES, PAUL D. | 01/22/10 | AIR TRAVEL NEWARK/ ASHEVILLE, NC | CLIENT MEETING | $557.40 | | |
| HAYES, PAUL D. | 01/23/10 | AIRPORT TRANSPORTATION | CLIENT MEETING | $48.80 | | |
| HAYES, PAUL D. | 01/24/10 | ASHEVILLE, NC | CLIENT MEETING | | | $11.48 |
| HAYES, PAUL D. | 01/24/10 | ASHEVILLE, NC | CLIENT MEETING | | | $18.50 |
| HAYES, PAUL D. | 01/25/10 | ASHEVILLE, NC | CLIENT MEETING | | | $29.19 |
| HAYES, PAUL D. | 01/26/10 | HOTEL IN ASHEVILLE, NC (MULTIPLE DAYS) | CLIENT MEETING | | $310.63 | |
| HAYES, PAUL D. | 01/26/10 | CAR RENTAL IN ASHEVILLE, NC | CLIENT MEETING | $172.56 | | |
| HAYES, PAUL D. | 01/26/10 | AIRPORT TRANSPORTATION | CLIENT MEETING | $52.00 | | |
| VINIK, JOSHUA H. | 03/01/10 | TAXI IN SAN FRANCISCO | MEDIATION | $45.00 | | |
| VINIK, JOSHUA H. | 03/02/10 | TAXI IN SAN FRANCISCO | MEDIATION | $9.00 | | |
| VINIK, JOSHUA H. | 03/02/10 | HOTEL IN SAN FRANCISCO | MEDIATION | | $460.85 | |

| Name | Date Incurred and/or Billed | Destination | Purpose | Transportation | Hotel | Meals |
|---|---|---|---|---|---|---|
| FELDMAN, LORI G. | 03/02/10 | HOTEL IN SAN FRANCISCO | MEDIATION | | $467.42 | |
| FELDMAN, LORI G. | 03/02/10 | AIRPORT TRANSPORTATION | MEDIATION | $45.35 | | |
| VINIK, JOSHUA H. | 03/03/10 | AIRPORT PARKING NEWARK | MEDIATION | $66.00 | | |
| FELDMAN, LORI G. | 05/12/10 | AIR TRAVEL NEW YORK/ SAN FRANCISCO | CASE MANAGEMENT CONFERENCE | $1,439.40 | | |
| FELDMAN, LORI G. | 05/13/10 | SAN FRANCISCO | CASE MANAGEMENT CONFERENCE | | | $33.40 |
| FELDMAN, LORI G. | 05/14/10 | HOTEL IN SAN FRANCISCO | CASE MANAGEMENT CONFERENCE | | $322.43 | |
| FELDMAN, LORI G. | 05/14/10 | TAXI IN SAN FRANCISCO | CASE MANAGEMENT CONFERENCE | $12.00 | | |
| FELDMAN, LORI G. | 05/14/10 | TAXI IN SAN FRANCISCO | CASE MANAGEMENT CONFERENCE | $12.00 | | |

(c)     Photocopying: $16,292.28

In-house (90,232 @ $0.10 per copy): $9,023.20
Outside Photocopy Expenses: $7,269.08

| DATE | VENDOR | AMOUNT |
|---|---|---|
| 02/27/04-03/12/04 | Lighthouse Document Services | $833.69 |
| 04/16/04-08/10/05 | R.W. Beck, Inc. | $1,179.29 |
| 01/10/04 | Rosen, Mandell & Immerman, Inc. | $5,038.85 |
| 11/19/03 | Xact Data Discovery, Inc. | $217.25 |

(d)     Lexis, Westlaw, Online Library Research: $20,337.25.  These included, for example, vendors such as Lexis Nexis, Pacer, Westlaw, Dow Jones Reuters Interactive and Choice Point.  These databases were used to obtain access to SEC filings, legal research, cite-checking of briefs, and filing and retrieving electronically filed court documents.  The charges for these vendors vary depending upon the type of services requested.

6.     In addition to the foregoing, a Gilead Litigation Fund was used in this action, administered by Milberg LLP, from which certain expenses incurred in prosecuting this litigation

were paid.  Milberg LLP and co-lead counsel Robbins Geller Rudman & Dowd LLP, including their predecessors, each made contributions to the Gilead Litigation Fund in the amount of $22,500, for collective total contributions of $45,000.  There is a zero balance in the Gilead Litigation Fund.  For informational purposes, a breakdown of the expenses paid from the Gilead Litigation Fund is as follows:

(a)    Court reporters for transcripts of hearings: $220.00

| DATE | VENDOR | AMOUNT |
|---|---|---|
| 05/17/04 | Clerk of the Court | $120.00 |
| 05/7/09 | Debra L. Pas, CSR, CRR | $100.00 |

(b)    Outside Photocopy Expenses: $3,635.73

| DATE | VENDOR | AMOUNT |
|---|---|---|
| 05/17/04 | Lighthouse Document Services | $219.34 |
| 05/17/04 | Ikon Office Solutions | $2,501.93 |
| 06/10/04 | Lighthouse Document Services | $709.92 |
| 09/13/04 | Lighthouse Document Services | $75.29 |
| 09/29/04 | Lighthouse Document Services | $129.25 |

(c)    Experts, Consultants, Outside Investigators and Outside Counsel: $40,921.62

| DATE | Experts, Consultants, Outside Investigators and Outside Counsel | AMOUNT |
|---|---|---|
| 05/17/04 | Consulting Medical Expert | $6,962.50 |
| 05/17/04 | Counsel For Confidential Witness | $2,799.94 |
| 09/15/04 | Consulting Medical Expert | $5,052.50 |
| 01/19/05 | Consulting Medical Expert | $5,075.00 |
| 02/03/05 | Consulting Medical Expert | $337.50 |
| 03/16/05 | LMGI, Ltd. | $135.94 |
| 07/08/05 | Consulting Medical Expert | $13,162.50 |
| 11/15/05 | Consulting Medical Expert | $2,450.00 |
| 03/14/06 | Consulting Medical Expert | $2,450.00 |
| 12/17/08 | LMGI, Ltd. | $467.09 |
| 02/06/09 | LMGI, Ltd. | $135.78 |
| 01/13/10 | Prof. Roy Simon | $740.00 |
| 08/31/10 | L.R. Hodges & Associates Ltd. | $839.50 |
| 08/31/10 | L.R. Hodges & Associates Ltd. | $110.95 |
| 09/15/10 | L.R. Hodges & Associates Ltd. | $202.42 |

(d)    Library Research: $103.85

| DATE | VENDOR | AMOUNT |
|---|---|---|
| 05/17/04 | The New York Public Library | $103.85 |

DECLARATION OF LORI G. FELDMAN FILED ON BEHALF OF MILBERG LLP IN SUPPORT OF APPLICATION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES - C-03-4999-SI              - 8 -

(e)   Bank charges: $118.80

| DATE | VENDOR | AMOUNT |
|---|---|---|
| 01/31/10 | Bank Charge | $130.80 |
| 03/31/10 | Refund of Bank Charge | -$12.00 |

(f)   Reconciliation

| | |
|---|---|
| Contributions | $45,000.00 |
| Less Payments | $45,000.00 |
| Account Balance as of 9/16/10 | $0.00 |

7.   The expenses pertaining to this case are reflected in the books and records of this firm. These books and records are prepared from expense vouchers, check records and other documents and are an accurate record of the expenses.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of September, 2010, at New York, New York.

LORI G. FELDMAN

# EXHIBIT A



NEW YORK
LOS ANGELES
TAMPA
DETROIT

## THE FIRM'S PRACTICE AND ACHIEVEMENTS

Milberg LLP, founded in 1965, was one of the first law firms to prosecute class actions in federal courts on behalf of investors and consumers. The Firm pioneered this type of litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing. The Firm's practice focuses on the prosecution of class and complex actions in many fields of commercial litigation, including securities, corporate fiduciary, ERISA, consumer, insurance, antitrust, bankruptcy, mass tort, and human rights litigation. The Firm has offices in New York City, Los Angeles, Tampa, and Detroit.

In the Firm's early years, its founding partners built a new area of legal practice in representing shareholder interests under the then recently amended Rule 23 of the Federal Rules of Civil Procedure, which allowed securities fraud cases, among others, to proceed as class actions. In the following decades, the Firm obtained decisions establishing important legal precedents in many of its areas of practice and prosecuted cases that set benchmarks in terms of case theories, organization, discovery, trial results, methods of settlement, and amounts recovered and distributed to clients and class members.

Important milestones in the Firm's early years include the Firm's involvement in the *U.S. Financial* litigation in the early 1970s, one of the earliest large class actions, which resulted in a $50 million recovery for purchasers of the securities of a failed real estate development company; the Ninth Circuit decision in *Blackie v. Barrack* in 1975, which established the fraud-on-the-market doctrine for securities fraud actions; the Firm's co-lead counsel position in the *In re Washington Public Power Supply System* ("*WPPSS*") *Securities Litigation*, a seminal securities fraud action in the 1980s in terms of complexity and amounts recovered; the representation of the Federal Deposit Insurance Corporation in a year-long trial to recover banking losses from a major accounting firm, leading to a precedent-setting global settlement; attacking the Drexel-Milken "daisy chain" of illicit junk-bond financing arrangements with numerous cases that resulted in substantial recoveries for investors; representing life insurance policyholders defrauded by "vanishing premium" and other improper sales tactics and obtaining large recoveries from industry participants; and ground-breaking roles in the multi-front attack on deception and other improper activities in the tobacco industry.

Milberg remains at the forefront in its areas of practice. Significant litigation results include: *In re Vivendi Universal, S.A. Securities Litigation* (estimated $9 billion judgment, claims procedure pending); *Tyco International Ltd. Securities Litigation* ($3.2 billion settlement); *Nortel Networks Litigation* (settlement for cash and stock valued at $1.142 billion); *Lucent Technologies Securities Litigation* ($600 million recovery); *Raytheon Co. Securities Litigation* ($460 million recovery); *Managed Care Litigation* (recoveries over $1 billion and major changes in HMO practices); the *WPPSS Securities Litigation* (settlements totaling $775 million), and the *NASDAQ Market-Makers Antitrust Litigation* ($1 billion in recoveries). Milberg has been responsible for recoveries valued at approximately $55 billion during the life of the Firm.

Milberg is consistently active in *pro bono* litigation, highlighted by its leadership role in the *Swiss Bank Litigation*, which led to the recovery of $1.25 billion from Swiss banks to benefit victims of the Holocaust, and the Firm's efforts representing claimants of the September 11 Victim Compensation Fund.

The Firm's lawyers come from many different professional backgrounds. They include former judges, professors, prosecutors, private defense attorneys, and government lawyers. The Firm's ability to pursue claims against defendants is augmented by its team of investigators, headed by a 27-year veteran of the Federal Bureau of Investigation, a full-time staff of forensic accountants and financial analysts, and an in-house litigation support department with data hosting capabilities, staffed by electronic discovery specialists.

For more information, please visit www.milberg.com.

 **MILBERG** LLP

NEW YORK
LOS ANGELES
TAMPA
DETROIT

## JUDICIAL COMMENDATIONS

Milberg has been commended by countless judges throughout the country for the quality of its representation.

Milberg partners played leading roles in representing class plaintiffs in the three-month jury trial in *In re Vivendi Universal, S.A. Securities Litigation*, No. 02-5571 (S.D.N.Y.), which in January 2010 resulted in the largest verdict on record in that type of case (totaling as much as $9 billion; claims procedure pending). At the close of the trial, Judge Richard Holwell commented:

> I can only say that this is by far the best tried case that I have had in my time on the bench. I don't think either side could have tried the case better than these counsel have.

In approving a $3.2 billion securities fraud settlement, one of the largest in history, in *In re Tyco International, Ltd. Securities Litigation*, No. 02-1335 (D.N.H. Dec. 19, 2007), Judge Barbadoro lauded Milberg's efforts as co-lead counsel:

> This was an extraordinarily complex and hard-fought case. Co-Lead Counsel put massive resources and effort into the case for five long years, accumulating [millions of dollars in expenses] and expending [hundreds of thousands of hours] on a wholly contingent basis. But for Co-Lead Counsel's enormous expenditure of time, money, and effort, they would not have been able to negotiate an end result so favorable for the class. . . . Lead Counsel's continued, dogged effort over the past five years is a major reason for the magnitude of the recovery. . . .

In *Simon v. KPMG LLP*, No. 05-3189, 2006 U.S. Dist. LEXIS 35943, at *18, 30-31 (D.N.J. June 2, 2006), a case in which Milberg served as class counsel, Judge Cavanaugh, in approving the $153 million settlement, found that "Plaintiffs . . . retained highly competent and qualified attorneys" and that "[t]he Initial Complaint . . . demonstrates that [Milberg] expended considerable time and effort with the underlying factual and legal issues in this case before even filing this lawsuit. . . . Settlement discussions were conducted over a period of some fourteen months with the supervision and guidance of Judges Politan and Weinstein, and are evidence of [Milberg's] appreciation of the merits and complexity of this litigation."

In *In re Lucent Technologies, Inc. Securities Litigation*, No. 00-621, slip op. at 14-15, 26 (D.N.J. Feb. 24, 2004), Judge Pisano issued an opinion approving the $600 million settlement and complimenting Milberg's work as co-lead counsel for the class as follows:

> [T]he attorneys representing the Plaintiffs are highly experienced in securities class action litigation and have successfully prosecuted numerous class actions throughout the United States. They are more than competent to conduct this action. Co-Lead Counsel diligently and aggressively represented the Plaintiffs before this Court and in the negotiations that resulted in the Settlement. . . . [T]he efforts and ingenuity of Lead Plaintiffs and Lead Counsel resulted in an extremely valuable Settlement for the Benefit of the Class.

In *In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003), Judge Dalzell commented on the skill and efficiency of the Milberg attorneys litigating this complex case:

> At the risk of belaboring the obvious, we pause to say a specific word about . . . the skill and efficiency of the attorneys involved. [Milberg was] extraordinarily deft and efficient in handling this most complex matter. [T]hey were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write-down of over $1.6 billion in previously reported Rite Aid earnings. . . . In short, it would be hard to equal the skill class counsel demonstrated here.

 **MILBERG** LLP

NEW YORK
LOS ANGELES
TAMPA
DETROIT

In *In re IKON Office Solutions, Inc. Securities Litigation*, 194 F.R.D. 166, 195 (E.D. Pa. 2000), Judge Katz commented on Milberg's skill and professionalism as one of plaintiffs' co-lead counsel:

> First, class counsel is of high caliber and has extensive experience in similar class action litigation. . . . Each of the co-lead counsel firms has a national reputation for advocacy in securities class actions, and there is no doubt that this standing enhanced their ability both to prosecute the case effectively and to negotiate credibly. . . .
>
> Of particular note in assessing the quality of representation is the professionalism with which all parties comported themselves. The submissions were of consistently high quality, and class counsel has been notably diligent in preparing filings in a timely manner even when under tight deadlines. This professionalism was also displayed in class counsel's willingness to cooperate with other counsel when appropriate. . . . This cooperation enabled the parties to focus their disputes on the issues that mattered most and to avoid pointless bickering over more minor matters.

In *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998), in an opinion approving settlements totaling over $1.027 billion, Judge Sweet commented:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

Judicial recognition of Milberg's excellence is not limited to courts within the United States. In *In re Flag Telecom Holdings, Ltd. Securities Litigation*, No. 02-3400 (S.D.N.Y. 2009), Milberg litigated a discovery dispute before the English Royal High Court of Justice, Queens Bench Division, which recognized the Milberg attorney handling the matter as a "Grade A" lawyer and a "vital cog in the machine." Likewise, in *Sharma v. Timminco Ltd.*, 09-378701 (Can. Ont. Sup. Ct. 2009), Canada's Ontario Superior Court of Justice recognized Milberg's "fine reputation and excellent credentials" in connection with Milberg's representation in a securities case pending in Canada.

Milberg has also been recognized for its commitment to public service. In lauding Milberg's work representing victims of the September 11th attack on the World Trade Center in connection with the September 11 Victims Compensation Fund, Special Master Kenneth R. Feinberg stated the following:

> Once again, as I have learned over the years here in New York, the [Milberg] firm steps up to the plate in the public interest time and time again. The social conscience of the [Milberg] firm, acting through its excellent associates and partners, help deal with crises that confront the American people and others, and I am personally in the debt of Milberg . . . for the work that it is doing . . . . [T]hey are second among none in terms of the public interest, and I'm very, very grateful, not only to you guys for doing this, but . . . for the firm's willingness to help out. I wanted to let everybody know that.

*In re September 11 Victim Compensation Fund*, Preliminary Hearing, Claim No. 212-003658 (Dec. 9, 2003).

 **MILBERG** LLP

## NOTEWORTHY RESULTS

The quality of Milberg's representation is further evidenced by the Firm's numerous significant recoveries, some of which are described below.

- In *In re Vivendi Universal, S.A. Securities Litigation*, No. 02-5571 (S.D.N.Y.), Milberg lawyers were instrumental in obtaining a jury verdict for an international class of defrauded investors after a trial lasting nearly four months. The jury found Vivendi liable for 57 false or misleading class period statements. The claims procedure is pending and could potentially result in a judgment of up to $9 billion. The district court had previously certified a class of purchasers from the U.S., France, England, and the Netherlands. *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76 (S.D.N.Y. 2007).

- *In re Initial Public Offering Securities Litigation*, No. 21-92 (S.D.N.Y.). Milberg represented investors in 310 consolidated securities actions arising from an alleged market manipulation scheme. Plaintiffs alleged, among other things, that approximately 55 defendant investment banks, in dealing with certain of their clients, conditioned certain allocations of shares in initial public offerings on the subsequent purchase of more shares in the aftermarket, thus artificially boosting the prices of the subject securities. This fraudulent scheme, plaintiffs alleged, was a major contributing factor in the now infamous technology "bubble" of the late 1990s and early 2000s. As a member of the court-appointed Plaintiffs' Executive Committee, and with certain partners appointed by the court as liaison counsel, Milberg oversaw the efforts of approximately 60 plaintiffs' firms in combating some of the most well-respected defense firms in the nation. In granting final approval to a $586 million settlement on October 5, 2009, the court described the law firms comprising the Plaintiffs' Executive Committee as the "cream of the crop."

- *Carlson v. Xerox*, No. 00-1621 (D. Conn). Milberg served as co-lead counsel in this lawsuit, which consolidated 21 related cases alleging violations of the federal securities laws.

Plaintiffs alleged that Xerox and several of its top officers reported false financial results during the class period and failed to adhere to the standard accounting practices the company claimed to have followed. In the course of litigating plaintiffs' claims, Milberg engaged in arduous and exhaustive factual discovery, including review and analysis of more than four million pages of complex accounting and auditing documents and thousands of pages of SEC deposition transcripts. Plaintiffs' claims survived three motions to dismiss and a motion for summary judgment, ultimately resulting in a $750 million settlement, which received final approval on January 14, 2009.

- *In re Tyco International Ltd., Securities Litigation*, MDL 1335 (D.N.H.). Milberg served as co-lead counsel in this litigation, which involved claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 against Tyco and its former CEO, CFO, general counsel, and certain former directors arising out of allegations of Tyco's $5.8 billion overstatement of income and $900 million in insider trading, plus hundreds of millions of dollars looted by insiders motivated to commit the fraud. Plaintiffs also asserted claims under the 1933 and 1934 Acts against PricewaterhouseCoopers LLP for allegedly publishing false audit opinions on Tyco's financial statements during the class period and failing to audit Tyco properly, despite knowledge of the fraud. On December 19, 2007, the court approved a $3.2 billion settlement of the plaintiffs' claims and praised the work of co-lead counsel.

- *In re Sears, Roebuck & Co. Securities Litigation*, No. 02-7527 (N.D. Ill.). This case involved allegations that Sears concealed material adverse information concerning the financial condition, performance, and prospects of Sears' credit card operations, resulting in an artificially inflated stock price. The approved

✦ **MILBERG** LLP

settlement provided $215 million to compensate class members.

- *In re General Electric Co. ERISA Litigation*, No. 04-1398 (N.D.N.Y.). This ERISA class action was brought on behalf of current and former participants and beneficiaries of the General Electric ("G.E.") 401(k) Plan. Milberg, serving as co-lead counsel, achieved a $40 million settlement on behalf of current and former G.E. employees who claimed that the company's 401(k) Plan fiduciaries imprudently invested more than two-thirds of the Plan's assets in company stock. The settlement included important structural changes to G.E.'s 401(k) plan valued at more than $100 million.

- *In re Biovail Corp. Securities Litigation*, No. 03-8917 (S.D.N.Y.). Milberg, representing Local 282 Welfare Trust Fund and serving as co-lead counsel, litigated this complex securities class action brought on behalf of a class of defrauded investors, alleging that defendants made a series of materially false and misleading statements concerning Canadian company Biovail's publicly reported financial results and the company's then new hypertension/blood pressure drug, Cardizem LA. This was a highly complex case in which counsel took numerous depositions across the U.S. and Canada and obtained documents from defendants and several third-parties, including, among others, UBS, McKinsey & Co., and Merrill Lynch. Milberg obtained a $138 million settlement for the class, and Biovail agreed to institute significant corporate governance changes.

- *In re Nortel Networks Corp. Securities Litigation*, No. 01-1855 (S.D.N.Y.). In this federal securities fraud class action, Milberg served as lead counsel for the class and the court-appointed lead plaintiff, the Trustees of the Ontario Public Service Employees' Union Pension Plan Trust Fund. In certifying the class, the court specifically rejected the defendants' argument that those who traded in Nortel securities on the Toronto Stock Exchange (and not the New York Stock Exchange) should be excluded from the class. The Second Circuit denied the defendants' attempted appeal. On January 29, 2007, the court approved a settlement valued at $1.142 billion.

- *In re American Express Financial Advisors Securities Litigation*, No. 04-1773 (S.D.N.Y.). This case involved allegations that American Express Financial Advisors violated securities laws by representing to class members that the company would provide tailored financial advice, when the company actually provided "canned" financial plans and advice designed to steer clients into American Express and certain nonproprietary mutual funds. The case settled for $100 million, with the settlement agreement requiring that the company institute remedial measures.

- *In re Lucent Technologies, Inc. Securities Litigation*, No. 00-621 (D.N.J.). In this federal securities fraud action in which Milberg served as co-lead counsel, plaintiffs alleged, *inter alia*, that Lucent and its senior officers misrepresented the demand for Lucent's optical networking products and improperly recognized hundreds of millions of dollars in revenues. The settlement provided compensation of $600 million to aggrieved shareholders who purchased Lucent stock between October 1999 and December 2000.

- *In re Raytheon Securities Litigation*, No. 99-12142 (D. Mass.). This case, in which Milberg served as lead counsel, concerned claims that a major defense contractor failed to write down assets adequately on long term construction contracts. In May 2004, Raytheon and its auditor, PricewaterhouseCoopers LLP, settled for a total of $460 million.

- In *In re Rite Aid Securities Litigation*, No. 99-1349 (E.D. Pa.), in which Milberg served as co-lead counsel, the plaintiffs asserted federal securities fraud claims arising out of allegations that Rite Aid failed to disclose material problems with its store expansion and modernization program, resulting in artificially inflated earnings. Judge Dalzell approved class action settlements totaling $334 million against Rite Aid ($207 million), KPMG ($125 million), and certain former executives of Rite Aid ($1.6 million).

- In *In re CMS Energy Corp. Securities Litigation*, No. 02-72004 (E.D. Mich.), a federal securities fraud case arising out of alleged round-trip trading practices by CMS Energy

 **MILBERG** LLP

Corporation, Judge Steeh approved a cash settlement of more than $200 million. Milberg served as co-lead counsel in this litigation.

- *In re Deutsche Telekom AG Securities Litigation*, No. 00-9475 (S.D.N.Y.). Milberg served as co-lead counsel in this securities class action alleging that Deutsche Telekom issued a false and misleading registration statement, which improperly failed to disclose its plans to acquire VoiceStream Wireless Corporation and materially overstated the value of the company's real estate assets. On June 14, 2005, Judge Buchwald approved a $120 million cash settlement.

- *In re CVS Corp. Securities Litigation*, No. 01-11464 (D. Mass). Milberg served as co-lead counsel in this class action alleging that defendants engaged in a series of accounting improprieties and issued false and misleading statements which artificially inflated the price of CVS stock. On September 7, 2005, Judge Tauro approved a $110 million cash settlement for shareholders who acquired CVS stock between February 6, 2001, and October 30, 2001.

- *Scheiner v. i2 Technologies, Inc.*, No. 01-418 (N.D. Tex.). Milberg served as lead counsel in this securities fraud case, filed on behalf of certain purchasers of i2 common stock. The plaintiffs alleged that certain of the company's senior executives made materially false and misleading statements and omissions in i2's public statements and other public documents regarding i2's software, thereby artificially inflating the price of i2's common stock. In May 2004, Milberg recovered a settlement of $84.85 million.

- *In re Royal Dutch/Shell Transport ERISA Litigation*, No. 04-1398 (D.N.J.). This was an ERISA breach of fiduciary duty class action against the Royal Dutch/Shell Oil Group of Companies on behalf of certain of the companies' U.S. employee investment plan participants. Notably, the $90 million settlement included important provisions regarding the monitoring and training of individuals appointed to be ERISA fiduciaries.

- Milberg served as co-lead counsel in *Irvine v. ImClone Systems, Inc.*, No. 02-0109

(S.D.N.Y.), in which a $75 million cash settlement was approved by the court in July 2005. Plaintiffs alleged that ImClone issued a number of misrepresentations and fraudulent statements to the market regarding the likelihood of approval of the drug Erbitux, thereby artificially inflating the price of ImClone stock.

- In *In re W.R. Grace & Co. (Official Committee of Asbestos Personal Injury Claimants v. Sealed Air Corp. and Official Committee of Asbestos Personal Injury Claimants v. Fresenius Medical Care Holdings, Inc.)*, Nos. 02-2210 and 02-2211 (D. Del.), Milberg acted as lead counsel for the asbestos personal injury and property damage committees in two separate fraudulent conveyance actions within the W.R. Grace bankruptcy. The actions sought to return the assets of Sealed Air Corporation and Fresenius Medical Care Holdings (each of which had been Grace subsidiaries pre-bankruptcy) to the W.R. Grace bankruptcy estate. Complaints in both cases were filed in mid-March 2002, and agreements in principle in both cases were reached on November 27, 2002, the last business day before trial was set to begin in the Sealed Air matter. The two settlements, which consisted of both cash and stock, were valued at approximately $1 billion.

- *Nelson v. Pacific Life Insurance Co.*, No. 03-131 (S.D. Ga.). Milberg served as lead counsel in this securities fraud class action arising from allegations of deceptive sales of deferred annuity tax shelters to investors for placement in retirement plans that are already tax-qualified. The court approved a $60 million settlement of claims arising from such deception.

- The Firm was lead counsel in *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.), a landmark securities case that resulted in a recovery exceeding $4 billion for certain Prudential policyholders. The settlement was approved in a comprehensive Third Circuit decision.

- In *In re NASDAQ Market-Makers Antitrust Litigation*, No. 94-3996 (S.D.N.Y.), Milberg served as co-lead counsel for a class of investors. The class alleged that the NASDAQ



market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After more than three years of intense litigation, the case settled for a total of $1.027 billion, one of the largest antitrust settlements at that time.

- *In re Washington Public Power Supply System Securities Litigation*, MDL 551 (D. Ariz.) was a massive securities fraud litigation in which Milberg served as co-lead counsel for a class that obtained settlements totaling $775 million, the largest-ever securities fraud settlement at that time, after several months of trial.

- *In re Exxon Valdez*, No. 89-095 (D. Alaska) and *In re Exxon Valdez Oil Spill Litigation*, 3 AN-89-2533 (Alaska Sup. Ct. 3d Jud. Dist.). Milberg was a member of the Plaintiffs' Coordinating Committee and co-chair of the Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. Plaintiffs obtained a jury verdict of $5 billion, which, after years of appeals by Exxon, was reduced to approximately $500 million by the United States Supreme Court. Recently the United States Court of Appeals for the Ninth Circuit held that plaintiffs are entitled to post judgment interest on the award in the amount of approximately $470 million.

- In *In re Managed Care Litigation*, MDL 1334 (S.D. Fla.). Final approval of a settlement between a nationwide class of physicians and defendant CIGNA Healthcare, valued in excess of $500 million, was granted on April 22, 2004. A similar settlement valued in excess of $400 million involving a nationwide class of physicians and Aetna was approved by the court on November 6, 2003. The settlements stem from a series of lawsuits filed in both state and federal courts by physicians and medical associations against many of the nation's largest health insurers arising from allegations that the insurers engaged in a fraudulent scheme to systematically obstruct, reduce, delay, and deny payments and reimbursements to health care providers. These settlements brought sweeping changes to the health care industry and significant improvements to physician-related business practices.

- *In re Sunbeam Securities Litigation*, No. 98-8258 (S.D. Fla). Milberg acted as co-lead counsel for the class. Plaintiffs alleged that Sunbeam, its auditor, and its management engaged in a massive accounting fraud which led to a restatement of over three years of previously reported financial results. The court approved a combined settlement of more than $140 million, including a $110 million settlement with Arthur Andersen LLP, Sunbeam's auditor. At that time, the Andersen settlement was one of the largest amounts ever paid by a public accounting firm to settle federal securities claims. The settlement with the individuals was achieved on the eve of trial, and ended almost four years of litigation against Andersen and Sunbeam's insiders, including Albert Dunlap, Sunbeam's former Chairman and CEO. The settlement included a personal contribution from Dunlap of $15 million.

- *In re Triton Energy Limited Securities Litigation*, No. 98-256 (E.D. Tex.). Plaintiffs alleged that defendants misrepresented, among other things, the nature, quality, classification, and quantity of Triton's Southeast Asia oil and gas reserves during the period March 30, 1998 through July 17, 1998. The case settled for $42 million.

- In *In re Thomas & Betts Securities Litigation*, No. 00-2127 (W.D. Tenn.), the plaintiffs, represented by Milberg as co-lead counsel, alleged that Thomas & Betts engaged in a series of accounting improprieties while publicly representing that its financial statements were in compliance with GAAP, and failed to disclose known trends and uncertainties regarding its internal control system and computer and information systems. The case settled for $46.5 million dollars in cash from the company and $4.65 in cash from its outside auditor, KPMG.

- *In re MTC Electronic Technologies Shareholder Litigation*, No. 93-0876 (E.D.N.Y.). Plaintiffs alleged that defendants issued false and misleading statements concerning, among other things, purported joint venture agreements to establish telecommunications systems and manufacture telecommunications equipment in China. The court approved a settlement of $70 million,



including $65 million in cash and $5 million worth of MTC Class A shares with "put" rights.

- In *In re PaineWebber Limited Partnerships Litigation*, No. 94-8547 (S.D.N.Y.). Milberg represented investors alleging that PaineWebber developed, marketed, and operated numerous investment partnerships as part of an ongoing conspiracy to defraud investors and enrich itself through excessive fees and commissions over a twelve-year period. On March 20, 1997, Judge Sidney Stein approved a $200 million settlement, consisting of $125 million in cash and $75 million worth of guarantees and fee waivers.

- In *Andrews v. AT&T*, No. 91-175 (S.D. Ga.) the Firm represented a class of persons who paid for premium-billed "900-number" calls that involved allegedly deceptive games of chance, starting in 1993. Defendants included major long-distance companies, which approved the call programs and billed for the calls. Defendant MCI settled for $60 million in benefits. The class against AT&T was decertified on appeal and the Firm prosecuted the individual plaintiffs' claims, obtaining a jury verdict in 2003 for compensatory and punitive damages.

In the context of shareholder derivative actions, Milberg has protected shareholder investments by effectuating important changes in corporate governance as part of the global settlement of such cases. Cases in which such changes were made include:

- In *In re Converse Technology, Inc. Derivative Litigation*, No. 601272/2006 (N.Y. Sup. Ct. N.Y. Cty.). On December 28, 2009, Milberg announced a $62 million settlement for the derivative plaintiffs, which was approved by the Court on June 23, 2010. The settlement also resulted in significant corporate governance reforms, including the replacement of the offending directors and officers with new independent directors and officers; the

amendment of the company's bylaws to permit certain long-term substantial shareholders to propose, in the Company's own proxy materials, nominees for election as directors (proxy access); and the requirement that all equity grants be approved by both the Compensation Committee and a majority of the non-employee members of the Board.

- In *In re Topps Co., Inc. Shareholder Litig.*, No. 600715/2007 (N.Y. Sup. Ct. N.Y. Cty. Apr. 17, 2007). Milberg served as co-lead counsel in this transactional case, which led to a 2007 decision vindicating the rights of shareholders under the rules of comity and the doctrine of *forum non conveniens* to pursue claims in the most relevant forum, notwithstanding the fact that jurisdiction might also exist in the state of incorporation. This case was settled in late 2007 in exchange for a number of valuable disclosures for the class.

- In *In re Marketspan Corporate Shareholder Litigation*, No. 15884/98 (N.Y. Sup. Ct. Nassau Cty.). The settlement agreement in this derivative case required modifications of corporate governance structure, changes to the audit committee, and changes in compensation awards and to the nominating committee.

- In *In re Trump Hotels Shareholder Derivative Litigation*, No. 96-7820 (S.D.N.Y.). In this case, the plaintiff shareholders asserted various derivative claims on behalf of the company against certain Trump entities and senior Trump executives in connection with the self-serving sale of a failing casino to the company in which the plaintiffs held stock. Milberg negotiated a settlement on behalf of the plaintiffs that required Donald Trump to contribute a substantial portion of his personal interest in a pageant he co-owned. In addition, the settlement required the company to increase the number of directors on its board, and certain future transactions had to be reviewed by a special committee.



## PRECEDENT-SETTING DECISIONS

Milberg has consistently been a leader in developing the federal securities, antitrust, and consumer protection laws for the benefit of investors and consumers. The Firm has represented individual and institutional plaintiffs in hundreds of class action litigations in federal and state courts throughout the country. In most of those cases, Milberg has served as lead or co-lead counsel. The Firm has also been responsible for establishing many important precedents, including the following:

- In *Merck & Co., Inc. v. Reynolds* (U.S. 2010), Milberg, along with other co-lead counsel, won a significant victory before the U.S. Supreme Court, which issued a decision addressing when an investor is placed on "inquiry notice" of a securities fraud violation sufficient to trigger the statute of limitations under 28 U.S.C. § 1658(b). The Court unanimously ruled that the two-year statute of limitations was not triggered because plaintiffs did not have actual or constructive knowledge of "the facts constituting the violation," and as such, the case was not time-barred. Importantly, the Court held that the plaintiff must be on actual or constructive notice of facts concerning the defendants' scienter in order to trigger the statute of limitations. This decision is significant in that it potentially enables plaintiffs to bring claims based on misstatements that are more than two years old.

- In *re Lord Abbett Mutual Funds Fee Litigation*, 553 F.3d 248 (3d Cir. 2009). This important decision set significant precedent regarding the scope of preemption under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). In reversing the District Court's dismissal of the plaintiffs' claims, the Third Circuit held that "SLUSA does not mandate dismissal of an action in its entirety where the action includes only some pre-empted claims." In so holding, the court explained that "nothing in the language, legislative history, or relevant case law mandates the dismissal of an entire action that includes both claims that do not offend SLUSA's prohibition on state law securities class actions and claims that do . . . ."

- *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 170 (2d Cir. 2009). In this matter, the plaintiffs,

Nigerian children and their families, asserted claims under the Alien Tort Statute ("ATS") in connection with Pfizer's clinical trial of the drug, Trovan, without their knowledge. In January 2009, the Second Circuit reversed the District Court's dismissal for lack of jurisdiction. The court held that the plaintiffs pled facts sufficient to state a cause of action under the ATS for a violation of international law prohibiting medical experimentation on human subjects without their consent. Pfizer's petition for review of the Second Circuit's ruling by the United States Supreme Court is currently pending.

- *In re Comverse Technology, Inc. Derivative Litigation*, 866 N.Y.S.2d 10 (App. Div. 1st Dep't 2008). In this derivative case in which Milberg serves as co-lead counsel, plaintiff shareholders sued certain of the company's officers and directors based on allegations of illegal options backdating. The lower court dismissed the plaintiffs' claims, holding that the plaintiffs failed to make a pre-suit demand on the company's board, and that in any event, the board had already formed a special committee to investigate the misconduct. In this significant opinion reversing the lower court's dismissal, the Appellate Division clarified the standards of demand futility and held that a board of directors loses the protection of the business judgment rule where there is evidence of the directors' self-dealing and poor judgment. The court noted that the mere creation of a special committee did not justify a stay of the action and did not demonstrate that the board took appropriate steps. Rather, "the picture presented in the complaint is that of a special committee taking a tepid rather than a vigorous approach to the misconduct and the resultant harm. Under such circumstances, the board should not be provided with any special protection."

- *South Ferry LP #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008). The important opinion issued by the Ninth Circuit in this securities fraud class action clarified, in the post-*Tellabs* environment, whether a theory of scienter based on the "core operations" inference satisfies the



PSLRA's heightened pleading standard. In siding with the plaintiffs, represented by Milberg, the Ninth Circuit held that "[a]llegations that rely on the core operations inference are among the allegations that may be considered in the complete PSLRA analysis." The court explained that under the "holistic" approach required by *Tellabs*, all allegations must be "read as a whole" in considering whether plaintiffs adequately plead scienter. After remand, the District Court found that the plaintiffs sufficiently alleged scienter under the Ninth Circuit's analysis.

- *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049 (9th Cir. 2008). In this securities fraud class action in which Milberg represents the plaintiffs, the Ninth Circuit reversed the District Court's dismissal of the complaint in this opinion clarifying loss causation pleading requirements. In ruling that the plaintiffs adequately pled loss causation, the Ninth Circuit held that the plaintiffs' complaint identified a "specific economic loss" following the issuance of a specific press release, along with allegations of misrepresentations that were described in "abundant detail." The opinion established that plaintiffs in a securities fraud action adequately plead loss causation where they provide sufficient detail of their loss causation theory and some assurance that the theory has a basis in fact. Based on this analysis, the dismissal was reversed, and the case was remanded to the District Court for further proceedings.

- In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), in which Milberg is lead counsel for the class, the United States Supreme Court announced a uniform standard for evaluating the sufficiency of a complaint under the PSLRA. The court held that on a motion to dismiss, a court "must consider the complaint in its entirety," accepting "all factual allegations in the complaint as true," as well as "tak[ing] into account plausible opposing inferences." On remand, the Seventh Circuit concluded that "the plaintiffs have succeeded, with regard to the statements identified in our previous opinion as having been adequately alleged to be false and material, in pleading scienter in conformity with the requirements of the PSLRA. We therefore

adhere to our decision to reverse the judgment of the district court dismissing the suit." The unanimous decision was written by Judge Richard A. Posner.

- *Asher v. Baxter International, Inc.*, 377 F.3d 727 (7th Cir. 2004). In reversing and remanding the District Court's dismissal, the Seventh Circuit resolved in plaintiffs' favor an important issue involving the PSLRA's "safe harbor" for forward-looking statements. The court held that whether a cautionary statement is meaningful is an issue of fact, because whether a statement is meaningful or not depends in part on what the defendant knew when the statement was made as well as other issues of fact. Thus, this issue is not appropriately resolved on a motion to dismiss.

- *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824 (8th Cir. 2003). This important decision strongly reaffirmed the principle that whether an undisclosed fact would have been material to investors cannot ordinarily be decided on a motion to dismiss. The Eighth Circuit, stressing that "[t]he question of materiality hinges on the particular circumstances of the company in question," observed that even relatively small errors in financial statements might be material if they concern areas of particular importance to investors and raise questions about management integrity.

- *In re Cabletron Systems, Inc.*, 311 F.3d 11 (1st Cir. 2002). In this opinion, the First Circuit joined the Second Circuit in allowing a complaint to be based on confidential sources. The court also accepted the argument made by plaintiffs, represented by Milberg, that courts should consider the amount of discovery taken place prior to deciding a motion to dismiss, with a lack of discovery resulting in a correspondingly less stringent standard for pleading securities fraud claims with particularity.

- In *Puckett v. Sony Music Entertainment*, No. 108802/98 (N.Y. Sup. Ct. N.Y. Cty. 2002), a class action was certified against Sony Music Entertainment on behalf of a class of recording artists who were parties to standard Sony recording or production agreements entered into during the class period. The complaint alleged



that Sony had a policy of treating the value added tax on foreign sales of recordings improperly thereby impermissibly reducing the royalties paid or credited to the class members. Justice DeGrasse of the New York State Supreme Court determined that class certification was appropriate and that Gary Puckett (of Gary Puckett & the Union Gap) and jazz musician and composer Robert Watson were appropriate class representatives to represent the class of artists and producers to whom Sony accounts for foreign record royalties.

- *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000). The Firm was lead counsel in this seminal securities fraud case in which the Second Circuit undertook an extensive analysis of the statutory text and the legislative history of the PSLRA and pre-existing Second Circuit case law. Among other things, the Second Circuit held that the PSLRA's pleading standard for scienter was largely equivalent to the pre-existing Second Circuit standard and vacated the District Court's dismissal which sought to impose a higher standard for pleading scienter under the PSLRA. The Second Circuit also rejected any general requirement that plaintiffs' confidential sources must be disclosed to satisfy the PSLRA's newly-enacted particularity requirements.

- *In re Advanta Corp. Securities Litigation*, 180 F.3d 525 (3d Cir. 1999). Here, the plaintiffs, represented by Milberg, successfully argued that under the PSLRA, scienter is sufficiently pled by making an adequate showing that the defendants acted knowingly or with reckless disregard for the consequences of their actions. The Third Circuit specifically adopted the Second Circuit's scienter pleading standard for pleading fraud under the PSLRA.

- In *Hunt v. Alliance North American Government Income Trust, Inc.*, 159 F.3d 723 (2d Cir. 1998), the Second Circuit reversed the District Court's ruling, which denied plaintiffs leave to amend to assert a cause of action against defendants for failing to disclose that the defendant Trust was unable to utilize proper "hedging" techniques to insure against risk of loss. In the court's view, taken together and in

context, the Trust's representations would have misled a reasonable investor.

- In *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194 (1st Cir. 1996), the First Circuit remanded plaintiffs' action after affirming, in part, Milberg's position that in association with the filing of a prospectus related to the issuance of securities, a corporate-issuer must disclose intra-quarter, materially adverse changes in its business, if such adverse changes constitute "material changes" the disclosure of which is required pursuant to the Securities Act of 1933.

- *In re Salomon, Inc. Shareholders Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995). The Second Circuit affirmed the District Court's holding that derivative federal securities claims against defendants would not be referred to arbitration pursuant to the arbitration provisions of the Rules of the New York Stock Exchange, but would be tried in District Court. Shortly thereafter, the case settled for $40 million.

- *Kamen v. Kemper Financial Services*, 500 U.S. 90 (1991). The Supreme Court upheld the right of a stockholder of a mutual fund to bring a derivative suit without first making a pre-suit demand. Specifically, the Court held that "where a gap in the federal securities laws must be bridged by a rule that bears on the allocation of governing powers within the corporation, federal courts should incorporate state law into federal common law unless the particular state law in question is inconsistent with the policies underlying the federal statute. . . . Because a futility exception to demand does not impede the regulatory objectives of the [Investment Company Act], a court that is entertaining a derivative action under that statute must apply the demand futility exception as it is defined by the law of the State of incorporation."

- *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873 (9th Cir. 1984), *cert. denied*, 469 U.S. 932 (1984). The Ninth Circuit upheld an investor's right to pursue a class action against an accounting firm, adopting statute of limitation rules for Section 10(b) suits that are favorable to investors.

- *Hasan v. CleveTrust Realty Investors*, 729 F.2d 372 (6th Cir. 1984). The Sixth Circuit very strictly construed, and thus narrowed, the ability

of a "special litigation committee" of the board of a public company to terminate a derivative action brought by a shareholder.

- *Fox v. Reich & Tang, Inc.*, 692 F.2d 250 (2d Cir. 1982), *aff'd sub nom, Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984). The court held that a Rule 23.1 demand is not required in a shareholder suit brought pursuant to Section 36(b) of the Investment Company Act.

- *Rifkin v. Crow*, 574 F.2d 256 (5th Cir. 1978). The Fifth Circuit reversed an order granting summary judgment for defendants in a Section 10(b) case, paving the way for future acceptance of the "fraud-on-the-market" rationale in the Fifth Circuit.

- *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976). This is the seminal appellate decision on the use of the "fraud-on-the-market" theory of reliance, allowing investors who purchase stock at artificially inflated prices to recover even if they were personally unaware of the false and misleading statements reflected in the stock's price. In so holding, the court noted that class actions are necessary to protect the rights of defrauded purchasers of securities.

- *Bershad v. McDonough*, 300 F. Supp. 1051 (N.D. Ill. 1969), *aff'd*, 428 F.2d 693 (7th Cir. 1970). In this case, the plaintiff, represented by Milberg, obtained summary judgment on a claim for violation of Section 16(b) of the Securities Exchange Act, where the transaction at issue was structured by the defendants to look like a lawful option. The decision has been cited frequently in discussions as to the scope and purpose of Section 16(b).

- *Heit v. Weitzen*, 402 F.2d 909 (2d Cir. 1968). The court held that liability under Section 10(b) of the Securities Exchange Act extends to defendants, such as auditors, who were not in privity with the named plaintiffs or the class represented by the named plaintiffs.



*Partners*

**GEORGE A. BAUER III** earned his B.B.A. degree *magna cum laude* in 1976 from Bernard M. Baruch College of the City University of New York, where he majored in accounting. He was awarded the Andrew J. Coppola prize in Law from Baruch College. Mr. Bauer attended New York University School of Law and graduated with a J.D. degree in 1979.

Mr. Bauer's practice concentrates on class action settlements and settlement administration. He has played a lead role in documenting and effectuating many of the largest and most complex securities litigations settlements ever obtained, notably including: the $3.2 billion cash settlement in *In re Tyco International Ltd., Securities Litigation, MDL 02-1335-PB (U.S.D.C., N.H.);* the $1.14 billion settlement for cash and stock of the *In re Nortel Networks Corp. Securities Litigation* No. 01-1855 (S.D.N.Y.); the $1.027 billion settlement of the *In re NASDAQ Market-Makers Antitrust Litigation,* MDL No. 1023, (S.D.N.Y.); settlements relating to the $2 billion estate of Drexel Burnham Lambert, including *In re Drexel Burnham Lambert Group,* No. 90-6954 (S.D.N.Y.) and the $1.3 billion settlement of the *In re Michael Milken & Associates Securities Litigation,* MDL 924 (S.D.N.Y.); settlements worth over $775 million in *In re Washington Public Power Supply Systems Securities Litigation,* MDL 551 (D. Ariz.); settlements including cash and securities worth over $615 million in *In re Lucent Technologies Inc. Securities Litigation,* No. 00-621 (D. N.J.); the settlement for cash and securities worth over $460 million in *In re Raytheon Securities Litigation, No. 99-12142* (D. Mass.); the $334 million settlement in *In re Rite Aid, Securities Litigation, Master File No. 99-1349* (E.D.PA); the $300 million settlement in *In re Oxford Health Plans Inc., Securities Litigation, MDL No. 1222 (CLB)* (S.D.N.Y.; the $215 million settlement of *In re Sears Roebuck & Co., Securities Litigation, No. 02-7527* (N.D. Ill.); the $200 million settlement in *In re PaineWebber Limited Partnerships Litigation,* No. 94-8547 (S.D.N.Y.); the settlement for cash and securities worth over $137.5 million in *In re Microstrategy Inc. Securities Litigation,* No. 00-473 (E.D. Va, Alexandria Division); the settlements for securities worth over $133.5 million in *In re Computer Associates Class Action Securities Litigation,* No. 98-4839, and *In re Computer Associates 2002 Class Action Securities Litigation,* No. 02-1226 (E.D.N.Y.); and the $110 million settlement in *In re Prudential Securities Inc. Limited Partnerships Securities Litigation,* MDL 1005 (S.D.N.Y.).

Mr. Bauer was admitted as a member of the New York bar in January 1980 and is also admitted to the United States District Court for the Southern and Eastern Districts of New York. Mr. Bauer is admitted to practice before the United States Supreme Court and the United States Courts of Appeals for the Second and Fourth Circuits.

Mr. Bauer is a member of the Firm's Library Committee. He is also a member of the American Bar Association, the New York State Bar Association, the American Association for Justice, and the New York County Lawyers Association.

Mr. Bauer is a member of the Board of the Association for the Help of Retarded Citizens, Inc., a non-profit IRS 501(c)(3) qualified charitable organization, dedicated to the optimization of the prospectus for persons with developmental challenges.

**JOSHUA H. VINIK** graduated with honors from the State University of New York at Oneonta in 1983, where he majored in economics. After graduating *cum laude* from Brooklyn Law School, Mr. Vinik clerked for Magistrate (now Judge) Carol B. Amon of the United States District Court for the Eastern District of New York.

Mr. Vinik's practice focuses primarily on class actions on behalf of defrauded investors, as well as complex commercial litigation, including accountants' liability actions and derivative actions. Mr. Vinik's extensive litigation efforts on behalf of aggrieved investors include many actions which have led to significant recoveries for investors, including *In re Baan Securities Litigation* (D.D.C.); *Lasky v. Brown (United Companies Financial*



*Securities Litigation)* (M.D. La.), *Kaufman v. Motorola, Inc.* (N.D. Ill.), and *In re Salomon Inc. Shareholders Derivative Litigation* (S.D.N.Y.).

Mr. Vinik is a member of the American Bar Association, The New York State Bar Association and the Association of the Bar of the City of New York. Mr. Vinik is admitted to practice in the courts of the State of New York, as well as the United States District Courts for the Southern and Eastern Districts of New York and the United States Courts of Appeals for the Second, Third, and Fifth Circuits.

**LORI G. FELDMAN** is a daughter of retired public employees and understands the importance of protecting the investments of employees, as well as the general public, against corporate fraud and breaches of fiduciary duty.

In addition to lecturing on class action practice, Ms. Feldman has served as co-chair of the Continuing Legal Education Committee of the Federal Bar Association for the Western District of Washington. She was also named a "Rising Star of Washington Law" by practitioners in Seattle. Recently, Ms. Feldman has participated as panel faculty in national continuing legal education programs on ERISA and securities fraud class actions arising from the subprime and liquidity crisis.

Ms. Feldman's representative recoveries exceed well over $100 million. Recently, she recovered millions of dollars for class members in litigation against General Electric Co. (N.D.N.Y.) and Rhythms Net Connections (D. Colo.), among others. She is currently representing, shareholders in litigation involving Washington Mutual, Inc. (W.D. Wash.), and Gilead Sciences, Inc. (N.D. Cal.) (settlement pending court approval), cases where plaintiffs received favorable appellate court opinions on the issues of scienter (*South Ferry LP, #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008)) and loss causation (*In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008)). She is also currently representing participants of defined contribution retirement plans in ERISA litigation involving, among others, British Petroleum (BP) (MDL), Morgan Stanley & Co., Inc. (S.D.N.Y.), Macy's, Inc. (S.D. Ohio), Boston Scientific Corp. (D. Mass.), Fremont General Corp. (C.D. Cal.), Wellpoint, Inc. (S.D. Ind.), The Colonial Banc Group, Inc. (D. Al.), Textron, Inc. (D.R.I.), AIG (S.D.N.Y.), Lehman Brothers (S.D.N.Y.), and The Hartford Financial Services Group (D. Conn.).

Ms. Feldman graduated from Albany Law School in 1990, where she served as an Executive Editor of the *Albany Law Review*. She has interned at the Civil Division of the United States Attorney's Office in Brooklyn, New York. She is admitted to the bars of the States of Washington and New York and federal district and appellate courts throughout the country.

**SABRINA KIM** graduated from the University of California, Los Angeles, in 1992, Phi Beta Kappa, *magna cum laude*, with a B.A. degree in Sociology. She received her J.D. degree from the University of California, Hastings College of Law in 1996.

Ms. Kim has extensive public and private sector experience in various areas of complex commercial litigation, including securities, corporate fiduciary, and consumer cases.

Ms. Kim came to Milberg from the California Department of Justice, where she was a deputy attorney general in the Consumer Law Section for several years. During that time, Ms. Kim served as lead prosecutor in complex state and federal fraud cases, including those against predatory lenders, insurance companies, annuity mills, and other corporate defendants who engaged in large financial fraud schemes.

At Milberg, Ms. Kim has litigated numerous securities fraud and other class actions resulting in substantial recoveries for investors and consumers. Ms. Kim is also one of the principal attorneys responsible for two major California Supreme Court cases involving consumer rights and class action procedure: *Pioneer Electronics (USA) v. Superior Court (Olmstead)*, 40 Cal.4th 360 (Cal. 2007); *Branick v. Downey Savings & Loan Assn*, 39 Cal.4th 235 (Cal. 2006).

 **MILBERG** LLP

Ms. Kim has served as a speaker for programs on class action procedure, tactics and strategies in consumer class actions, substantive changes in unfair and deceptive practices statutes, and trends in complex business litigation. Her speaking engagements include: Consumer Attorneys Association of Los Angeles (CAALA) Convention, *Unfair Business Practices Act, What Is Left?* (September 2007); American Bar Association (ABA) Litigation Section Annual Conference, *Tactics and Strategies for Consumer Cases After Proposition 64 and Class Action Fairness Act* (April 2006); LexisNexis Mealey's Section 17200 Conference, *What is the Future of 17200 Claims in Light of Proposition 64?* (November 2005); Los Angeles County Bar Association (LACBA) 25th Annual Labor and Employment Law Symposium, *Minding Your Own Business (And Professions Code §17200) After Proposition 64* (February 2005).

As an adjunct professor at Loyola Law School, Ms. Kim developed and taught a consumer law course which explored federal and state laws that attempt to strike a balance between businesses' need to effectively market goods and services and consumers' right to accurate information and full disclosure. The course emphasized California's unfair competition and false advertising laws and the Consumer Legal Remedies Act.

Ms. Kim is a board member of the Association of Business Trial Lawyers (ABTL) and a member of the Consumer Attorneys of California (CAOC). Ms. Kim was named a Southern California Super Lawyer Rising Star in securities litigation by Los Angeles Magazine from 2006 through 2009.

Ms. Kim is admitted to practice in the courts of the State of California, as well as the United States District Court for the Central, Eastern, and Northern Districts of California, the United States Court of Appeals for the Ninth Circuit, and the United States Supreme Court.

**ROSS B. BROOKS** earned his B.A. degree from Cornell University in 1992, *cum laude*, and his J.D. degree from the University of Chicago Law School in 1997.

Mr. Brooks focuses his practice on representation of whistleblowers, public and private payors, and injured consumers in litigation involving healthcare fraud and abuse, including False Claims Act, mass torts, class action, and other complex litigation.

Mr. Brooks has led the investigation, litigation, and/or settlement of several of the Firm's Medicare and Medicaid fraud False Claims Act cases. Mr. Brooks served as the Firm's lead attorney in its representation of a union welfare and benefit fund named as part of a class of third-party payors of healthcare costs against Merck & Co. and Schering-Plough Corp. in *In Re Vytorin/Zetia Marketing, Sales Practices and Products Liability Litig.*, MDL No. 1938, No. 08-0285 (D.N.J.). The litigation resulted in a settlement of $41.5 million to resolve all claims involving the defendants' co-marketed drugs Vytorin and Zetia. Mr. Brooks is counsel to Nassau County in New York State in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, No. 01-12257 (D. Mass.).

Mr. Brooks is a member of the New York State Bar Association, the New York City Bar Association, Taxpayers Against Fraud, the American Health Lawyers Association, the American Association for Justice, and the Health Law Committee of the New York City Bar Association. Mr. Brooks is also a member of the Firm's Diversity Committee.

Mr. Brooks is admitted to practice in the courts of the State of New York, as well as the United States District Courts for the Southern and Eastern Districts of New York.

**PAUL J. ANDREJKOVICS** graduated from Union College in 1992, Phi Beta Kappa, *magna cum laude*, with a B.A. degree in political science. In 1995, Mr. Andrejkovics received his J.D. degree from Albany Law School.

Mr. Andrejkovics' practice concentrates on class action settlements and settlement administration. He was admitted as a member of the New York bar in 1996 and is admitted to practice before the United States District Court for the Northern, Southern, and Eastern Districts of New York.

 **MILBERG**LLP

NEW YORK
LOS ANGELES
TAMPA
DETROIT

**ANDREI RADO** focuses his practice on securities, shareholder, and consumer class actions. Mr. Rado's practice places particular emphasis on investigating, together with the Firm's team of investigators and forensic accountants, potential actions for institutional and individual investors injured by corporate wrongdoing.

Mr. Rado's securities practice has included numerous complex litigations nationwide, including *Initial Public Offering Securities Litigation*, which alleges, in hundreds of consolidated cases pending in the Southern District of New York, that investment banks manipulated the initial public offerings of hundreds of companies, and mutual fund timing cases alleging that mutual fund managers allowed select investors to profit by improperly timing their trading in fund shares.

Mr. Rado has also litigated consumer class actions, including a case against jewelry company Zales for improperly denying credit-insurance claims made by unemployed and retired consumers, and a class action against computer maker Gateway for improperly understating in advertising the costs of internet access to consumers, some of whom incurred internet-access fees of hundreds of dollars.

Prior to joining Milberg, Mr. Rado worked as an attorney at a New York City-based investment bank focusing on compliance, with rules and regulations relating to resales of control and restricted securities under the Securities Act of 1933. Mr. Rado also worked at another prominent New York City law firm specializing in plaintiffs' securities class action litigation.

Mr. Rado received his Juris Doctor degree from St. John's University School of Law, cum laude, in 1999, and is admitted to practice in the courts of the State of New York, as well as the United States District Court for the Southern District of New York. Mr. Rado was born in Bucharest Romania.

## SPECIAL COUNSEL

**ARTHUR R. MILLER** heads the Firm's appellate practice. He is the nation's leading scholar in the field of civil procedure, a subject about which he has authored or co-authored numerous articles and more than 40 books. These include his treatise, Federal Practice and Procedure, which is relied upon by federal judges throughout the country as the principal authority on federal practice. He also wrote Civil Procedure, the casebook used by most U.S. law schools.

Professor Miller is currently a University Professor at New York University School of Law. This professorship is conferred on outstanding scholars in recognition of the interdisciplinary dimension and breadth of their work. Previously, Professor Miller was the Bruce Bromley Professor of Law at Harvard, where he earned his law degree and taught for 36 years.

In recent years, Professor Miller has actively participated in numerous cases, particularly in federal appellate courts. He has argued in all of the U.S. Courts of Appeal and in the U.S. Supreme Court, most recently in *Tellabs Inc. v. Makor Issues & Rights Ltd.*

Professor Miller is the recipient of numerous awards, including five honorary doctorates, three American Bar Association Gavel Awards and a Special Recognition Gavel Award for promoting public understanding of the law. A renowned commentator on law and society, he won an Emmy award for his work on "The Constitution: That Delicate Balance," an acclaimed PBS series he moderated. Professor Miller also served for two decades as the legal editor for ABC's Good Morning America. In addition, he hosted the weekly television show Miller's Court for eight years and has commented regularly on legal matters for Court TV.

Professor Miller was appointed by two Chief Justices of the U.S. Supreme Court to serve as a member and reporter on the Advisory Committee on Civil Rules of the Judicial Conference of the United States. He has additionally served as reporter and advisor to the American Law Institute, and as a member of various American

 **MILBERG**LLP

Bar Association committees, among others. In addition, Professor Miller was appointed by President Ford to serve on the United States Commission on New Technological Uses of Copyrighted Work.

*Associates*

**LAUREN BLOCK** received a B.A. degree, *cum laude*, from University of Pennsylvania in 1982, and a J.D. degree from George Washington University Law School in 1985.

Ms. Block focuses her practice on securities class action litigation on behalf of defrauded investors, antitrust litigation, derivative litigation, and complex commercial litigation. She was admitted to the bars of New York and Pennsylvania in 1986.

**JENNIFER J. SOSA** graduated from Northeastern University with a B.S. degree in Chemical Engineering, *cum laude*, in 2002. In 2005, she earned her J.D. degree from Temple University Beasley School of Law. During law school, she was a member of the Environmental Moot Court Team and was awarded the David Sive Award for Best Brief overall in the 2004 Pace National Environmental Law Moot Court Competition.

Ms. Sosa focuses her practice on ERISA litigation and is actively involved in a number of matters including *In re Boston ScientificCorp. ERISA Litigation* (D. Mass.), *In re Morgan Stanley ERISA Litigation* (S.D.N.Y.), and *In re First American Corp. ERISA Litigation* (C.D. Cal.). Ms. Sosa has also concentrated part of her practice on class actions against defrauded stockholders in cases such as *South Ferry LP # 2 v. Killinger, et al.* (W.D. Wash.), as well as the investigation and prosecution of antitrust and consumer protection actions.

Ms. Sosa is admitted to practice law in the Eastern and Southern Districts of New York and the District of New Jersey, as well as New York and New Jersey state courts. Prior to law school, Ms. Sosa worked as a Chemical Engineer.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 16, 2010, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 16, 2010.

<u>s/ JEFFREY D. LIGHT</u>
JEFFREY D. LIGHT

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail:JeffL@rgrdlaw.com

# Mailing Information for a Case 3:03-cv-04999-SI

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Susan K. Alexander**
  SuziA@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Eric J. Belfi**
  ebelfi@labaton.com,ElectronicCaseFiling@labaton.com

- **Lauren Block**
  lblock@milberg.com

- **Brian D. Brooks**
  bbrooks@murrayfrank.com

- **Ross B. Brooks**
  rbrooks@milberg.com

- **Matthew Dean Brown**
  mbrown@cooley.com,nafeyla@cooley.com

- **John C. Dwyer**
  dwyerjc@cooley.com,giovannonib@cooley.com

- **Lori G. Feldman**
  lfeldman@milberg.com

- **Linda M. Fong**
  lfong@kaplanfox.com,kweiland@kaplanfox.com,lbarry@kaplanfox.com

- **David Jude George**
  dgeorge@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Michael M. Goldberg**
  info@glancylaw.com

- **Robert A. Jigarjian**
  jigarjianlaw@gmail.com

- **Jeffrey Michael Kaban**
  kabanjm@cooley.com,kramerns@cooley.com

- **Laurence D. King**
  lking@kaplanfox.com,kweiland@kaplanfox.com,lbarry@kaplanfox.com

- **Jeffrey David Light**

jeffl@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Douglas C McDermott**
  doug@mcdermottnewman.com,eric@mcdermottnewman.com

- **John W. Pillette**
  CAND.USCOURTS@classcounsel.com

- **Robert Jeffrey Robbins**
  rrobbins@lerachlaw.com,ppuerto@lerachlaw.com

- **David Avi Rosenfeld , Esq**
  drosenfeld@geller-rudman.com

- **Samuel H. Rudman**
  srudman@csgrr.com

- **Jennifer J. Sosa**
  jsosa@milberg.com

- **Sanford Svetcov**
  sandys@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Marc M. Umeda**
  MUmeda@robbinsumeda.com,notice@robbinsumeda.com

- **Joshua H. Vinik**
  jvinik@milberg.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Jack G. Fruchter
Abraham Fruchter & Twersky LLP
One Penn Plaza
Suite 2805
New York, NY 10119

Holly W. Kimmel
Coughlin Stoia Geller Rudman & Robbins LLP
120 E. Palmetto Park Road
Suite 500
Boca Raton, FL 33432-4809

James M. Orman
Law Offices of James M. Orman
1845 Walnut Street, 14th Floor
Philadelphia, PA 19103
```